## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**CTRLPEW LLC and**
**ALEXANDER HOLLADAY,**

        **Plaintiffs,**

v.                                            Case No: 6:26-cv-340-PGB-RMN

**DAVID CHIU and ROB BONTA.**

        **Defendants.**

_____/

## ORDER

This cause comes before the Court on Plaintiffs CTRLPew LLC and Alexander Holladay (collectively, the "**Plaintiffs**") Motion for Temporary Restraining Order. (Doc. 6 (the "**Motion**")). The Court does not deem a response to the Motion from Defendants David Chiu, San Francisco City Attorney and Rob Bonta, Attorney General of California (collectively, the "**Defendants**") to be necessary.[1] Upon consideration, Plaintiffs' Motion is due to be denied.

## I. BACKGROUND

Alexander Holladay is the Manager of CTRLPew LLC, a company that publishes on the internet "written guides, photographs, and digital design files

---

[1] "A trial court has managerial power that has been described as 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1012 (5th Cir. 1977) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all Fifth Circuit decisions prior to October 1, 1981).

(including 3D models)" for the production of 3D printed firearms, otherwise known as "Ghost Guns." (Doc. 1-2, p. 4; Doc. 1, ¶ 12). Both Plaintiffs are located in Orlando, Florida. (Doc. 1, ¶¶ 8–9). Defendants Rob Bonta, the Attorney General of California and David Chiu, the City Attorney of San Francisco, seek to enforce California Civil Code §§ 3273.61 and 3273.625 (the "**Ghost Gun Ban**") which prohibit the distribution of "any digital firearm manufacturing code to any other person in this state who is not a federally licensed firearms manufacturer, member of the Armed Forces . . . while on duty and acting within the scope and course of employment, or any law enforcement agency or forensic laboratory." CAL. CIV. CODE § 3273.61; *see also* CAL. CIV. CODE § 3273.625 (prohibiting the material support of acts in violation of § 3273.61); (Doc. 1-2).

Plaintiffs bring this pre-enforcement action for declaratory and injunctive relief, seeking to enjoin Defendants from enforcing California's Ghost Gun Ban against Plaintiffs. The Complaint levies four causes of action against Defendants: 1) enforcement of the Ghost Gun Ban against Plaintiffs constitutes an unconstitutional "prior restraint" on speech; 2) the extraterritorial application of the Ghost Gun Law to Plaintiffs violates the Due Process Clause of the Constitution; 3) the extraterritorial application of the Ghost Gun Ban to Plaintiffs violates the Dormant Commerce Clause of the Constitution; and 4) the application of the Ghost Gun Ban to Plaintiffs violates the Second Amendment to the Constitution. (Doc. 1, ¶¶ 37 –52).

## II. LEGAL STANDARD

To obtain a temporary restraining order, a plaintiff must show (1) a substantial likelihood of success on the merits of the underlying case; (2) irreparable harm in the absence of a restraining order; (3) that the harm suffered by Plaintiff in the absence of a restraining order would exceed the harm suffered by Defendants if the restraining order issued; and (4) that a restraining order would not disserve the public interest. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002); *Miccosukee Tribe of Indians of Fla. v. United States*, 571 F. Supp. 2d 1280, 1283 (S.D. Fla. 2008).

Further, temporary restraining orders are "extraordinary and drastic remed[ies] not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (en banc)). Ultimately, issuing a temporary restraining order should be "the exception rather than the rule." *Id.*

## III. DISCUSSION

This case seemingly presents several issues of first impression in the Eleventh Circuit. Accordingly, after an expedited review of the limited briefing on these novel issues, the Court determines that Plaintiffs have failed to clearly establish the first requirement for proving entitlement to a temporary restraining order—namely, that Plaintiffs have not demonstrated a substantial likelihood of

success on the merits. *Johnson & Johnson*, 299 F.3d at 1246. Importantly, the Motion only raises arguments as to Counts I, II, and III. (*See* Doc. 7).

### A.     The First Amendment - Count I

While the Complaint and Motion simply assert that the computer code downloaded by Plaintiffs' customers is speech, in reality, this issue has been sparsely addressed by federal courts and is a question of first impression in the Eleventh Circuit. (Doc 1, ¶ 36; Doc. 7, p. 7); *see Def. Distributed v. Att'y Gen. of N.J.*, No. 23-3058, 2026 WL 394269, at * 9–12 (3d Cir. Feb. 12, 2026) (providing an overview of the existing caselaw nationwide).

At this juncture, the Court finds the Third Circuit's framing in *Defense Distributed* to be persuasive. In *Defense Distributed*, authored just two weeks ago, the Third Circuit analyzed whether an attempt by the Attorney General of New Jersey to enforce a criminal ghost gun ban violated the First Amendment. *Def. Distributed*, 2026 WL 394269, at *2. As part of the relevant analysis, the court grappled with whether the computer code used to print ghost guns qualified as First Amendment Protected speech. *Id.* at 8–15. The Third Circuit held that "computer code can be covered by the First Amendment" but "coverage cannot be assumed because code is inherently functional." *Id.* at *12.

Importantly, "the determination of whether code enjoys First Amendment protection requires a fact-based and context-specific analysis." *Id.* at *13. Critical to this analysis is:

> the technical nature of the code (e.g., source code or object code), how that code is used in context (e.g., precisely how the

4

> writer or user of the code might interact with the code), who is communicating through the code and the intended recipient of the communication (e.g., programmer-to-human communication, human-to-machine communication, and so forth), for what purpose or purposes the computer code operates (e.g., to perform a function, to express an idea, or some combination thereof), and what, if anything, the code communicates.

*Id.*

Fatally, neither the Complaint nor Motion contain facts sufficient for the Court to apply these factors. The Complaint and Motion hardly describe the nature of the code itself or how customers interact with the code. (*See generally* Docs. 1, 7). As a result, the Plaintiffs fail to demonstrate a likelihood of success on the merits as to Count I.

### B. Due Process and the Dormant Commerce Clause - Counts II and III

Next, Plaintiffs raise a Dormant Commerce Clause and Due Process challenge. "State laws that discriminate against interstate commerce face a virtually *per se* rule of invalidity." *Granholm v. Heald*, 544 U.S. 460, 476 (2005) (quotation omitted). This *per se* invalidity is triggered when a state mandates "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* at 461 (quotation omitted). In *Granholm*, the Court found that Michigan violated this constitutional provision when it permitted "in-state wineries to ship directly to consumers, subject only to a licensing requirement" but mandated that "out-of-state wineries, even if licensed . . . go through a wholesaler and retailer." *Id.* Yet, the California Ghost Gun Ban does

5

not discriminate against sister-state commerce like Michigan's scheme in *Granholm*. In this case, California's Ghost Gun Ban does not favor in-state ghost gun manufacturers or sellers. Rather, this case presents an attempt by California to prohibit the sale or manufacture of ghost guns inside of its own borders by *anyone*, regardless of in-state or out-of-state status.

The Ghost Gun Ban is a classic example of the exercise of state police power and moral judgement. As the Supreme Court has recently clarified, "a State may exclude from its territory . . . any articles which, in its judgment . . . are prejudicial to the interests of its citizens." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023). In *Ross*, the Court held that a California law prohibiting the sale of pork derived from pigs in breeding pens did not offend the Dormant Commerce Clause. *Id.* The upshot was that regulations applying equally to both in-state and out-of-state producers do not offend the constitution. *Id.* at 370 ("California's law does not advantage in-state firms or disadvantage out-of-state rivals."). Here, the Ghost Gun Ban is a mere exercise of state judgment that ghost guns are "prejudicial to the interests of its citizens" and must be regulated. *Id.* at 369. The regulation applies equally to those operating in-state and those operating out-of-state. Accordingly, the Plaintiffs are unlikely to succeed on the merits of their Dormant Commerce Clause or Due Process challenges.

As a result, Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of any of their causes of action. *Johnson & Johnson*, 299 F.3d at 1246.

### C. CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Temporary Restraining Order (Doc. 7) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on February 27, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

7