UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |
|---|---|
| CTRLPEW LLC and ALEXANDER HOLLADAY,<br><br>                    Plaintiffs,<br><br>     v.<br><br>DAVID CHIU, in his official capacity as San Francisco City Attorney, and ROB BONTA, in his official capacity as Attorney General of California,<br><br>                    Defendants. | Case No.: 6:26-cv-340-PGB-RMN |

**DEFENDANTS' MOTION TO DISMISS
AND MEMORANDUM OF LAW**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

FACTUAL BACKGROUND................................................................................... 1

LEGAL STANDARD ............................................................................................. 4

SUMMARY OF ARGUMENT ............................................................................... 6

ARGUMENT ........................................................................................................... 6

    I.     THIS ACTION IS BARRED BY *YOUNGER* ABSTENTION .......................... 6

    II.    THE COURT LACKS PERSONAL JURISDICTION.................................... 10

          A.     Plaintiffs Cannot Satisfy the Florida Long-Arm Statute .................................................................................. 11

          B.     Exercising Personal Jurisdiction over Defendants Is Inconsistent with Due Process ................................................. 14

                1.     Defendants Lack Minimum Contacts with Florida ..................................................................... 14

                2.     Exercising Jurisdiction over Defendants in Florida Would Offend Fair Play and Substantial Justice ........................................................... 18

    III.    PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM........................... 19

          A.     First Amendment........................................................................ 19

          B.     Fourteenth Amendment ............................................................ 21

          C.     Dormant Commerce Clause...................................................... 22

          D.     Second Amendment ................................................................... 24

CONCLUSION....................................................................................................... 25

Local Rule 3.01(g) Certification .......................................................................... 26

i

# TABLE OF AUTHORITIES

**CASES**

*31 Foster Children v. Bush*
329 F.3d 1255 (11th Cir. 2003) ........................................................................... 7, 9

*Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*
221 F.3d 1211 (11th Cir. 2000) ............................................................................. 21

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................................ 5

*Bulkley & Assocs., LLC v. Cal. Dep't. of Indus. Relations*
1 F.4th 346 (5th Cir. 2021) ............................................................................ 15, 17

*Calder v. Jones*
465 U.S. 783 (1984) .............................................................................................. 14

*City of San Francisco v. Exxon Mobil Corp.*
No. 02-18-00106-CV, 2020 WL 3969558 (Tex. App. June 18, 2020) .............. 16

*Day v. Taylor*
400 F.3d 1272 (11th Cir. 2005) .............................................................................. 5

*Deakins v. Monaghan*
484 U.S. 193 (1988) ................................................................................................ 6

*Def. Distributed v. Att'y Gen. of New Jersey*
167 F.4th 65 (3d Cir. 2026) .................................................................................. 20

*Def. Distributed v. Bonta*
No. CV 22-6200, 2022 WL 15524977 (C.D. Cal. Oct. 21, 2022),
*adopted* 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022) .................................... 25

*Defense Distributed v. Grewal*
971 F.3d 485 (5th Cir. 2020) .......................................................................passim

*DiMaggio, LLC v. City & Cnty. of San Francisco*
187 F. Supp. 2d 1359 (S.D. Fla. 2000) ................................................................ 18

*Doe v. Bonta*
101 F.4th 633 (9th Cir. 2024) ............................................................................... 25

*Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*
267 F.3d 1228 (11th Cir. 2001) ............................................................................ 22

*Hirsch v. Weitz*
16 So.3d 148 (Fla. Dist. Ct. App. 2009) .............................................................. 13

*Homeway Furniture Co. of Mount Airy, Inc. v. Horne*
822 So.2d 533 (Fla. Dist. Ct. App. 2002) ............................................................ 13

ii

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*
421 F.3d 1162 (11th Cir. 2005)........................................................11, 12

*John Crane, Inc. v. Shein Law Ctr., Ltd.*
891 F.3d 692 (7th Cir. 2018) .................................................................. 16

*Joseph A. ex rel. Wolfe v. Ingram*
275 F.3d 1253 (10th Cir. 2002) ................................................................ 8

*Korman v. Kent*
821 So.2d 408 (Fla. Dist. Ct. App. 2002) ............................................... 13

*Leonard v. Ala. State Bd. of Pharmacy*
61 F.4th 902 (11th Cir. 2023)............................................................... 6, 7

*Media Matters for America v. Paxton*
138 F.4th 563 (D.C. Cir. 2025)......................................................passim

*Middlesex County Ethics Committee v. Garden State Bar Association*
457 U.S. 423 (1982) ..........................................................................7, 9, 10

*Mitchell v. Motazedi*
No. 25-cv-02783-CMA-KMT, 2021 WL 3727970 (D. Colo. Aug. 12, 2021).... 19

*Montgomery v. Rosenblum*
No. 3:24-cv-01273-AN, 2025 WL 2781758 (D. Or. Sept. 29, 2025)................. 25

*Moore v. Cecil*
109 F.4th 1352 (11th Cir. 2024) ............................................................. 14

*Moore v. Judicial Inquiry Comm'n of the State of Alabama*
200 F. Supp. 3d 1328 (M.D. Ala. 2016)................................................... 5

*Morrill v. Scott Fin. Corp.*
873 F.3d 1136 (9th Cir. 2017) ................................................................ 16

*Mulhall v. United Here Local 355*
618 F.3d 1279 (11th Cir. 2010) ................................................................ 5

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*
597 U.S. 1 (2022).................................................................................... 25

*Nat'l Pork Producers Council v. Ross*
598 U.S. 356 (2023) .........................................................................22, 23

*Norwegian Cruise Line Holdings Ltd. v. State Surgeon Gen. Fla. Dep't of Health*
50 F.4th 1126 (11th Cir. 2022) ............................................................... 23

*Old Republic Union Ins. Co. v. Tillis Trucking Co.*
124 F.3d 1258 (11th Cir. 1997)............................................................. 8, 9

iii

*Pennzoil Co. v. Texaco, Inc.*
481 U.S. 1 (1987).............................................................................................9

*People v. Gatalog Foundation Inc.*
S.F. Super. Ct. Case No. CGC-26-633508 ............................................... 4, 10

*Prunty v. Arnold & Itkin LLP*
753 F. App'x 731 (11th Cir. 2018) ..................................................................13

*PVC Windoors, Inc. v. Babbitbay Beach Const.*
*N.V.*, 598 F.3d 802 (11th Cir. 2010)................................................................13

*Rubber Res. Ltd. LLP v. Press*
No. 8:08-cv-1730-T-27-TBM, 2009 WL 211556 (M.D. Fla. Jan. 27, 2009)....13

*Saint-Gobain Tech. Fabrics Am., Inc. v. Checkmate Geosynthetics, Inc.*,
No. 6:09-cv-557-Orl-35KRS, 2010 WL 11507686 (M.D. Fla. Feb. 5, 2010) ..11

*Sculptchair, Inc. v. Century Arts, Ltd.*
94 F.3d 623 (11th Cir. 1996) ..........................................................................10

*SpaceCo Bus. Sols., Inc. v. Mass Engineered Design, Inc.*
942 F. Supp. 2d 1148 (D. Colo. 2013) .............................................................16

*Sprint Commc'ns, Inc. v. Jacobs*
571 U.S. 69 (2013) ...........................................................................................7

*Stroman Realty, Inc. v. Wercinski*
513 F.3d 476 (5th Cir. 2008) ...........................................................15, 17, 18

*United States v. Ferrara*
54 F.3d 825 (D.C. Cir. 1995)...........................................................................16

*United Tech. Corp. v. Mazer*
556 F.3d 1260 (11th Cir. 2009)........................................................................5

*Walden v. Fiore*
571 U.S. 277 (2014))................................................................................14, 15

*Williams Elec. Co., Inc. v. Honeywell, Inc.*
854 F.2d 389 (11th Cir. 1988) ..................................................................11, 12

*World-Wide Volkswagen Corp. v. Woodson*
444 U.S. 286 (1980) ........................................................................................18

*Wright v. City of St. Petersburg*
833 F.3d 1291 (11th Cir. 2016)........................................................................20

*Younger v. Harris*
401 U.S. 37 (1971) ...................................................................................passim

iv

**U.S. CONSTITUTION AND STATUTES**

U.S. Const. amend. II ..................................................................................................... 25

Cal. Bus. & Prof. Code
§ 17200 ............................................................................................................................ 3
§ 17203 ............................................................................................................................ 3
§ 17204 ............................................................................................................................ 3
§ 17206 ............................................................................................................................ 3

Cal. Civ. Code
§ 3273.60 ........................................................................................................................ 21
§ 3273.61 ...................................................................................................................... 2, 3
§ 3273.625 .................................................................................................................... 2, 3

Fla. Stat. Ann.
§ 48.193(1)(a)(1)-(9) .................................................................................................. 11

**RULES**

Federal Rule of Civil Procedure
Rule 12(b)(1) ........................................................................................................ 1, 4, 5, 6
Rule 12(b)(2) ........................................................................................................ 5, 6, 10
Rule 12(b)(6) ........................................................................................................ 5, 6, 19

**OTHER AUTHORITIES**

Defcad.com, https://defcad.com/faq/ (last visited Mar. 22, 2026) ........................ 2

Peter K. Yu, *A Hater's Guide to Geoblocking*, 25 B.U. J. of Sci. & Tech. L. 503,
504-506 (2019) ........................................................................................................... 2

## INTRODUCTION

Plaintiffs Ctrlpew LLC and Alexander Holladay ("Plaintiffs") seek to enjoin a pending state-court enforcement action filed in California by two California officials—Defendants California Attorney General Rob Bonta ("AG Bonta") and San Francisco City Attorney David Chiu ("City Attorney Chiu")—to enforce California law.  Plaintiffs' complaint is deficient on multiple grounds and must be dismissed.  First, Plaintiffs' lawsuit exceeds the well-established limits on federal courts' jurisdiction to enjoin state court proceedings under *Younger v. Harris*, 401 U.S. 37 (1971).  Second, Plaintiffs cannot show that this Court has personal jurisdiction over Defendants under either the Florida long-arm statute or principles of constitutional due process.  And third, even if these jurisdictional flaws were not fatal to Plaintiffs' complaint, Plaintiffs also fail to plausibly allege any violations of their constitutional rights.  As such, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1), (2), and (6).

## FACTUAL BACKGROUND

The State of California faces a public safety crisis stemming from the proliferation of untraceable self-manufactured firearms—commonly called ghost guns.  Compl. Ex. 1 (*People v. Gatalog* Complaint ("CA Compl.")) ¶¶ 2, 33-36.  Firearms built using 3D printers represent a growing subset of the ghost gun threat in the State.  *Id.* ¶¶ 3, 37-49.  These weapons are

1

particularly dangerous because they can be easily and quickly assembled at home by anyone, bypassing background check requirements and allowing felons and other dangerous individuals easy access to firearms. *Id.* ¶¶ 28-29. Ghost guns also typically lack serial numbers and are effectively untraceable by law enforcement. *Id.* ¶¶ 28, 29, 32. In response to these threats, the California Legislature has enacted laws limiting the manufacture of 3D-printed guns in California and the distribution into California of the digital code to build these guns. Cal. Civ. Code §§ 3273.61, 3273.625.

Plaintiffs operate a website (ctrlpew.com) and profiles on a third-party platform (Odysee) through which they make available 3D printer code that can be used to quickly manufacture a functional firearm. Compl. ¶¶ 12-13, 50; CA Compl. ¶¶ 79-84. Through their website and related profiles, Plaintiffs make their 3D printer code available to individuals in California and do not take steps to restrict that access—despite the availability of technology to do so. Compl. ¶¶ 2, 26.[1] Plaintiffs' profiles include 3D printer code for a purportedly California-compliant firearm and their website

---

[1] *See* Peter K. Yu, *A Hater's Guide to Geoblocking*, 25 B.U. J. of Sci. & Tech. L. 503, 504-506 (2019) (describing techniques like "geoblocking" that allow a content owner to restrict access to a website or other content based on the user's location); *See, e.g.*, FAQ, "Why does DEFCAD have access controls," Defcad.com, https://defcad.com/faq/ (last visited Mar. 22, 2026) (stating that Defcad, another distributer of digital firearm manufacturing code "enforces standard security and access controls to allow for the legal publication and transfer of GunCAD files" because of restrictions on this code in states like California).

includes content referencing California laws and California regulators.  CA Compl. ¶¶ 69, 91.

On February 6, 2026, AG Bonta and City Attorney Chiu filed a civil enforcement action in San Francisco Superior Court (the "California case") against Plaintiffs and other associated individuals and entities.  Compl. ¶ 18. The California case alleges that Plaintiffs distribute 3D printer firearm code (also known as "digital firearm manufacturing code") into California in violation of three California statutes: California Civil Code §§ 3273.61 and 3273.625, and California's unfair business practices act, California Business and Professions Code § 17200 *et seq.*  CA Compl. ¶¶ 1-7, 97-105.[2]  Through the California case, AG Bonta and City Attorney Chiu seek to stop Plaintiffs from distributing firearms printing code into California.  *See* CA Compl. ¶ 7 ("The People bring this action to stop Defendants from continuing the spread of unlawfully 3D-printed firearms and prohibited firearm accessories in California."); *id.* ¶ 105(a), (b) (alleging California law violations based on distributing code "to persons in California").  Plaintiffs in this case have moved to dismiss the California case for lack of personal jurisdiction, and the Defendants (on behalf of the People of the State of California) are seeking a preliminary injunction to enjoin the distribution of Plaintiffs' digital code into

---

[2] AG Bonta and City Attorney Chiu are authorized to enforce these statutes in the name of the sovereign People of the State of California.  *See* Cal. Civ. Code §§ 3273.61(c), 3273.625(c)(2); Cal. Bus. & Prof. Code §§ 17203, 17204, 17206.

California.  The motion to dismiss will be heard on May 29, 2026, and the preliminary injunction motion will be heard on July 28, 2026.[3]

On February 11, 2026, Plaintiffs filed the instant action against AG Bonta and City Attorney Chiu in their official capacities.  Plaintiffs assert that the relief in the California case will unlawfully apply extraterritorially and will infringe on their constitutional rights under the First and Second Amendments, the Due Process Clause, and the Dormant Commerce Clause. Compl. ¶¶ 37–52.  Plaintiffs seek injunctive and declaratory relief adjudicating the constitutionality of the statutes at issue in the California case and limiting the scope of relief that may be sought in that case.  *See* Compl. ¶¶ 37-53.  On March 10, the Court denied Plaintiffs' request for a Temporary Restraining Order, finding that they had not shown a substantial likelihood of success on the merits.  *See* ECF No. 10 ("TRO Order").

## LEGAL STANDARD

In adjudicating a facial attack to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a district court must determine if the well-pleaded allegations in the complaint allege a sufficient basis for subject matter jurisdiction.  In doing so, the court may consider material

---

[3] *See* Register of Actions, *People v. Gatalog Foundation Inc.*, S.F. Super. Ct. Case No. CGC-26-633508, available at https://webapps.sftc.org/ci/CaseInfo.dll?&SessionID =04260093F7CABFF2442F1D3C421F6FAE597BB09F.  If it would assist the Court, Defendants can provide the Court with copies of the relevant motions and orders from the California case docket.

attached to the complaint, incorporated by reference, or subject to judicial notice. *See Mulhall v. United Here Local 355*, 618 F.3d 1279, 1289 n.10 (11th Cir. 2010). Motions to dismiss raising *Younger* abstention may be brought under Rule 12(b)(1). *See, e.g., Moore v. Judicial Inquiry Comm'n of the State of Alabama*, 200 F. Supp. 3d 1328, 1331 (M.D. Ala. 2016).

In order to survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a plaintiff must allege "sufficient facts to make out a prima facie case of jurisdiction." *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). But if defendants submit evidence rebutting the allegations, the burden shifts back to the plaintiff to provide evidence supporting jurisdiction. *Id.*

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A district court must accept as true the well-pleaded allegations in the complaint but need not accept threadbare or conclusory statements or legal conclusions couched as factual allegations. *Id.* In analyzing a motion under Rule 12(b)(6), a court may consider documents attached to the complaint that are central to the plaintiff's claim and whose authenticity is not challenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

## SUMMARY OF ARGUMENT

Plaintiffs' complaint is fatally flawed and must be dismissed for three reasons.  First, under Rule 12(b)(1), this Court lacks subject matter jurisdiction and must abstain under *Younger v. Harris*, 401 U.S. 37 (1971), because Plaintiffs' claims seek to interfere with the ongoing California civil enforcement action.  Second, under Rule 12(b)(2), Plaintiffs have failed to establish that this Court has personal jurisdiction over AG Bonta and City Attorney Chiu under either the Florida long-arm statute or the Due Process Clause since Plaintiffs' claims arise from California-based Defendants' effort to enforce California law in a California court.  Finally, Plaintiffs' complaint is subject to dismissal under Rule 12(b)(6) because Plaintiffs have failed to plausibly allege any violations of their constitutional rights.

## ARGUMENT

### I.   THIS ACTION IS BARRED BY *YOUNGER* ABSTENTION

Under the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), a federal court must "abstain where a plaintiff's federal claims could be adjudicated in a pending state judicial proceeding." *Leonard v. Ala. State Bd. of Pharmacy*, 61 F.4th 902, 907 (11th Cir. 2023) (quoting *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988)).  *Younger* abstention "reflects the norms of comity and respect inherent in 'Our Federalism.'" *Id.* (quoting *Younger*, 401 U.S. at 44).  Here, the California civil enforcement action is the

6

quintessential kind of action to which *Younger* applies. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79-80 (2013) (*Younger* abstention applies to civil enforcement actions akin to criminal prosecutions).

To determine whether *Younger* abstention applies to a specific case, a federal court looks to the three factors from *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). "First, is the state proceeding 'ongoing' at the same time as the federal one?" *E.g.*, *Leonard*, 61 F.4th at 908 (citation omitted). "Second, does the state proceeding implicate an 'important state interest'?" *Id.* "And third, does the state proceeding provide an 'adequate opportunity' to raise the federal claim?" *Id.*

All three *Middlesex* factors are met here. First, a state proceeding was ongoing when Plaintiffs here filed their case, and this proceeding would interfere with the state proceeding. Defendants filed the state court action on February 6, and Plaintiffs filed this action five days later on February 11. In terms of interference, a court "look[s] to the relief requested and the effect it would have on the state proceedings." *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003). "The relief sought need not directly interfere with an ongoing proceeding or terminate an ongoing proceeding for *Younger* abstention to be required." *Id.* Instead, the interference requirement is met where a federal plaintiff seeks to place "decisions that are . . . in the hands of

7

the state courts under the direction of the federal district court," *id.* at 1278, or affect the state court's "ability to conduct proceedings," *id.* at 1277 (quoting *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002)).

Here, "[c]learly, there is an ongoing state judicial proceeding . . . that effectively would be enjoined if the federal court declared the" challenged California law "to be unconstitutional: the state court enforcement action." *Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1261-1262 (11th Cir. 1997).  Plaintiffs attempt to avoid this clear interference by contending they only seek to avoid the application of the California laws to their "speech and publication activities undertaken wholly in Florida." Compl. ¶ 35.  But Plaintiffs do not explain what they mean by their Florida-based speech—including whether such "Florida-based speech" includes the distribution of their code into California, the precise scenario that is at issue in the California action.  In fact, the central focus of Plaintiffs' complaint is their concerns about the impact of the California enforcement proceeding. *E.g.*, Compl. ¶¶ 3, 22, 24, 26.

But questions about the scope of any orders issued by the California courts in the California action—including any impact of such orders on Plaintiffs' "Florida-based speech," Compl. ¶ 39—are properly left for the California court to address in the first instance.  In order to award Plaintiffs the relief they seek, this Court "would have to find that [California] state

courts are incapable of enforcing the federal constitution in this context." *Old Republic Union Ins. Co.*, 124 F.3d at 1263. "Merely stating that proposition is sufficient to illustrate why the *Younger* doctrine stands in the way of the relief sought." *Id.*

Second, the civil enforcement proceeding implicates an important state interest. As the California complaint explains, ghost guns pose a growing danger to public safety. *See* CA Compl. ¶¶ 2-3, 29, 33-36, 43, 45-49. Code that allows individuals in California to 3D print a working firearm—such as the code available on Plaintiffs' websites—creates a tangible and grave risk to public safety in California. *Id.* The laws that Plaintiffs challenge seek to mitigate that risk by prohibiting the distribution within California of the digital firearm manufacturing code that allows any person, anywhere to 3D print their own functional ghost gun. *See id.* ¶ 4.

Third, the ongoing California proceeding provides an adequate forum to raise the constitutional issues that Plaintiffs raise here. "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *31 Foster Children*, 329 F.3d at 1279 (quoting *Middlesex*, 457 U.S. at 431). Thus, "[a] federal court 'should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *Id.* (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)). Plaintiffs will have every

opportunity to raise every argument they seek to raise here in the pending civil enforcement action, including any challenge to the constitutionality and territorial reach of California's laws.  In fact, Plaintiffs have already raised many of these constitutional arguments in their opposition to preliminary relief in the California case.[4]  Thus, the third *Middlesex* factor is met.

Because all three *Middlesex* factors are met, *Younger* abstention applies.  Because Plaintiffs seek only injunctive and declaratory relief, this Court should dismiss this action without prejudice.

## II.   THE COURT LACKS PERSONAL JURISDICTION

Plaintiffs' complaint must also be dismissed under Rule 12(b)(2) for lack of personal jurisdiction over Defendants.  Plaintiffs bear the burden of establishing that personal jurisdiction exists under *both* Florida's long-arm statute and the Due Process Clause.  *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996).  Because Florida's long-arm statute "is not coextensive with the limits of due process," these two requirements are distinct and must both be met before a court may exercise personal jurisdiction.  *Saint-Gobain Tech. Fabrics Am., Inc. v. Checkmate Geosynthetics, Inc.*, No. 6:09-cv-557-Orl-35KRS, 2010 WL 11507686, *2 (M.D.

---

[4] *See* Opp. to Plts.' Ex Parte Application, *People v. Gatalog Foundation Inc.*, S.F. Super. Ct. No. CGC-26-633508 (filed Apr. 3, 2026) (raising, *inter alia*, First Amendment and Due Process concerns), available at https://webapps.sftc.org/ci/CaseInfo.dll?&SessionID=04260093F7CABFF2442F1D3C421F6FAE597BB09F.

Fla. Feb. 5, 2010); *see also Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 393-94 (11th Cir. 1988).[5]  Neither requirement is met here.

### A.    Plaintiffs Cannot Satisfy the Florida Long-Arm Statute

To establish specific personal jurisdiction over a non-resident defendant under the Florida long-arm statute, a plaintiff must allege that the defendant committed one of nine statutorily enumerated acts, and that plaintiffs' cause of action arises from those acts.  *See* Fla. Stat. Ann. § 48.193(1)(a)(1)-(9).

Plaintiffs' complaint fails entirely to address the long-arm statute.  The sum and substance of Plaintiffs' jurisdictional allegations are that Defendants filed a civil enforcement action in California that is allegedly "directed . . . at identified Florida residents and Florida-based publication activity" and that chilled Plaintiffs' speech in Florida.  Compl. ¶ 6.  These allegations clearly do not reference any of the acts in § 48.193(1)(a)(3)-(9). Nor does Plaintiffs' complaint allege that Defendants' filing of a California lawsuit constitutes "[o]perating, conducting, engaging in, or carrying on a business or business venture" under subsection (a)(1).  *See Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (subsection (a)(1) requires a showing of "a general course of

---

[5] On this basis alone, Plaintiffs' citation to *Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020) and *Media Matters for America v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025) are inapposite. *See* Compl. ¶ 6. Unlike the Florida long-arm statute, the long arm statutes at issue in those cases (Texas and D.C. respectively) were both coextensive with the Due Process Clause. *See Defense Distributed*, 971 F.3d at 490; *Media Matters*, 138 F.4th at 576.

business activity in the state for pecuniary benefit," including consideration of whether defendant has an office, serves clients, or earns revenue in state).[6]

Plaintiffs also have not alleged that Defendants have committed a tortious act in Florida under subsection (a)(2).  As an initial matter, Plaintiffs do not allege that Defendants lacked probable cause for their lawsuit or that their lawsuit is an abuse of process.  Rather, all they claim is that Defendants filed an enforcement action to enforce a duly enacted California law.  That is not a tort.  Nor can Plaintiffs show that Defendants committed any tortious act *in Florida*.  For the tortious act basis for personal jurisdiction to apply, a plaintiff must demonstrate that the non-resident defendant committed "a substantial aspect of the alleged tort in Florida" by establishing that the defendant's activities in Florida were "essential to the success of the tort." *Williams Elec. Co.*, 854 F.2d at 394 (quotation marks and citation omitted). Here, Plaintiffs' claims arise from a California action brought by California officials to enforce California laws and focus on the relief that a California judge might order.  *See, e.g.*, Compl. ¶¶ 18-20, 35, 53.

---

[6] By contrast to Florida's definition of conducting business within the state, *see Horizon Aggressive Growth L.P.*, 421 F.3d at 1167, the D.C. Circuit in *Media Matters* emphasized the breadth of the D.C. long arm statute's provision for jurisdiction over defendants that "transact[] any business in the District," 138 F.4th at 576.  Thus, the D.C. Circuit's analysis of personal jurisdiction under D.C.'s long-arm statute has no bearing on whether there is personal jurisdiction here under Florida's statute.

Florida courts of appeal[7] and federal courts have found that non-resident defendants are not subject to personal jurisdiction for filing out-of-state lawsuits in cases like this one. *See, e.g.*, *Korman v. Kent*, 821 So.2d 408, 410-11 (Fla. Dist. Ct. App. 2002) (finding no personal jurisdiction over non-resident defendants for allegedly baseless Nevada lawsuit targeting Florida plaintiff and rejecting proposition that the "tort was committed in Florida simply because the person resides here"); *Homeway Furniture Co. of Mount Airy, Inc. v. Horne*, 822 So.2d 533, 539 (Fla. Dist. Ct. App. 2002); *Rubber Res. Ltd. LLP v. Press*, No. 8:08-cv-1730-T-27-TBM, 2009 WL 211556, *4-5 (M.D. Fla. Jan. 27, 2009) (both reaching similar conclusions).[8]

Finally, where, as here, Plaintiffs fail to state a viable cause of action, *see* Part III, *infra*, courts have held that personal jurisdiction is lacking under the tortious act prong. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808-10 (11th Cir. 2010) (noting that under Florida long-arm statute, court determines whether complaint states a viable cause of action, and concluding that claims for which plaintiffs failed to state a plausible

---

[7] "Absent some indication that the Florida Supreme Court would hold otherwise," federal courts "are bound to adhere to the decisions of [Florida's] intermediate courts." *Sculptchair, Inc.*, 94 F.3d at 627 (quotation marks and citation omitted).

[8] *See also Hirsch v. Weitz*, 16 So.3d 148, 149 (Fla. Dist. Ct. App. 2009); *Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 736 (11th Cir. 2018) (both declining to find personal jurisdiction over out-of-state defendant under tortious act prong of Florida long-arm statute for alleged legal malpractice occurring outside Florida, despite harms to clients in Florida).

claim were "beyond the reach of Florida's long-arm statute").  Thus, Plaintiffs fail to establish personal jurisdiction under Florida's long-arm statute.

## B.    Exercising Personal Jurisdiction over Defendants Is Inconsistent with Due Process

Even if Plaintiffs could show that Florida's long-arm statute applies, personal jurisdiction over Defendants would violate constitutional due process requirements.  In order to establish personal jurisdiction under the Due Process Clause, Plaintiffs must show that Defendants have "minimum contacts" with Florida and that the exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice."  *Moore v. Cecil*, 109 F.4th 1352, 1362 (11th Cir. 2024) (citation omitted).  Plaintiffs fail to establish either element.

### 1.    Defendants Lack Minimum Contacts with Florida

Under the "effects" test articulated in *Calder v. Jones*, 465 U.S. 783 (1984), a "defendant's actions do not create sufficient contacts with the forum state 'simply because he allegedly directed his conduct at [a] plaintiff[ ] whom he knew had . . . connections' with the forum state."  *Moore*, 109 F.4th at 1363 (quoting *Walden v. Fiore*, 571 U.S. 277, 289 (2014)); *see also Walden*, 571 U.S. at 285, 290 (making clear that "mere injury to a forum resident is not a sufficient connection").  Rather, the analysis focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with

14

persons who reside there." *Walden*, 571 U.S. at 285.  Plaintiffs, however, identify *no* connection between Defendants and Florida beyond the alleged injury to Plaintiffs' Florida-based speech.

Courts have consistently held that a state regulator may uniformly enforce its laws against out-of-state residents who engage in activity in the State without being subject to personal jurisdiction in another forum.  For example, in *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008), the Fifth Circuit held that Texas courts did not have personal jurisdiction over an Arizona regulator who sent a cease-and-desist letter demanding that a Texas company stop engaging in business with Arizona residents and property owners, including over the Internet.  *Id.* at 480-81. Even though the regulator's action was "based on [plaintiff's] conduct which occurred entirely in Texas," this was insufficient for personal jurisdiction because the regulator was seeking to exercise authority over Texas-based activity that implicated Arizona residents or property.  *Id.* at 485-86.  The court rejected the principle that a regulator attempting to "uniformly apply its laws" to entities transacting business in its jurisdiction "could potentially be subjected to suit in any state where the validity of her state's laws were in question." *Id.* at 486-87; *see also Bulkley & Assocs., LLC v. Cal. Dep't. of Indus. Relations*, 1 F.4th 346, 354-55 (5th Cir. 2021) (no jurisdiction over California regulator where regulator's demand that Texas company "chang[e]

15

its policies in Texas" was related to California-based conduct and sought to enforce California laws); *United States v. Ferrara*, 54 F.3d 825, 830 (D.C. Cir. 1995) (New Mexico bar counsel not subject to jurisdiction in DC because proceeding against DC-based lawyer admitted to New Mexico bar was intended to "uphold the ethical standards of the New Mexico bar" "wherever . . . misconduct might occur").

Courts have also repeatedly found that the filing of out-of-state litigation targeting an in-state plaintiff does not suffice to establish personal jurisdiction. *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 696 (7th Cir. 2018); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144-45 (9th Cir. 2017); *City of San Francisco v. Exxon Mobil Corp.*, No. 02-18-00106-CV, 2020 WL 3969558,*17 (Tex. App. June 18, 2020); *SpaceCo Bus. Sols., Inc. v. Mass Engineered Design, Inc.*, 942 F. Supp. 2d 1148, 1154 (D. Colo. 2013).

As in this consistent line of cases, AG Bonta and City Attorney Chiu do not subject themselves to personal jurisdiction in a Florida court by initiating litigation in California to uniformly enforce California laws with respect to distribution of digital code *into California*. Against this overwhelming weight of authority, Plaintiffs' complaint cites two cases—*Defense Distributed v. Grewal* and *Media Matters of America v. Paxton*—both of which are distinguishable. In *Defense Distributed*, the Fifth Circuit focused on the fact that, unlike in this case, the New Jersey Attorney General "d[id] not cabin

16

his request by commanding the plaintiffs to stop publishing materials to New Jersey residents" and instead demanded that "plaintiffs cease publication of their materials generally." 971 F.3d at 492; *see also id.* at 493. Given the facts of the case—including that the New Jersey Attorney General had initiated a lawsuit in Washington to "enjoin the national distribution of Defense Distributed's files"—the court concluded that personal jurisdiction was warranted. *Id.*; *see also Bulkley*, 1 F.4th at 354-55 (distinguishing *Defense Distributed* from *Stroman Realty* on these grounds). No similar conduct is at issue here. *See* Compl. ¶¶ 7, 105(a), (b).

Similarly, *Media Matters* involved a "sweeping civil investigative demand" issued by the Texas Attorney General to a DC-based business that sought information with little ostensible nexus to Texas, including all "communications with employees and representatives" of eleven different entities, "documents concerning . . . internal operations, structure expenditures, and reporting processes," and "sources of funding for reporting on X." 138 F.4th at 569. The court therefore concluded that the investigation was a retaliatory attempt to target the plaintiffs' DC operations (a fact that the Texas Attorney General did not contest), *id.* at 578—unlike this case, where Defendants seek only to enforce California laws with respect to Plaintiffs' choice to distribute code into California. Thus, unlike in the cases Plaintiffs cite, Defendants here do not have minimum contacts with Florida.

17

### 2.  Exercising Jurisdiction over Defendants in Florida Would Offend Fair Play and Substantial Justice

Finally, even if Plaintiffs could show that Defendants have established sufficient contacts with Florida, hauling Defendants into court in Florida would offend notions of fair play and substantial justice.  Courts consider four factors (1) "the burden on the defendant"; (2) "the forum state's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (citations omitted).  Here, these factors weigh against personal jurisdiction.

First, it would undoubtedly be burdensome to require Defendants—who have no presence in Florida—to travel over 3,000 miles to litigate the validity of California laws.  *See DiMaggio, LLC v. City & Cnty. of San Francisco*, 187 F. Supp. 2d 1359, 1371 (S.D. Fla. 2000).  Second, even if Florida has an interest in protecting its residents, it "has little interest in adjudicating disputes over other states' statutes"—particularly given the weighty federalism concerns at play and California's strong interest in having its statutes interpreted by its own courts.  *Stroman Realty, Inc.*, 513 F.3d at 487-88.  Finally, Plaintiffs remain able to raise their constitutional claims in the California case, and judicial efficiency and uniformity will be promoted by allowing the California court to adjudicate the constitutionality of

18

California's laws in the earlier-filed action. *Id.* at 488 (noting the concerns about a "multiplicity of inconsistent verdicts" if both a Texas and Arizona court adjudicated the constitutionality of Arizona statute); *see also, e.g.*, *Mitchell v. Motazedi*, No. 25-cv-02783-CMA-KMT, 2021 WL 3727970, *6 (D. Colo. Aug. 12, 2021) (fair play and substantial justice did not support personal jurisdiction in Colorado over Florida dispute that implicated validity of Florida's laws). Therefore, even if Defendants had minimum contacts, the exercise of personal jurisdiction here would not comport with due process.

## III. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM

Although this Court should dismiss the complaint on jurisdictional grounds and not reach the merits of Plaintiffs' claims, *see* Parts I, II, *supra*, dismissal is also proper under Rule 12(b)(6) because Plaintiffs' complaint fails to state a viable claim on any of their causes of action.

### A. First Amendment

Plaintiffs first contend that the challenged enforcement action violates the First Amendment because it "functions as an unconstitutional prior restraint and content-based restriction." Compl. ¶ 39. But Plaintiffs have failed to allege that their digital code is protected by the First Amendment.

"The Supreme Court has explained that . . . First Amendment scrutiny applies 'only where it was conduct with a significant expressive element that drew the legal remedy in the first place'" or where a law "'based on

19

nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity.'" *Wright v. City of St. Petersburg*, 833 F.3d 1291, 1296 (11th Cir. 2016) (citation omitted).  As this Court recently recognized in denying Plaintiffs' motion for temporary restraining order, computer code is not necessarily protected by the First Amendment.  TRO Order at p. 4; *see also Def. Distributed v. Att'y Gen. of New Jersey*, 167 F.4th 65, 82 (3d Cir. 2026).  The Third Circuit in *Defense Distributed* articulated several factors to guide the inquiry into whether particular computer code is protected by the First Amendment, including: (1) "the technical nature of the code," (2) "how that code is used in context," (3) "who is communicating through the code and the intended recipient of the communication," (4) "for what purpose or purposes the computer code operates," and (5) "what, if anything, the code communicates."  167 F.4th at 84.

As this Court has already found, Plaintiffs have not alleged or established that the digital firearm manufacturing code at issue here is expressive.  TRO Order at pp. 4-5.  If anything, the California case clearly targets functional, non-expressive code that enables the production of deadly firearms.  *See* CA Compl. ¶¶ 39-41, 61, 64, 79-85; *see also* Compl. ¶¶ 2, 12 (plaintiffs provide "digital design files" and "technical instructions" for 3D printing weapons).  Moreover, the plain language of the relevant California statutes is directed at functional, non-expressive code that is intended to be

read by a computer or 3D printing machine and to provide instructions for such a machine to print a specific item. *See, e.g.*, Cal. Civ. Code § 3273.60(a) (defining "digital firearm manufacturing code" as "any digital instructions in the form of computer-aided design files, computer-aided manufacturing files, or other code or instructions . . . that may be used to program" a 3D printer to make specified firearms and parts). Looking to the factors identified in *Defense Distributed*, the statutory definition makes clear that the California law regulates functional code that is not protected by the First Amendment. Thus, Plaintiffs have failed to state a viable First Amendment claim.

## B. Fourteenth Amendment

Second, Plaintiffs contend that the ongoing enforcement activities violate the Due Process Clause of the Fourteenth Amendment because California is "impos[ing] its law extraterritorially on persons with insufficient contacts to the State" and is seeking to "punish or enjoin conduct that occurs wholly outside the State's borders." Compl. ¶ 42. "A state's legislative jurisdiction is circumscribed by the Due Process Clause." *Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000) (en banc). For a State to exercise legislative jurisdiction, "[t]here must be at least some minimal contact between a State and the regulated subject." *Id.* (citation omitted).

21

That requirement is met here.  The Fourteenth Amendment's Due Process Clause is concerned with "a state legislature's ability to regulate subject matter and transactions *beyond the state's boundaries*."  *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1236-1237 (11th Cir. 2001) (emphasis added).  Defendants' enforcement of the California statutes at issue does not seek to reach transactions wholly beyond California's borders.  Rather, as this Court noted, "this case presents an attempt by California to prohibit the sale or manufacture of ghost guns *inside of its own borders* by anyone, regardless of in-state or out-of-state status."  TRO Order at p. 6; *see also* CA Compl. ¶¶ 7, 105(a), (b).  Regulating the goods that enter a State's borders—whether those goods are electronic or physical—is a quintessential exercise of the State's police power.  *See* TRO Order at p. 6; *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 375 (2023) ("[T]his Court has recognized the usual 'legislative power of a State to act upon persons and property within the limits of its own territory,' a feature of our constitutional order that allows 'different communities' to live 'with different local standards.'" (citations omitted)).  It is certainly not prohibited by the Due Process Clause.

## C. Dormant Commerce Clause

Plaintiffs similarly contend that the pending California civil enforcement action "operate[s] as impermissible extraterritorial regulation by controlling

22

conduct and speech wholly occurring outside California," in violation of the Dormant Commerce Clause.  Compl. ¶ 47.  While the Commerce Clause "expressly concerns Congress's power, the Supreme Court has discerned a dormant or negative aspect that limits the power of the 'several States,' to burden foreign or interstate commerce."  *Norwegian Cruise Line Holdings Ltd. v. State Surgeon Gen. Fla. Dep't of Health*, 50 F.4th 1126, 1141 (11th Cir. 2022).  "[T]here are only two ways a statute can violate the Dormant Commerce Clause: 'by discriminating against interstate commerce'" or "'by unduly burdening interstate commerce.'"  *Id.* (citation omitted).  Plaintiffs, however, do not allege that the relevant California law either discriminates against out-of-state businesses or that it burdens interstate commerce.  Compl. ¶¶ 46-48.  Nor could they.  The statute evenhandedly prohibits any person from distributing digital firearm manufacturing code to someone in California, regardless of the person's location.  *See* TRO Order at p. 6 (regulations apply "equally to those operating in-state and those operating out-of-state").

Instead, Plaintiffs contend that the California law violates the Dormant Commerce Clause because it regulates conduct occurring in another State.  *See* Compl. ¶ 47.  But the Supreme Court has rejected the argument that the Dormant Commerce Clause *per se* prohibits "state laws with 'extraterritorial effects.'"  *Nat'l Pork Producers*, 598 U.S. at 373 (citation omitted).  After all,

23

"[i]n our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior." *Id.* at 374 (citation omitted). Whatever the limits of the Dormant Commerce Clause, the Supreme Court has "reiterated that, absent discrimination, 'a State may exclude from its territory, or prohibit the sale therein of any articles which, in its judgment, fairly exercised, are prejudicial to' the interests of its citizens." *Id.* at 369 (citation omitted). That is precisely what the challenged California law does: it prohibits the distribution of digital code within California that poses a risk of harm to California's citizens. *See* TRO Order at p. 6. Such a restriction does not violate the Dormant Commerce Clause.

### D. Second Amendment

Finally, Plaintiffs contend that the California law "burden[s] conduct protected by the Second Amendment," because it "suppress[es] and penalize[s] Plaintiffs' Florida-based publications" that "relate to the design and lawful manufacture of arms and arm components." Compl. ¶¶ 50-51. That claim fails at the outset because Plaintiffs lack standing to raise a Second Amendment claim since they do not allege that the California laws in any way intrude upon their "purported right to self-manufacture." *See Defense Distributed*, 167 F.4th at 77 (dismissing Second Amendment challenge to regulation of digital firearm code for lack of standing).

24

Plaintiffs' Second Amendment claim is doubly flawed because the Second Amendment does not encompass a right to distribute digital manufacturing code and instructions to help others self-manufacture firearms.  The threshold question for any Second Amendment challenge is whether the plaintiffs have shown that the Amendment's plain text covers the regulated conduct at issue.  If the answer is "no," then the inquiry ends and the challenge fails.  *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022); *Doe v. Bonta,* 101 F.4th 633, 639-40 (9th Cir. 2024).  Here, distributing digital manufacturing code and instructions to help others self-manufacture firearms is clearly not covered by the Second Amendment's protection for "keep[ing]" or "bear[ing]" "Arms" for lawful purposes.  U.S. Const. amend. II; *see, e.g.*, *Def. Distributed v. Bonta*, No. CV 22-6200, 2022 WL 15524977, *4 (C.D. Cal. Oct. 21, 2022), *adopted* 2022 WL 15524983 (C.D. Cal. Oct. 24, 2022); *Montgomery v. Rosenblum*, No. 3:24-cv-01273-AN, 2025 WL 2781758, *7 (D. Or. Sept. 29, 2025).  There are simply no allegations that demonstrate how the alleged "suppress[ion]" of Plaintiffs' digital code in any way impairs their ability to keep and bear arms.  Plaintiffs therefore fail to state a viable Second Amendment claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' complaint.

25

## Local Rule 3.01(g) Certification

Undersigned counsel conferred by opposing counsel by videoconference platform on April 3, 2026.  The Parties were unable to agree on resolution of the issues raised in the motion, and undersigned counsel expects that this motion will be opposed.

Dated: April 9, 2026

DAVID CHIU, City Attorney
YVONNE R. MERÉ, Chief Deputy City Attorney
SARA J. EISENBERG, Chief of Complex & Affirmative Litigation
RONALD H. LEE, Assistant Chief of Complex & Affirmative Litigation
KARUN TILAK, Deputy City Attorney

By:  */s/Karun A. Tilak*
KARUN A. TILAK*
San Francisco City Attorney's Office
1390 Market St., 7th Floor
San Francisco, CA 94102
Telephone:  (415) 355-3308
Email:        karun.tilak@sfcityatty.org

*Attorneys for Defendant David Chiu in his official capacity as San Francisco City Attorney*

*admitted pro hac vice

26

ROB BONTA, Attorney General of
California
ANYA M. BINSACCA
CHARLES J. SAROSY, Supervising
Deputy Attorneys General
KRISTIN A. LISKA, Deputy Attorney
General

By:  */s/ Kristin A. Liska*
    KRISTIN A. LISKA*
    California Department of Justice
    Office of the Attorney General
    455 Golden Gate Ave., Suite 11000
    San Francisco, CA 94102
    Telephone:  (415) 510-3916
    E: mail:      Kristin.Liska@doj.ca.gov

    *Attorneys for Defendant Rob Bonta in his
    official capacity as Attorney General of
    California*

    *admitted pro hac vice

27