UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:26-cv-340

CTRLPEW LLC, ALEXANDER
HOLLADAY, CENTURION PARTNERS
GROUP LLC, TREY BICKLEY, and
JONATHAN ADAMS,

                    *Plaintiffs*,

v.

DAVID CHIU, in his official capacity as San
Francisco City Attorney, and ROB BONTA, in
his official capacity as Attorney General of
California,

                    *Defendants*.

_____/

## FIRST AMENDED COMPLAINT

Plaintiffs CTRLPEW LLC, Alexander Holladay, Centurion Partners Group
LLC, Trey Bickley, and Jonathan Adams sue Defendants David Chiu, in his official
capacity as San Francisco City Attorney, and Rob Bonta, in his official capacity as
Attorney General of California, and allege:

## INTRODUCTION

1.     This is a civil-rights action under 42 U.S.C. § 1983 and the Declaratory
Judgment Act, 28 U.S.C. §§ 2201–2202, seeking declaratory and prospective
injunctive relief to prevent California officials from applying California Civil Code §§
3273.61 and 3273.625 to speech, publication, receipt, viewing, archiving, repair,

1

maintenance, research, lawful arms-related business activity, and other lawful conduct occurring wholly in Florida.

2.     Plaintiffs do not seek to enjoin the California state-court proceeding captioned The People of the State of California v. Gatalog Foundation Inc., et al., Case No. CGC-26-633508, pending in the Superior Court of California, County of San Francisco.

3.     Plaintiffs do not seek to prevent California from enforcing its laws against manufacture, possession, sale, transfer, or distribution occurring in California.

4.     Plaintiffs seek relief only as to Defendants' threatened and ongoing application of California law to Plaintiffs' Florida speech, Florida publication decisions, Florida receipt and viewing of speech, Florida repair and maintenance of arms, lawful Florida manufacture, and lawful Florida business activity.

5.     Plaintiffs seek no order directed to any California court.

6.     Plaintiffs seek no ruling controlling what any California court may do with respect to persons or conduct in California.

7.     Plaintiffs seek only to prevent Defendants from reaching into Florida to suppress, punish, or chill constitutionally protected Florida speech and lawful Florida Second Amendment conduct.

8.     Plaintiff Alexander Holladay creates expressive works involving and relating to firearms, including STEP files, STL files, PDFs, written guides, photographs, and images.

2

9.     Holladay's STEP and STL files are three-dimensional digital models. They are best understood as digital sculptures. They do not contain toolpaths, G-code, printer settings, CNC instructions, density values, material properties, or other manufacturing instructions.

10.     A STEP or STL model does not itself cause any machine to manufacture, or otherwise program a machine to manufacture.

11.     To manufacture an object from such a model, a user must use separate software to create an entirely new code file consisting of manufacturing instructions for a CNC machine, 3D printer, or similar device.

12.     Defendants' own preliminary-injunction papers in California distinguish between CAD files and the "gcode" that is transmitted to a printer, acknowledging that separate slicer software is used to generate the programming instructions for the printer. (Ex. 3, p. 10).

13.     Most users interact with Plaintiffs' 3D models visually. They open the models on computers, rotate them, inspect them, search for hidden details and easter eggs, compare designs, archive them, discuss them, and appreciate them as works of digital art, engineering expression, political commentary, humor, firearms history, and American culture.

14.     CTRLPEW LLC's publications generally include written instructions, photographs, PDFs, humor, political commentary, visual design, authorial explanation, and curated presentation.

15. For works created by Holladay, and for many works featured on CTRLPEW LLC's website, the written guides are authored in a distinctive style containing humor, jokes, quips, cultural references, and political commentary.

16. California Civil Code § 3273.60 defines "digital firearm manufacturing code" broadly enough to include "digital instructions" in the form of computer-aided design files, computer-aided manufacturing files, or other "code or instructions stored and displayed in electronic format as a digital model."

17. California Civil Code § 3273.61 authorizes actions over the distribution, "by any means including the internet," of such materials to certain persons in California.

18. California Civil Code § 3273.61 also creates strict liability for certain personal injuries or property damage, authorizes compensatory damages, authorizes civil penalties up to $25,000 per violation, authorizes injunctive relief, authorizes fee shifting, and creates a rebuttable presumption based on ownership or management of a website, electronic portal, database, or platform.

19. California Civil Code § 3273.625 makes it unlawful to knowingly, willfully, or recklessly cause another person to engage in the unlawful manufacture of firearms, or to knowingly, willfully, or recklessly aid, abet, promote, or facilitate the unlawful manufacture of firearms.

20. California Civil Code § 3273.625 authorizes compensatory damages, civil penalties up to $25,000 per violation, injunctive relief, and fee shifting.

21.    California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., also authorizes civil penalties up to $2,500 per violation.

22.    Defendants' enforcement theory likewise targets "code and instructions," including accompanying written instructions, commentary, and web pages. (Ex. 3, pp. 7, 14–18).

23.    Defendants' enforcement campaign therefore threatens digital sculptures, written guides, photographs, political commentary, links, descriptions, design notes, model pages, and other expressive works.

24.    Defendants are presently attempting to impose millions of dollars in penalties and obtain injunctive relief against the Floridian Holladay and CTRLPEW based on materials that were created and placed on the open internet—again, in Florida  years before the statutory provisions at issue took effect, including before the January 1, 2026 effective date of California Civil Code § 3273.625 and the rebuttable-presumption provision in § 3273.61(f).

25.    Defendants' theory is that a Floridian who put information on the open internet before California's later enforcement theory took effect must now, on pain of tens of thousands of dollars in statutory penalties per violation, ensure that Californians cannot access that information.

26.    That theory allows California to dictate the means and manner of First Amendment activity in Florida merely because the speech relates to firearms and appears on the internet.

27.    Because Defendants have sued some Plaintiffs in California, publicly accused their Florida publications of illegality, sought penalties and injunctive relief, announced an intent to enforce their regime against the Floridian Plaintiffs through third parties, sent process servers into Florida, and moved for preliminary injunctive relief, Holladay has completely ceased publishing new firearms-related works.

28.    Defendants' conduct injures Holladay and CTRLPEW as speakers and publishers.

29.    Defendants' conduct also injures Florida recipients and users of that speech, including Plaintiffs Centurion Partners Group LLC, Trey Bickley, and Jonathan Adams.

30.    Plaintiff Centurion Partners Group LLC (hereinafter "Centurion") is a Florida business and federally licensed firearms manufacturer with a Type 07 Federal Firearms License. Centurion uses CTRLPEW as a resource in its lawful Florida business.

31.    Plaintiff Trey Bickley is a Florida resident who uses CTRLPEW primarily to receive, read, view, study, archive, and appreciate firearms-related visual, technical, historical, and artistic works.

32.    Plaintiff Jonathan Adams is a Florida resident who lawfully made and possesses a Plastikov V4 firearm in Florida. Adams relies on the firearm for lawful purposes, including home defense, but the grip has broken away from the fire-control housing three times, rendering the firearm inoperable. Holladay has created a

6

reinforced model that would address this issue, but Holladay has not published it because of Defendants' enforcement campaign.

33.    This case therefore concerns the First Amendment right to speak, the First Amendment right to receive protected speech, the Second Amendment right to make, keep, maintain, repair, and use lawful arms, and the rights of Plaintiffs' CTRLPEW and Centurion's Florida customers, patrons, and lawful arms users to access protected speech needed to engage in lawful Second Amendment activity in Florida.

## JURISDICTION AND VENUE

34.    This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

35.    This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202 and prospective injunctive relief under the Court's equitable powers.

36.    Plaintiffs also seek attorneys' fees and costs under 42 U.S.C. § 1988.

37.    Personal jurisdiction is proper because Defendants have purposefully directed an enforcement campaign at identified Florida residents and Florida-based publication activity by (i) filing a civil enforcement complaint that names Plaintiffs Holladay and CTRLPEW, and seeks to impose civil penalties and injunctive relief on Plaintiffs for purely Floridian speech and links published on the open Internet; (ii) publicly announcing that enforcement action and characterizing Plaintiffs' Florida publication activity as unlawful; and (iii) thereby causing and intending to cause the

7

brunt of the constitutional injury—Plaintiffs' chilled speech and self-censorship—to be felt in Florida. *See Calder v. Jones*, 465 U.S. 783 (1984); *Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020); *Media Matters for Am. v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025).

38.    Personal jurisdiction is also proper under Florida's long-arm statute, including Fla. Stat. § 48.193(1)(a)(2), because Defendants committed tortious acts in Florida by intentionally directing a coercive enforcement campaign at Florida speakers, Florida publication activity, Florida websites and online profiles, Florida recipients and users of protected speech, and Florida lawful arms-related activity, causing the constitutional injuries alleged herein to occur in Florida.

39.    Defendants purposefully directed their conduct at Florida by, among other things, suing Florida residents and Florida entities, targeting Florida-based websites and online profiles, publicly accusing Plaintiffs' Florida publications of illegality, threatening penalties and injunctive relief against Plaintiffs for speech created and published from Florida, engaging process servers to serve Plaintiffs in Florida, and seeking relief that predictably suppresses Florida publication and Florida receipt of speech.

40.    Defendants' California complex-case application stated that they anticipated moving "in short order" for a preliminary injunction and that, if they obtained an injunction, they might need to effectuate it through third parties, including internet service providers supporting Defendants' websites and online profiles. (Ex. 4, pp. 5–6).

41.     Defendants also represented an intent to engage in supervision over websites and Odysee profiles and to enforce California policy against Florida speech through non-party internet service providers and social-media platforms. (Ex. 4, p. 8).

42.     Defendants have since moved in California for preliminary injunctive relief. Their *ex parte* application seeks an order directed not only at named defendants, but also at their agents, officers, managers, representatives, employees, heirs, assignees, members, associates, affiliates, and all persons acting in concert with them or on their behalf. (Ex. 5, p. 2).

43.     Defendants' preliminary-injunction filings seek to enjoin alleged "distribution" and also "aiding, abetting, promoting or facilitating" alleged unlawful manufacture in California. (Ex. 5, p. 2; Ex. 3, pp. 17 18).

44.     Defendants knew and intended that their enforcement campaign would operate against Florida residents, Florida entities, Florida publication decisions, and Florida publication infrastructure.

45.     Defendants' conduct has caused the brunt of the constitutional injury in Florida: Holladay's cessation of publication in Florida, CTRLPEW's chilled operation in Florida, Bickley's inability to receive and view new works in Florida, Adams's inability to receive and use a model needed to restore a lawfully possessed arm in Florida, and Centurion's inability to use CTRLPEW's publications in its lawful Florida business.

46.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, including Plaintiffs' publication activities and the resulting chilling and self-censorship in Orlando, Florida.

## PARTIES

47.  Plaintiff CTRLPEW LLC is a Florida limited liability company with its principal place of business in Orlando, Florida.

48.  Plaintiff Alexander Holladay is a natural person domiciled in Orlando, Florida.

49.  Plaintiff Centurion Partners Group LLC is a Florida limited liability company with its principal place of business in West Palm Beach, Florida. Centurion holds a Type 07 Federal Firearms License and is a licensed manufacturer of firearms.

50.  Plaintiff Trey Bickley is a natural person residing in Cape Coral, Florida. Bickley is a law-abiding Floridian eligible to own and possess firearms.

51.  Plaintiff Jonathan Adams is a natural person residing in Orange Park, Florida. Adams is a law-abiding Floridian eligible to own and possess firearms.

52.  Defendant Rob Bonta is the Attorney General of the State of California and is sued in his official capacity for prospective declaratory and injunctive relief.

53.  Defendant David Chiu is the City Attorney for the City and County of San Francisco and is sued in his official capacity for prospective declaratory and injunctive relief.

## FACTUAL ALLEGATIONS

10

A.  Plaintiffs' Florida Speech and Expressive Works

54.    Holladay is an author, designer, and digital artist who creates written, visual, and three-dimensional works involving and relating to firearms.

55.    Holladay's works include STEP 3D models, STL 3D models, PDFs, written guides, photographs, images, commentary, and other visual works.

56.    Holladay creates his works in Florida.

57.    CTRLPEW publishes, curates, describes, and links to firearms-related written and visual (both 2D and 3D) works from Florida.

58.    CTRLPEW's publications are not directed to any particular state. Plaintiffs do not specifically target California viewers, do not maintain offices in California, and do not conduct the relevant publication activity in California.

59.    Holladay's STEP and STL files are three-dimensional digital models. They communicate geometry, shape, proportions, visual design, aesthetic judgment, engineering judgment, political themes, cultural references, and other expressive elements. (Ex. 8 ¶ 17).

60.    Holladay's STEP and STL models do not contain manufacturing instructions. They do not contain G-code, toolpaths, machine commands, printer settings, material properties, density values, or CNC instructions.

61.    In order to manufacture anything from a STEP or STL model, a user must use separate software to create an entirely new file consisting of manufacturing instruction codes for a CNC machine, 3D printer, or other machine.

11

62. That process requires human choices, including software selection, machine selection, material selection, various machine rate and speed parameters, scale, orientation, supports, infill, tolerances, layer height, temperature, post-processing, and other decisions of a maker.

63. Plaintiffs' 3D models are therefore not self-executing code and do not command any machine to do anything.

64. Plaintiffs' 3D models are most analogous to a JPG or PNG image. Like a JPG or PNG in the two-dimensional context, a STEP or STL file can be opened and viewed by a human as a visual representation. Unlike G-code or toolpath files, STEP and STL models do not themselves direct a machine to manufacture an object.

65. Plaintiffs' 3D models are not functional machine code. As with a JPG or PNG, or even as with the PDF version of this complaint which is accessible on PACER, the 3D models can be observed and interacted with directly by a human once opened on a computer.

66. The 3D models can be viewed, evaluated, rotated in 3D space, embedded text may be read, mused over, the models can be used in simulations, animations, and renders, colored and shaded – a panoply of expressive value exists in a 3D model.

67. Beyond simply interacting with the 3D models on a computer, a user can take things a step further  by using additional software, instructions and parameters of their choosing, and an appropriate sort of manufacturing equipment, individuals can generate machine code files to engage in yet another form of expression: making a physical version of that which was visual.

68.    Beyond the expressive nature found in the act of creation itself[1] and the expression found in the resulting, completed object[2], when Plaintiffs choose to make a firearm or firearm part, they engage in a bold expression of what they love about being American: their Fundamental Right to Keep and Bear Arms, and their shared language of appreciation for firearms in general.[3]

69.    Users commonly interact with Plaintiffs' models as visual and expressive works. The models may be opened on a computer, rotated, observed, colored, inspected hidden details, searched for easter eggs, compared for design elements, archived, discussed, and appreciated for their artistic and cultural features. (Ex. 8 ¶ 18).

70.    Some publication packages may also contain written guides, commentary, photographs, design notes, recommended settings, assembly instructions, and other materials.

---

[1] Just as the potter revels with their clay and wheel, the editor with their computer and camera, or the author with their keyboard and printer, the ritual involved in adjusting, calibrating, and observing the process of creation at issue here is an expressive act with its own language and experience that the Plaintiffs any many other creators share.

[2] While art, beauty, and related values can be subjective, 3D printers are undoubtedly capable of creating expressive works   from comedic sculptures to breathtaking topographically accurate models of other planets, from heartwarming prosthetic limbs to a vibrant, rainbow-colored Glock.

[3] Firearms are intrinsically intertwined with American history and culture, and the mere visage of a firearm evokes strong emotions, feelings, and thoughts in most people. Firearm enthusiasts, such as Plaintiffs, discuss their love for firearms, including those they've legally made themselves, the way sports fans discuss their love for their favorite teams, stadiums, and past games.

13

71. Those written, photographic, and instructional materials are themselves expressive speech.

72. None of the works created by Holladay or published on CTRLPEW contain manufacturing instruction code or machine code for manufacturing equipment.

73. For works created by Holladay, and for many works featured on CTRLPEW, the guides are written in a distinctive style with humor and political commentary throughout.

74. Plaintiffs Holladay and CTRLPEW's publications concern firearms, the right to keep and bear arms, firearms history, engineering, repair, design, political commentary, and firearms culture.

75. Some users, such as Plaintiffs Adams and Centurion, also lawfully use Plaintiffs' works, after substantial human intervention and additional software processing, for lawful manufacturing, repair, maintenance, prototyping, or research in Florida.

76. An expressive work does not lose constitutional protection because it is useful, technical, or capable of being used in lawful manufacture, repair, maintenance, research, or prototyping.[4]

B. Representative Expressive Works.

77. Plaintiffs' guides, photographs, instructional materials, and 3D models constitute expression protected by the First Amendment. Courts have recognized that

---

[4] This is not to say that these acts are devoid of expression – only that the works at issue have expressive value that exists independent of these acts.

technical information and computer source code are speech for First Amendment purposes.

78.    One typical example of Holladay's three-dimensional expressive works is the "Joshie Woshie 9."[5]

79.    The Josie Woshie 9 is a 3D model depicting a pistol frame which is heavily adorned with political, satirical, artistic, and cultural imagery. (Ex. 8 ¶ 19).

80.    The Josie Woshie 9 includes the text "WE LOVE YOU JOSH SHAPIRO," hearts, and a depiction of Josh Shapiro in the classical style of Japanese artist Osamu Tezuka, one of the early forebears of modern anime. Holladay, who is of Japanese descent, created that depiction, pictured below.

---

[5] The 3D model for the Joshie Woshie 9 is viewable in Exhibit 6.



81.    The right side of the model contains "Joshie Senpai," "Cereal Number

1," and the URL "JoshShapiroIsATyrant.com," pictured below.



82.    "Cereal Number 1" is a tongue-in-cheek reference to Shapiro's stance

regarding firearm serial numbers.

16

83. The Joshie Woshie 9 is not a utilitarian object, or even a mere depiction of a utilitarian object. It is a digital sculpture containing political commentary, humor, visual art, cultural references, and expressive design choices.

84. However, the Joshie Woshie 9 could be used with additional software, instructions and parameters of an individual's choosing, and the appropriate sort of manufacturing equipment to make a political statement steeped in expression – a physical political artwork bearing satirical imagery criticizing a public official's firearms-policy positions.

85. Another example is Holladay's unpublished model depicting a handgrip and fire-control housing model for the Plastikov V4.

86. The Plastikov V4 grip/fire-control housing is an expressive three-dimensional model. It is clearly evocative of Soviet industrial design, while simultaneously mocking it. (Ex. 8 ¶ 20).



87.    If manufactured, the model would also serve a practical function: it depicts both the handgrip and the fire-control housing of a firearm. Those components are essential to a firearm's function.

88.    The existing Plastikov V4 design is susceptible to a failure in which the handgrip breaks away from the fire-control housing, allowing fire-control components to come loose and causing the firearm to cease functioning.

89.    Holladay's unpublished model incorporates a three-dimensional rendition of a 1940s Soviet grip handle integral to the model itself. That expressive design choice also significantly increases the thickness of the weak point. (Ex. 8 ¶ 21).

90.     Additionally, the juxtaposition of Soviet-era design cues with the modern aesthetic of the Plastikov V4 expresses a "what is old is new again" idea sharpened by the political expression involved in appropriating the design cues of the arms America's enemies have relied on for decades. *Id.* ¶ 22.

91.     These design cues are further expressed if an individual elects to use additional software, instructions and parameters of the individual's choosing, and the appropriate sort of manufacturing equipment to physically create the part – a rather on-the-nose expression that takes the Communist idea of "seizing the means of production" by making ones own gun parts, while also rebuking the strict gun control laws the Soviet Union enforced on its residents.

92.     Holladay's reinforced Plastikov V4 grip/fire-control housing model is ready to publish.

93.     Holladay has not published it because of Defendants' enforcement campaign.

94.     The Tac Daddy Readme, attached as Exhibit 7, is representative of the expressive written and visual works Defendants' enforcement theory threatens. It is not a machine-readable manufacturing file. It is a human-readable publication containing stylized cover art, a personal foreword, written commentary, rendered images, original photographs, layout choices, humorous asides, and commentary. (Ex. 7).



95.    The TacDaddy Readme offers expression in the form of instructions

meant to aid in safely, legally assembling a firearm, as well as other expressive

musings and ideas meant to lighten the mood imposed by the serious nature of firearms.

96.    The TacDaddy Readme includes pictures and graphics depicting various parts and stages of the assembly process, which are included to help express the importance of safety and adherence to laws when making firearms.

C.  Defendants' California Enforcement Campaign.

97.    On February 6, 2026, Defendants filed a civil enforcement action in the Superior Court of California, County of San Francisco, captioned The People of the State of California v. Gatalog Foundation Inc., et al., Case No. CGC-26-633508. Plaintiffs Holladay and CTRLPEW LLC are named defendants in that action. (Ex. 1).

98.    The California complaint seeks permanent injunction, civil penalties, and equitable relief under California Civil Code §§ 3273.61 and 3273.625 and California's Unfair Competition Law. (Ex. 1).

99.    The California complaint seeks millions of dollars in civil penalties from Plaintiffs. (Ex. 1).

100.    California Civil Code §§ 3273.61 and 3273.625 each authorize civil penalties up to $25,000 per violation.

101.    California Civil Code § 3273.61 further authorizes compensatory damages and imposes strict liability for certain personal injury or property damage allegedly resulting from the use of a firearm or other device unlawfully manufactured or produced as a result of a violation.

21

102. California Business and Professions Code § 17206 authorizes civil penalties up to $2,500 per violation for alleged violations of the Unfair Competition Law.

103. Defendants publicly announced the enforcement action through a February 6, 2026 press release. (Ex. 2).

104. Defendants' California filings accuse Plaintiffs of distributing and promoting "digital firearm manufacturing code" and instructions.

105. Defendants' enforcement theory expressly reaches written instructions, pictures, and digital models, including "instructions stored and displayed in electronic format as a digital model."

106. Defendants' preliminary-injunction papers, which seek to suppress the complained-of Florida activities, define their target as "files" containing both digital code and instructions for 3D printing and assembling specific firearm and accessory designs. (Ex. 3, p. 7).

107. Defendants' California preliminary-injunction motion states that "most folders also include instructions for how to use the CAD files to print the design" and "further instructions for how to assemble or complete the design." (Ex. 3, p. 9).

108. Defendants' California preliminary-injunction motion also admits that it is separate slicer software that generates "gcode," which the motion describes as the programming instructions for a 3D printer. (Ex. 3, p. 10).

109. Defendants' enforcement theory therefore targets expressive models and accompanying speech even when the models themselves contain no manufacturing instructions and cannot themselves command any machine.

110. Defendants' preliminary-injunction motion seeks relief not only against distribution but also against "aiding, abetting, promoting, or facilitating" alleged unlawful manufacture. (Ex. 3, pp. 17–18).

111. Defendants argue that the words "promote" and "facilitate" should be construed broadly, including to mean contributing to, helping bring about, or making easier. (Ex. 3, pp. 17–18).

112. Defendants' theory chills expressive models, jokes, commentary, guides, photographs, design notes, web pages, political speech, links, curation, and publication decisions because Plaintiffs cannot know what speech Defendants will characterize as "promoting" or "facilitating."

113. Defendants' California filings seek broad relief against named defendants and "agents, officers, managers, representatives, employees, heirs, assignees, members, associates, affiliates, and all persons acting in concert with or participating with them or acting on their behalf." (Ex. 5, p. 2).

114. Defendants previously represented that they will effectuate any injunction obtained in California against the Floridian Plaintiffs through third parties, including internet service providers supporting websites and online profiles. (Ex. 4, p. 6).

23

115. Defendants also represented that they will engage in ongoing supervision over Floridian websites and online profiles and may need to effectuate judgment through non-party internet service providers and social-media platforms. (Ex. 4, p. 8).

116. Third-party enforcement against websites, online profiles, internet service providers, hosts, platforms, or social-media platforms would not merely regulate conduct inside California. It would burden or suppress Plaintiffs' Florida publication infrastructure and prevent Florida recipients from receiving protected speech.

117. A takedown, platform restriction, ISP directive, hosting directive, domain action, or similar third-party enforcement action of the California law against Floridian Plaintiffs would suppress access by Florida speakers and Florida recipients regardless of whether California may regulate California conduct.

118. Defendants' enforcement campaign has already caused Holladay to completely cease publication of new firearms-related works.

119. But for Defendants' enforcement campaign, Holladay would continue publishing works as usual, including the reinforced Plastikov V4 grip/fire-control housing and other firearms-related works.

D. Defendants' Retroactive and Extraterritorial Theory.

120. Many of the works Defendants seek to punish were created and placed on the open internet before Defendants filed the California action.

24

121.    Many of the works Defendants seek to punish were placed on the open internet before the effective date of California Civil Code § 3273.625.

122.    Many of the works Defendants seek to punish were placed on the open internet before the effective date of the rebuttable-presumption provision in California Civil Code § 3273.61(f).

123.    Defendants nevertheless seek statutory penalties, injunctive relief, and other coercive relief because preexisting Florida publications remained accessible on the open internet after California's later statutory amendments and enforcement campaign.

124.    Defendants' position requires Florida speakers to control or claw back information already released to the open internet years earlier.

125.    Defendants' position requires Florida speakers, on pain of civil penalties of up to $25,000 per violation under California Civil Code §§ 3273.61 and 3273.625, and additional civil penalties under California's Unfair Competition Law, to ensure that Californians cannot access information the Floridians placed on the open internet.

126.    Defendants' position would allow California to dictate the means and manner of Florida speech simply because the speech appears on the internet and relates to firearms.

127.    Defendants' position would require Plaintiffs to censor, restructure, remove, geofence, or cease Florida publication activity to satisfy California's policy preferences.

128. It is not feasible for Plaintiffs to reliably determine whether any anonymous internet user is in California, is using a VPN, is using a proxy, is using a mobile network, is a California resident, is a Florida resident traveling, is licensed, is exempt, is law enforcement, is military, or is otherwise outside California's statutory restrictions.

129. Third-party platforms do not necessarily provide Plaintiffs with reliable, granular, user-by-user legal-status controls.

130. Even if location-based tools could sometimes block some California IP addresses, they would not address Defendants' broader theory that Plaintiffs' digital models, commentary, web pages, links, descriptions, and written guides "promote" or "facilitate" alleged unlawful manufacture.

131. Requiring Florida speakers to restructure nationwide internet publication around California's access rules is itself a burden on Florida speech and interstate internet publication.

E. Defendants' "California Targeting" Theory Mischaracterizes and Independently Punishes Political Speech.

132. Defendants have alleged that CTRLPEW targets California based in part on commentary mocking California, California-themed merchandise, references to California law, and boilerplate terms-of-service language referencing California users. (Ex. 3, pp. 10–11).

133. California-themed jokes, stickers, commentary, and criticism of California law are political speech. They are not commercial targeting of California users.

134. Mocking California law is not purposeful availment of California; it is political commentary about California.

135. Website terms-of-service language referring California users to California consumer authorities is boilerplate legal compliance language commonly used on websites. It is not solicitation or targeting of California users.

136. Plaintiffs do not buy California advertisements.

137. Plaintiffs do not maintain California offices.

138. Plaintiffs do not employ California agents.

139. Plaintiffs do not solicit California users to access the challenged works.

140. Plaintiffs do not contract with California users for the challenged works.

141. Plaintiffs' relevant publication conduct occurs in Florida.

F. Centurion, Bickley, and Adams Are Not Parties to the California Action.

142. Plaintiffs Bickley, Adams, and Centurion are not parties to the California action.

143. Bickley, Adams, and Centurion have not been sued by Defendants in the California action.

144. Bickley, Adams, and Centurion have not been afforded a forum in the California action to litigate their First Amendment right-to-receive claims, Adams's Second Amendment repair and operability injury, Centurion's lawful Florida business injuries, or the Second Amendment rights of Centurion's Florida customers.

145. Their injuries arise from Defendants' suppression of speech that they would receive, view, archive, use, and rely upon in Florida.

27

G. Injury to Holladay and CTRLPEW.

146.   Holladay and CTRLPEW have ceased publishing new firearms-related works because Defendants' enforcement campaign threatens drastic civil penalties, strict liability, injunctive relief, and third-party suppression of their websites and online profiles. (Ex. 8).

147.   Holladay fears that Defendants will characterize his STEP files, STL files, PDFs, written guides, photographs, images, political commentary, links, and curation as prohibited "digital firearm manufacturing code" or as aiding, abetting, promoting, or facilitating unlawful manufacture. *Id.*

148.   Holladay has withheld completed or substantially completed works because of Defendants' enforcement campaign. *Id.*

149.   Holladay's cessation of publication harms his speech, reputation, audience, income, copyright interests, and ability to participate in public discussion about firearms, design, engineering, and the Second Amendment. *Id.*

150.   CTRLPEW's audience expects continued publication, curation, commentary, and links to new works. The cessation of publication impairs CTRLPEW's function as a Florida-based publication and expressive platform.

151.   Defendants' conduct has chilled Holladay's and CTRLPEW's First Amendment activity in Florida.

152.   If Defendants are enjoined from applying California Civil Code §§ 3273.61 and 3273.625 to Holladay's and CTRLPEW's Florida publication activity, Holladay and CTRLPEW will immediately resume publishing new firearms-related

works from Florida, including the reinforced Plastikov V4 grip/fire-control housing model.

H.  Injury to Centurion Partners Group LLC.

153.  Centurion Partners Group LLC is a Florida firearms business located in West Palm Beach, Florida.

154.  Centurion holds a Type 07 Federal Firearms License and is a licensed manufacturer.

155.  Centurion relies on CTRLPEW to locate new models, evaluate designs, prototype, manufacture, repair, conduct customer work, and conduct research.

156.  Centurion's use of CTRLPEW occurs in Florida.

157.  Centurion's intended use of CTRLPEW's works is lawful under federal and Florida law.

158.  Centurion's Florida customers include lawful firearm owners and persons seeking lawful firearms-related services in Florida.

159.  Centurion uses CTRLPEW's publications to help serve the lawful interests of its Florida customers, including interests in lawful arms, repair, maintenance, prototyping, and firearms-related design and research.

160.  Because Defendants' enforcement campaign has caused Holladay and CTRLPEW to cease publication, Centurion no longer has access to the new models, guides, photographs, commentary, and related works that Holladay and CTRLPEW otherwise would publish.

161. Defendants' conduct therefore burdens Centurion's lawful Florida business operations and its ability to receive, study, and use protected speech and technical information in Florida.

162. Defendants' conduct also burdens Centurion's ability to serve the Second Amendment interests of its Florida customers.

163. If Defendants are enjoined from applying California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida publication and receipt of speech, Centurion will immediately resume using CTRLPEW as a resource for design evaluation, prototyping, manufacturing, repair, research, customer work, and other lawful Florida business activity.

I.   Injury to Trey Bickley.

164. Trey Bickley is a law-abiding Florida resident eligible to own and possess firearms.

165. Bickley uses CTRLPEW as his primary resource for receiving, reading, viewing, studying, and archiving firearms-related visual, technical, historical, and artistic works.

166. Bickley primarily uses CTRLPEW as an expressive, design, art, and reference resource.

167. Bickley appreciates CTRLPEW's models, written works, guides, photographs, images, and documentation for their artistic, creative, educational, historical, technical, and cultural value.

168. Bickley wants to view and archive Holladay's reinforced Plastikov V4 grip/fire-control housing model.

169. Bickley also wants to view, read, receive, and archive the other designs and works that Holladay and CTRLPEW would have published but for Defendants' enforcement campaign.

170. Because Defendants' enforcement campaign has caused Holladay and CTRLPEW to cease publication, Bickley has been deprived of his ability to receive, read, view, and archive protected speech in Florida.

171. If Defendants are enjoined from applying California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida publication and receipt of speech, Bickley will immediately receive, view, read, and archive the new works Holladay and CTRLPEW would publish.

J. Injury to Jonathan Adams.

172. Jonathan Adams is a law-abiding Florida resident eligible to own and possess firearms.

173. Adams lawfully made and possesses a Plastikov V4 firearm in Florida.

174. Adams made the Plastikov V4 using materials he accessed through CTRLPEW.

175. Adams uses or intends to use the Plastikov V4 for lawful purposes, including home defense, range use, and training.

176. Adams relies on the Plastikov V4 for home defense.

177. The grip on Adams's Plastikov V4 has broken away from the fire-control housing three times.

178. Each time, the failure rendered the firearm inoperable.

179. Adams's Plastikov V4 is presently inoperable due to this failure.

180. Existing available models do not solve the weakness that caused Adams's failures.

181. Holladay's withheld reinforced Plastikov V4 grip/fire-control housing model would solve or materially reduce the problem by increasing thickness at the weak point.

182. Adams needs Holladay's withheld model to restore a lawfully possessed firearm to operable condition.

183. Because Defendants' enforcement campaign has caused Holladay to withhold the reinforced model, Adams cannot receive and use the model in Florida to restore his firearm to operable condition.

184. Defendants' conduct therefore burdens Adams's First Amendment right to receive information and his Second Amendment right to make, keep, maintain, repair, and use lawful arms.

185. If Defendants are enjoined from applying California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida publication and receipt of speech, Adams will immediately receive and use the reinforced Plastikov V4 model in Florida to repair and restore his lawfully possessed firearm to operable condition.

K. Florida-Only Scope of This Action.

186.    Plaintiffs seek relief only as to creation, publication, receipt, viewing, archiving, repair, maintenance, research, business use, lawful arms-related activity, and other lawful conduct occurring in Florida.

187.    Plaintiffs do not ask this Court to enjoin the California state-court proceeding.

188.    Plaintiffs do not ask this Court to prevent Defendants from enforcing California law against manufacture, possession, sale, transfer, receipt, or distribution occurring in California.

189.    Plaintiffs seek no relief concerning California residents' receipt of materials in California.

190.    Plaintiffs seek no relief concerning California manufacture, possession, sale, transfer, receipt, or distribution.

191.    Plaintiffs seek no ruling controlling what the California court may do with respect to persons or conduct in California.

192.    Plaintiffs ask only that Defendants be barred from applying California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida speech, Florida publication decisions, Florida receipt and viewing of speech, Florida repair and maintenance of arms, lawful Florida manufacture, and lawful Florida business activity.

193.    Plaintiffs also seek relief preventing Defendants from using third-party enforcement mechanisms to suppress Plaintiffs' Florida speech or Florida recipients' access to that speech.

194. Any injunction, takedown demand, platform directive, ISP directive, hosting directive, domain action, or similar enforcement step that disables, burdens, or chills Plaintiffs' Florida publication infrastructure would regulate and suppress conduct occurring in Florida.

## CLAIMS FOR RELIEF

### COUNT I – 42 U.S.C. § 1983 (FIRST AMENDMENT CONTENT-BASED RESTRICTION, PRIOR RESTRAINT, CHILLING OF PROTECTED SPEECH, AND INTERFERENCE WITH RIGHT TO RECEIVE INFORMATION AGAINST BONTA AND CHIU)

195. Plaintiffs incorporates paragraphs 1 through 194 as if fully set forth herein.

196. Plaintiffs' written guides, PDFs, photographs, images, political commentary, jokes, links, curation, STL models, STEP models, and three-dimensional digital models are expression protected by the First Amendment.

197. Plaintiffs' STEP and STL models are digital sculptures that communicate geometry, form, design choices, artistic decisions, engineering judgments, humor, political commentary, cultural references, and other expressive content.

198. Defendants' enforcement theory reaches documents like the Tac Daddy Readme, a human-readable written and visual work containing protected expression, including commentary, photographs, renderings, humor, and design discussion. (Ex 7). That Defendants may dislike the subject matter, or that portions of the work convey practical information, does not transform the publication into unprotected conduct or machine code.

199. Plaintiffs' works are intended for human recipients, including readers, viewers, designers, artists, lawful firearm owners, engineers, hobbyists, historians, researchers, licensed manufacturers, patrons, customers, and political audiences.

200. Plaintiffs' works do not lose First Amendment protection because they are technical, useful, or capable of being used after human interpretation and additional software processing for lawful manufacture, maintenance, repair, research, or prototyping.

201. Defendants' enforcement campaign targets Plaintiffs' speech because of its content: firearms, firearms design, firearms manufacture, firearms repair, firearms culture, and Second Amendment-related expression.

202. Defendants' enforcement campaign also targets speech because of its alleged tendency to promote, facilitate, or aid conduct of which California disapproves.

203. As applied to Plaintiffs' Florida speech and Florida publication activity, California Civil Code §§ 3273.61 and 3273.625 operate as content-based restrictions on protected expression.

204. Defendants' threatened and requested injunctions would operate as prior restraints by forbidding, chilling, or disabling publication before it occurs.

205. Defendants' threatened third-party enforcement against websites, online profiles, ISPs, platforms, hosts, social-media platforms, or related infrastructure would suppress far more speech than any allegedly unlawful California conduct.

35

206. Defendants' enforcement campaign has already caused Holladay and CTRLPEW to cease publication of new firearms-related works.

207. Defendants' enforcement campaign has also injured Centurion, Bickley, and Adams by depriving them of their right to receive, read, view, study, archive, and lawfully use protected speech in Florida.

208. Defendants' enforcement campaign also injures CTRLPEW's and Holladay's customers, patrons, and audience members by depriving them of protected speech they would otherwise receive, view, study, archive, and lawfully use in Florida.

209. Defendants' application of California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida speech is not narrowly tailored to any compelling governmental interest.

210. Plaintiffs are entitled to declaratory and prospective injunctive relief barring Defendants from applying California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' speech, publication, receipt, viewing, archiving, use, repair, research, and business activities occurring wholly in Florida.

## COUNT II – 42 U.S.C. § 1983 (FOURTEENTH AMENDMENT DUE PROCESS – EXTRATERRITORIAL ENFORCEMENT, AGAINST BONTA AND CHIU)

211. Plaintiffs reallege and incorporate by reference paragraphs 1 through 194 as if fully set forth herein.

212. The Due Process Clause limits a State's authority to impose its law on persons and conduct with insufficient connection to the State.

213. Plaintiffs' relevant speech, publication decisions, receipt, viewing, archiving, use, repair, maintenance, research, and business activity occur in Florida.

214. Plaintiffs do not direct their works to California.

215. Plaintiffs do not maintain offices in California.

216. Plaintiffs do not conduct the relevant publication activity in California.

217. Defendants' enforcement theory depends on the unilateral acts of California officials or other third parties who access generally available internet publications.

218. Defendants' enforcement theory also depends on Plaintiffs' alleged failure to prevent anonymous internet users in California from accessing speech published from Florida to the open internet.

219. Defendants' enforcement theory attempts to punish or enjoin Plaintiffs in Florida for publications placed on the open internet before the relevant California statutory amendments and enforcement theory took effect.

220. Plaintiffs cannot reliably know whether a particular viewer is in California, is using a VPN, is using a proxy, is exempt, is licensed, is law enforcement, is military, is a Florida resident traveling, is a California resident traveling, or is otherwise outside California's statutory restrictions.

221. California Civil Code §§ 3273.61 and 3273.625, as applied by Defendants, fail to provide fair notice of what speech will be treated as prohibited "digital firearm manufacturing code," "promoting," "facilitating," "aiding," or "abetting."

37

222. Defendants' interpretation reaches written instructions, digital models, jokes, political commentary, images, descriptions, links, and curation, chilling protected speech.

223. Defendants' application of California law to Plaintiffs' Florida speech and Florida conduct is arbitrary, unforeseeable, and inconsistent with due process.

224. Plaintiffs are entitled to declaratory and prospective injunctive relief barring Defendants from applying California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida speech, publication, receipt, viewing, archiving, repair, maintenance, research, business use, and other lawful Florida conduct.

**COUNT III – DECLARATORY RELIEF (DORMANT COMMERCE CLAUSE – EXTRATERRITORIAL REGULATION AND UNDUE BURDEN, AGAINST BONTA AND CHIU)**

225. Plaintiffs reallege and incorporate by reference paragraphs 1 through 194 as if fully set forth herein.

226. Plaintiffs do not challenge California's authority to regulate manufacture, possession, sale, transfer, receipt, or distribution occurring in California.

227. Plaintiffs challenge Defendants' attempt to apply California law to speech, publication, receipt, viewing, archiving, repair, maintenance, research, business use, lawful arms-related activity, and other lawful conduct occurring wholly in Florida.

228. As applied to Plaintiffs, California Civil Code §§ 3273.61 and 3273.625 regulate interstate internet publication by forcing Florida speakers either to conform

their national speech to California law, censor their works entirely, remove preexisting works from the open internet, attempt location-based access restrictions, or stop speaking.

229. This is not a mere product-entry rule. Plaintiffs are not shipping physical firearms into California.

230. Defendants seek to regulate websites, links, profiles, written instructions, commentary, digital sculptures, model pages, and publication infrastructure.

231. Defendants are already suing over publications that existed on the open internet before the relevant California statutory amendments and enforcement theory took effect.

232. Defendants are asserting a right to control information already released to the open internet and to require Florida speakers to restructure or suppress Florida speech because California later disapproves of Californians' ability to access it.

233. Defendants' threatened third-party enforcement against websites, online profiles, ISPs, hosts, platforms, domain services, social-media platforms, or related infrastructure would not merely prevent access by unauthorized individuals in California. It would burden Plaintiffs' publication infrastructure and suppress access by Florida recipients and other non-California audiences.

234. Defendants' enforcement theory allows California to dictate the means and manner of protected First Amendment activity in Florida whenever the speech relates to the Second Amendment and appears on the internet.

235. Compliance with Defendants' enforcement theory would require Plaintiffs to censor, restructure, geofence, remove, or cease protected internet publication from Florida.

236. Defendants' enforcement theory imposes substantial burdens on interstate internet speech and commerce, including Centurion's lawful Florida firearms business and the ability of Florida recipients to receive and use protected speech.

237. Defendants' enforcement theory burdens Centurion's ability to serve its Florida customers in lawful firearms-related manufacturing, repair, prototyping, research, and customer work.

238. Defendants' enforcement theory projects California policy onto the national internet and controls out-of-state speech and conduct by imposing California's restrictions on Florida publication and Florida receipt.

239. An actual controversy exists between Plaintiffs and Defendants concerning whether Defendants may apply California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida speech, publication, receipt, viewing, archiving, repair, research, business use, and other lawful Florida conduct.

240. Plaintiffs are entitled to a declaration that Defendants may not apply California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida speech,

40

publication, receipt, viewing, archiving, repair, research, business use, and other lawful Florida conduct in a manner that regulates extraterritorially or unduly burdens interstate internet speech and commerce.

## COUNT IV   42 U.S.C. § 1983   SECOND AMENDMENT VIOLATION, AGAINST BONTA AND CHIU

241. Plaintiffs reallege and incorporate by reference paragraphs 1 through 194 as if fully set forth herein.

242. The Second Amendment protects the right of law-abiding citizens to keep and bear arms for lawful purposes, including self-defense.

243. The right to keep and bear arms includes the right of law-abiding citizens to make, maintain, repair, and keep operable lawful arms possessed for lawful purposes.

244. The right to keep and bear arms also protects access to the information, tools, and services necessary to make, maintain, repair, and keep operable lawful arms.

245. Adams is a law-abiding Florida resident eligible to own and possess firearms.

246. Adams lawfully made and possesses a Plastikov V4 firearm in Florida.

247. Adams relies on the Plastikov V4 for lawful purposes, including home defense.

248. The grip on Adams's Plastikov V4 has broken away from the fire-control housing three times, rendering the firearm inoperable.

249. Existing available models do not remedy the defect.

41

250. Holladay has created a reinforced handgrip and fire-control housing model that would solve or materially reduce the failure by strengthening the weak point.

251. Holladay has not published the model because of Defendants' enforcement campaign.

252. Defendants' enforcement campaign therefore prevents Adams from receiving and using, in Florida, the model needed to restore a lawfully possessed arm to operable condition.

253. Centurion is a licensed Florida firearms manufacturer that uses CTRLPEW's works for lawful firearms-related manufacturing, repair, prototyping, research, and customer work in Florida.

254. Centurion's Florida customers include law-abiding persons who seek lawful arms-related services in Florida.

255. Defendants' enforcement campaign burdens Centurion's ability to receive and use protected information in its lawful Florida firearms business.

256. Defendants' enforcement campaign also burdens Centurion's ability to provide lawful services to its Florida customers, including services related to lawful arms, repair, maintenance, prototyping, and Second Amendment activity in Florida.

257. CTRLPEW's and Holladay's customers and patrons include law-abiding persons who use Plaintiffs' speech to engage in lawful Second Amendment activity in Florida.

258.   Defendants' enforcement campaign burdens those customers' and patrons' ability to receive and use Plaintiffs' speech for lawful Second Amendment activity in Florida.

259.   Defendants' application of California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida publication, receipt, repair, maintenance, manufacture, and business activity burdens conduct protected by the Second Amendment.

260.   Plaintiffs are entitled to declaratory and prospective injunctive relief barring Defendants from applying California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida conduct in a manner that prevents law-abiding Florida residents, Florida customers, Florida patrons, and licensed Florida manufacturers from receiving and using protected information to make, keep, maintain, repair, and use lawful arms in Florida.

### COUNT V – 42 U.S.C. § 1983 – FIRST AND FOURTEENTH AMENDMENTS VAGUENESS, OVERBREADTH, AND UNCONSTITUTIONAL CHILL AGAINST BONTA AND CHIU

261.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 194 as if fully set forth herein.

262.   California Civil Code §§ 3273.61 and 3273.625, as applied by Defendants, are vague and overbroad.

263.   Section 3273.60 defines "digital firearm manufacturing code" to include "instructions stored and displayed in electronic format as a digital model."

264. Section 3273.61 creates liability and a rebuttable presumption based on ownership or management of an internet website, electronic portal, database, or platform.

265. Section 3273.625 reaches speech or conduct that allegedly "aid[s], abet[s], promote[s], or facilitate[s]" unlawful manufacture.

266. Defendants have argued that "promote" and "facilitate" should be construed broadly. (Ex. 3, pp. 17–18).

267. Defendants' application of those provisions reaches protected speech, including digital models, written guides, photographs, jokes, political commentary, links, design descriptions, model pages, curation, and other expressive materials.

268. Plaintiffs cannot determine what firearms-related speech Defendants will treat as prohibited "digital firearm manufacturing code," "promoting," "facilitating," "aiding," or "abetting."

269. Plaintiffs also cannot determine how they could avoid liability for preexisting publications already released to the open internet before the relevant California statutory amendments and enforcement theory took effect.

270. The statutes, as applied by Defendants, invite arbitrary and discriminatory enforcement against disfavored firearms-related speech and Second Amendment advocacy.

271. The statutes, as applied by Defendants, chill a substantial amount of protected speech in relation to any legitimate sweep.

44

272. Defendants' enforcement campaign has already caused Holladay and CTRLPEW to completely cease publishing new firearms-related works.

273. Defendants' enforcement campaign has already deprived Bickley, Adams, Centurion, and other Florida customers, patrons, and users of access to speech they would otherwise receive and lawfully use in Florida.

274. Plaintiffs are entitled to declaratory and prospective injunctive relief barring Defendants from applying California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida speech, publication, receipt, viewing, archiving, repair, maintenance, lawful manufacture, research, business use, and other lawful Florida conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable court:

A. Declare that Defendants' threatened and ongoing application of California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' speech, publication, receipt, viewing, archiving, repair, research, business use, and other lawful conduct occurring wholly in Florida violates the First Amendment;

B. Declare that Defendants' threatened and ongoing application of California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida speech, Florida publication decisions, Florida receipt and viewing of speech, Florida repair and maintenance of arms, lawful Florida manufacture, and lawful Florida business activity violates the Due Process Clause of the Fourteenth Amendment;

C.  Declare that Defendants may not apply California Civil Code §§ 3273.61 and 3273.625 extraterritorially to regulate Plaintiffs' Florida-based speech, publication, receipt, viewing, archiving, repair, research, business use, lawful manufacture, and other lawful Florida conduct;

D.  Declare that Defendants' application of California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida speech, Florida publication, Florida receipt, Florida repair and maintenance of arms, lawful Florida manufacture, and lawful Florida business activity violates the Second Amendment;

E.  Declare that California Civil Code §§ 3273.61 and 3273.625 are vague and overbroad as applied to Plaintiffs' Florida speech, publication, receipt, viewing, archiving, repair, maintenance, lawful manufacture, research, business use, and other lawful Florida conduct;

F.  Preliminarily and permanently enjoin Defendants, their officers, agents, employees, attorneys, and all persons acting in concert with them from applying California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' speech, publication, receipt, viewing, archiving, repair, research, business use, lawful manufacture, and other lawful conduct occurring wholly in Florida;

G.  Preliminarily and permanently enjoin in Florida Defendants, their officers, agents, employees, attorneys, and all persons acting in concert with them from taking steps to effectuate California Civil Code §§ 3273.61 and 3273.625 in Florida against Plaintiffs' websites, online profiles, publication infrastructure, Florida customers, Florida patrons, or Florida recipients through third parties,

46

including internet service providers, hosts, platforms, social-media platforms, domain services, or similar intermediaries, to suppress Plaintiffs' Florida-based speech or Florida recipients' access to that speech;

H. Award Plaintiffs costs and reasonable attorneys' fees under 42 U.S.C. § 1988; and

I. Grant such other and further relief as the Court deems just and proper.

DATED: May 1, 2026

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
Fla. Bar № 1005581
*The Law Offices of Matthew Larosiere.*
6964 Houlton Cir.
Lake Worth, FL 33467
Email: Larosieremm@gmail.com
Telephone: (561) 452-7575
*Lead Counsel for Plaintiffs*

47