ROB BONTA (SBN 202668)
Attorney General of California
NICKLAS A. AKERS (SBN 211222)
Senior Assistant Attorney General
MICHAEL E. ELISOFON (SBN 240707)
Supervising Deputy Attorney General
VESNA CUK (SBN 309157)
ANDREW J. WIENER (SBN 282414)
DANIEL DUBOIS (SBN 345123)
REBECCA S. ROBERTS (SBN 225757)
BRENDAN RUDDY (SBN 297896)
Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3782
  Fax: (415) 703-5480
  E-mail: vesna.cuk@doj.ca.gov

DAVID CHIU (SBN 189542)
San Francisco City Attorney
YVONNE R. MERÉ (SBN 175394)
Chief Deputy City Attorney
SARA J. EISENBERG (SBN 269303)
Chief of Complex and Affirmative Litigation
RONALD H. LEE (SBN 238720)
Asst. Chief of Complex and Affirmative Litigation
KARUN A. TILAK (SBN 323939)
Deputy City Attorney
  Fox Plaza
  1390 Market Street, 6th Floor
  San Francisco, CA 94102-5408
  Telephone: (415) 355-3308
  Fax: (415) 437-4644
  E-mail: karun.tilak@sfcityatty.org

*Attorneys for Plaintiff, The People of the State of California*

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**04/01/2026**
**Clerk of the Court**
BY: SANDRA SCHIRO
Deputy Clerk

[EXEMPT FROM FILING FEES
PURSUANT TO
GOVERNMENT CODE
SECTION 6103]

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>GATALOG FOUNDATION INC., a Florida corporation; CTRLPEW LLC, a Florida limited liability company; ALEXANDER HOLLADAY; MATTHEW LAROSIERE; JOHN ELIK AKA "Ivan The Troll"; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. CGC-26-633508<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PEOPLE'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Dept: 304<br>Judge: Hon. Ethan P. Schulman<br>Action Filed: February 6, 2026<br>Trial Date: None set |

1

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 5

I.    INTRODUCTION ................................................................ 5

II.   FACTUAL BACKGROUND ................................................................ 6

    A.    Ghost guns and accessories are made to be untraceable ............................. 6

    B.    Defendants openly distribute digital code and instructions for 3D printing firearms and prohibited accessories into California ..................... 7

        1.    The Gatalog website neatly organizes the files Defendants distribute ................................................................ 8

        2.    Defendants distribute their files, without limitation, to anyone in California ................................................................ 8

        3.    Defendants' files make 3D printing firearms and prohibited accessories easy ................................................................ 9

        4.    Ctrl Pew generates revenue for Defendants and specifically targets California ................................................................ 10

    C.    Defendants' conduct presents a major threat to public safety in California ................................................................ 12

III.  LEGAL STANDARD ................................................................ 14

IV.   LEGAL ARGUMENT ................................................................ 14

    A.    The People are reasonably probable to prevail on their claim under Civil Code section 3273.61 ................................................................ 14

        1.    There is a rebuttable presumption that Defendants have violated the law. ................................................................ 15

        2.    The evidence reflects Defendants' knowing distribution of digital firearm manufacturing code to California ........................... 16

    B.    The People are reasonably probable to prevail on their claim under Civil Code § 3273.625 ................................................................ 17

    C.    The People are reasonably probable to prevail on their claim under the UCL ................................................................ 18

    D.    The People have established irreparable harm absent a preliminary injunction ................................................................ 19

V.    CONCLUSION ................................................................ 19

**TABLE OF AUTHORITIES**

**Page**

CASES

*BBBB Bonding Corp. v. Caldwell*
   (2021) 73 Cal.App.5th 349 .......................................................................................... 14

*Bondi v. VanDerStok*
   604 U.S. 458 (2025) ...................................................................................................... 13

*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
   (1999) 20 Cal.4th 163 ................................................................................................... 18

*Farmers Ins. Exch. v. Superior Ct.*
   (1992) 2 Cal.4th 377 ..................................................................................................... 18

*IT Corp. v. Cnty. of Imperial*
   (1983) 35 Cal.3d 63 ................................................................................................. 14, 19

STATUTES

18 U.S.C.
   § 922.............................................................................................................................. 12

27 C.F.R.
   § 478.92............................................................................................................................ 6

Bus. & Prof. Code
   § 17200, et seq. ............................................................................................................. 18
   § 17203 .......................................................................................................................... 14

Civ. Code
   § 3273.60, subd. (a)....................................................................................................... 14
   § 3273.61 ............................................................................................................. 7, 14, 15
   § 3273.625 .................................................................................................... 7, 10, 17, 18

Pen. Code,
   § 2.02, subd. (2)(c) ....................................................................................................... 18
   § 16520.......................................................................................................................... 10
   § 16531.......................................................................................................................... 10
   § 16740............................................................................................................................ 6
   § 16880............................................................................................................................ 6
   § 17210............................................................................................................................ 6

3

## TABLE OF AUTHORITIES
### (continued)

Page

§ 28160 *et seq.* ........................................................................................................ 12
§ 29180............................................................................................................................. 6
§ 29185........................................................................................................................ 9, 10
§ 29186.............................................................................................................. 7,  16, 17, 19
§ 30400........................................................................................................................... 13
§ 31910, subd. (a)........................................................................................................... 12
§ 32310............................................................................................................................. 6
§ 32311............................................................................................................................. 6
§ 32625............................................................................................................................. 6
§ 33410............................................................................................................................. 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

California faces a public safety crisis from the proliferation of unserialized, untraceable, privately assembled firearms, commonly called ghost guns, and dangerous firearm accessories such as machinegun conversion devices (i.e., auto-sears). In the course of a decade, the number of ghost guns and auto-sears recovered annually by law enforcement jumped from just 26 ghost guns in 2015 to over 11,000 ghost guns and auto-sears on average per year by 2021-2025.

The Legislature has taken notice and responded.  California law unequivocally and explicitly prohibits the distribution of computer code for producing firearms and dangerous firearm accessories with a 3D printer to individuals who are not licensed to manufacture firearms. Most recently, in October 2025, California enacted new provisions of the Civil Code that clarify and expand existing law specifically to address "the increasing number of ghost guns being produced via consumer-level computer operated machines such as 3D printers." (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 1263 (2025-2026 Reg. Sess.) Mar. 24, 2025, p. 7.)

Defendants undisputedly distribute into California computer code for 3D printing firearms and dangerous firearm accessories.  Indeed, Defendants actively encourage visitors to their websites to "[b]ecome [u]ngovernable . . . [b]y owning an untraceable firearm" and provide detailed instructions to "print guns." With just a few keystrokes, a legal analyst with the California Attorney General's office downloaded code disseminated by Defendants that can be used to assemble over 130 different models of firearms and more than a dozen dangerous firearm accessories that make firearms more harmful and lethal. The legal analyst in no way concealed that he was downloading these files from a computer in California and Defendants made no efforts to prevent the analyst from doing so.

Defendants' code works exactly as intended.  Using Defendants' code and readily available equipment and materials—a 3D printer, plastic filament and filament drying box, open-source 3D printing software, and easy-to-purchase firearm parts—the People printed and assembled a fully functioning handgun modeled after a Glock 19 pistol in approximately 8 hours. A similar model 3D printed gun released by Deterrence Dispensed, the predecessor entity to Defendant Gatalog

5

Foundation Inc., was used to murder UnitedHealthcare CEO Brian Thompson.[1]

Without intervention, Defendants will continue to cause significant and irreparable harm by contributing to the proliferation of dangerous and illegal ghost guns and accessories in California. The People ask the Court to preliminary enjoin Defendants from distributing digital firearm manufacturing code into California and from promoting and facilitating the unlawful manufacture of firearms.

## II.    FACTUAL BACKGROUND

### A.    Ghost guns and accessories are made to be untraceable

Ghost guns are privately made firearms (or "PMFs") that lack a serial number and are manufactured from products sold or produced without a background check.  (Declaration of San Francisco Police Department Chief of Police Derrick Lew ("Lew Decl.") ¶¶ 4-6.)  As relevant here, they can be manufactured using consumer-grade 3D printers—so-called "3D printed firearms."  (*See id.* at ¶¶ 9-10; Declaration of Paul Briant, Ph.D., P.E. ("Briant Decl.") p. 30.)  While state and federal law require that the key component of a gun—the frame or lower receiver—bear a serial number to enable tracing (see Pen. Code § 29180; 27 C.F.R. § 478.92), 3D printers can be used to print frames and receivers without a serial number.  A 3D printed frame or receiver can then be combined with other parts—which may be commercially available or also 3D printed—to produce an untraceable, unserialized ghost gun.

In addition, 3D printers can be used to print firearm accessories that can be installed on ghost guns or commercially purchased firearms to increase their lethality.  Many of these accessories are illegal to manufacture or possess under California law, including:  auto-sears (see Pen. Code §§ 16880, 32625); large-capacity magazines, which are magazines that have the capacity to accept more than 10 rounds (see Pen. Code §§ 16740, 32310, 32311); and silencers, which dampen the sound of a shot to help conceal a shooter (see Pen. Code §§ 17210, 33410).

3D printed firearms and prohibited accessories can be produced with relative ease at home. They can be printed using standard consumer-grade 3D printers and plastic filament that are

---

[1] Andy Greenberg, *The 'Ghost Gun' Linked to Luigi Mangione Shows Just How Far 3D-Printed Weapons Have Come*, WIRED (Dec. 10, 2024), https://www.wired.com/story/luigi-mangione-united-healthcare-3d-printed-gun-fmda-chairmanwon-v1/.

inexpensive and widely available online—often costing only several hundred dollars—and assembled with easy-to-purchase parts.  (See Briant Decl. p. 30; Declaration of Special Agent Supervisor Salvador Gonzalez ("Gonzalez Decl.") ¶¶ 22-23, 63, 68.)  Similarly, the generic software needed to transmit programming instructions to a 3D printer ("slicer" software) is freely available online.  (Declaration of Belinda Chan ("Chan Decl.") Ex. B p. 4.)  And as described below, Defendants make it easy for a user to program a 3D printer to produce a functional firearm or accessory by providing not only code files but also the necessary printer settings.

While the ease of 3D printing firearms has enabled bad actors to evade background checks and other firearm laws, recent California laws aim to address the serious public safety threat posed by 3D printed firearms and dangerous accessories.  As relevant here, Civil Code section 3273.61 prohibits knowingly distributing or causing to be distributed "digital firearm manufacturing code" to persons in California who are not licensed to manufacture firearms or a member of law enforcement or the military.  And as of the first of this year, Civil Code section 3273.625 makes it unlawful to knowingly, willfully, or recklessly aid, abet, promote, or facilitate the "unlawful manufacture of firearms," including the manufacture of a firearm using a 3D printer by an unlicensed individual and the manufacture of accessories such as auto-sears and large-capacity magazines. (See Pen. Code § 29186, subd. (b).)

**B.    Defendants openly distribute digital code and instructions for 3D printing firearms and prohibited accessories into California**

Defendants distribute files[2] containing digital code and instructions for manufacturing or producing firearms and prohibited firearm accessories using a 3D printer.  The individual Defendants are principals in the corporate entities (Chan Decl. Exs. PP, QQ) and have developed several of the files themselves. (Chan Decl. Exs. D-F, H-Q, S-Y, CC.)  Defendants also review, approve, and disseminate files submitted by third party gun developers.  Defendants distribute these files through two websites—"The Gatalog" (thegatalog.com) and "Ctrl Pew" (ctrlpew.com)—and related profiles on an online video and filesharing platform called Odysee.

---

[2] Throughout, the general term "files" refers to the files available for download from Defendants' Odysee profiles, as discussed in Section II.B.2., *infra*, which contain both digital code and instructions for 3D printing and assembling specific firearm and accessory designs.

7

### 1. The Gatalog website neatly organizes the files Defendants distribute

The Gatalog[3] website primarily directs users to profiles containing code files that Defendants maintain on Odysee (https://odysee.com).[4] The homepage of the Gatalog website contains links to these profiles, each bearing the name of a category of files, for example, "Printable Frames and Receivers." (Declaration of Jacinto Fernandez ("Fernandez Decl.") Ex. E.) The Gatalog website also directs developers to a platform to submit their designs, but Defendants make clear that Gatalog leadership—i.e., Defendants—vet these designs and ultimately control what is posted to the website and associated Odysee profiles. (Chan Decl. Exs. NN, OO pp. 8–9.) The website also links to the Ctrl Pew website. (Fernandez Decl. Ex. B.) A snapshot of the Gatalog homepage appears below.



### 2. Defendants distribute their files, without limitation, to anyone in California

Through nine Gatalog Odysee profiles, Defendants make digital code and instructions for 3D printing firearms and accessories available for download. (Briant Decl. pp. 10-11, 28-29.) The names of the Odysee profiles are nearly the same as the links on the Gatalog website, except with "The Gatalog's" in front of the title. (E.g., Fernandez Decl. ¶ 26, Ex. G.) The profiles and individual design pages bear a Gatalog logo. (See, e.g., id. ¶¶ 26, Exs. G, Q.) And the individual pages further note that the files are "present[ed]" by "The Gatalog" and invite the user to "Join the community at thegatalog.com." (See, e.g., id. ¶ 26, Ex. Q)

---

[3] "Gatalog" is a play on words, a cross between "gat," which is slang for a firearm and "catalog."
[4] Odysee is similar to video-sharing platform YouTube but also allows users to share non-video files. Odysee is not a defendant in this action.

8

The files on Odysee are available for free and can be downloaded by simply clicking "download."  (E.g., Fernandez Decl. ¶ 26, Ex. Q.)  Nothing on the Gatalog website or the corresponding Odysee profiles prevents downloads from California or requires users to demonstrate that they have state and federal manufacturer's licenses or are otherwise subject to an exception.  On January 7, 2026, a legal analyst of the California Attorney General's Office using a California-based IP address visited each of the Gatalog Odysee profiles, accessed from the Gatalog homepage.  (Fernandez Decl. ¶¶ 17-28.)  The legal analyst downloaded all of the files available without issue, which consisted of 243 .zip files.  (*Id.*)  The Gatalog website makes available files for at least one design directed to California, a printable frame called "The CAG19," described as a "California Compliant Glock 19-based Carbine kit."[5]  (*Id*. Ex. P.)

### 3.    Defendants' files make 3D printing firearms and prohibited accessories easy

The Gatalog Odysee profiles contain files for over 130 different models of 3D printed firearms and more than a dozen different designs of prohibited firearm accessories, including for auto-sears, large-capacity magazines, and silencers.  (Fernandez Decl. Exs. F-K, M-DD; Gonzalez Decl. ¶¶ 62, 64, 67, 74, 77, 85 and Exs. H and P at p. 3.)  The files themselves consist of individual zip folders for each design.  (Fernandez Decl. ¶¶ 25-26.)  According to the People's expert in mechanical engineering, the zip folders contain computer-aided design ("CAD") files that can be used to program 3D-printers.  (Briant Decl. pp. 10-11.)  Most folders also include instructions for how to use the CAD files to print the design, which often provide recommended materials and specific print settings.  (*Ibid.*)  And many folders include further instructions for how to assemble or complete the design with additional parts or tools, after it has been printed. (*Ibid.*; Gonzalez Decl. ¶¶ 21-22, 63, 68, 79-80, Exs. B, C, H, and P.)

The CAD files and instructions may be readily used to program a 3D printer to print the designs reflected in the files.  (Briant Decl. pp. 4, 14, 19, 21, 24.)  This is done by first uploading the CAD files to a "slicer" software and applying the printer settings provided in the instructions and/or default settings where none are provided.  (Briant Decl. pp. 7, 10.)  The slicer software

---

[5] Despite the name, 3D printing such a firearm without a manufacturer's license is illegal under California law. (Pen. Code § 29185, subd. (a).)

9

then transmits programming instructions for the printer (called "gcode"), which are then loaded onto a 3D printer to print the item.  (Briant Decl. p. 7.)

Using the files for one of the frame designs in the Gatalog files, the "FMDA DD 19.2," the People 3D printed and assembled a functioning firearm modeled after a Glock 19 handgun. Beginning on June 3, 2025, following the printer settings and filament type recommended in the design file and using a printer model recommended in other Gatalog files, the People's expert performed three prints of the frame design.[6] (Briant Decl. pp. 30-39.)  Each print took approximately 7.5 hours.  (*Id.* at p. 30.)  On July 16, 2025, a Special Agent Supervisor at the California Department of Justice, Bureau of Firearms, Salvador Gonzalez ("SAS Gonzalez"), assembled an operational handgun using one of the prints.  (Gonzalez Decl. ¶¶ 20-38.)  He followed the written assembly instructions provided in the Gatalog file, which explained which firearm parts to purchase and what tools to use, and assembled the firearm in one hour.  (*Id.*)  In short, the People produced an operational handgun in approximately 8.5 hours.

The People's expert and SAS Gonzalez also reviewed files for several firearm accessories made available by Defendants, including an auto-sear (the "'Make Glocks Full Auto' Glock autosear"), various 3D printable 9mm large-capacity magazines (including a 17 round, 25 round, and 30 round), and silencers of different sizes. (Briant Decl. pp. 19-28; Gonzalez Decl. ¶¶ 59-85 and Exs. C, H, and P at p. 3.) The files appear to be designed to produce functioning accessories. (Briant Decl. pp. 19, 21, 24; Gonzalez Decl. ¶¶ 59-85.)

### 4.    Ctrl Pew generates revenue for Defendants and specifically targets California

Like the Gatalog website, the Ctrl Pew[7] website links to the 3D printing files available for download on the Gatalog's Odysee profiles. The homepage invites users to "Browse All The Gatalog Releases" and includes a search box to "Search The Gatalog."  (Chan Decl. Ex. A.) Individual design pages contain a "[d]ownload" button that takes users to the corresponding page

---

[6] Prior to any modification, the three items that came out of the printer already constituted firearm precursor parts, which are regulated under Civil Code sections 3273.61 and 3273.625.  (Gonzalez Decl. ¶¶ 19; see Pen. Code §§ 29186, subd. (b)(3), 29185, subd. (a), 16520, subd. (b)(18), and 16531, subd. (a).)

[7] The name Ctrl Pew stands for 3D printing weapons: "ctrl" for the keyboard key and "Pew" for "Print Every Weapon."  (Chan Decl. Ex. A.)

10

on Odysee.  (E.g., Chan Decl. Ex. C.)

Defendants Holladay, Larosiere, and Elik each develop their own designs for 3D printed firearms and firearm accessories, which have individual pages on the Ctrl Pew site and are available for download on the Gatalog Odysee profiles. The Ctrl Pew site attributes the designs to Defendants or their online handles:  "@ctrlpew," "Matt Larosiere" (who also goes by "Fuddbusters"), and "IvanTheTroll," respectively. Collectively, there are over twenty 3D printed designs attributable to Holladay, Larosiere, and Elik.  (Chan Decl. Exs. D-F, H-Q, S-Y, CC.)

The Ctrl Pew site also provides general guides for 3D printing firearms and firearm accessories, sells merchandise, solicits donations for gun developers, gives product recommendations, and earns commissions through affiliate links to various 3D printing equipment, material, and other products.  (Chan Decl. Exs. B, Z, BB.)  Defendants Holladay, Larosiere, and Elik each have pages for receiving donations through the Ctrl Pew website. (*Id.* Ex. BB.)  The Ctrl Pew website also directs users to purchase parts kits to complete their 3D printed firearm designs from a "preferred parts vendor" (E.g., *Id.* Exs. CC, U, DD, O, EE) that is in fact owned and operated by Defendants Larosiere and Holladay.  (*Id.* Ex. RR.)

Ctrl Pew directs its 3D printed gun content to California residents.  It sells merchandise directed to California, including a "warning" sticker mocking California law that places restrictions on 3D printers for manufacturing firearms and a "10 rounds only" sticker making fun of state law restrictions on large-capacity magazines.[8]  (Chan Decl. Exs. AA, MM.)  In addition, the Ctrl Pew terms of service instruct "California Users and Residents" to resolve complaints by contacting the California Department of Consumer Affairs.  (*Id.* Ex. FF.)

The Ctrl Pew site encourages users to circumvent firearms laws through 3D printing.  For example, one piece of merchandise it sells states "Go and make it.  Print one of everything. Laugh on the grave of gun control."  (Chan Decl. Ex. GG.)  And the site describes the FGC-9, a design that stands for "F*** Gun Control," as an untraceable firearm enabling individuals to

---

[8] The sticker is a yellow hazard triangle sign that states, "Not for Making Guns." (Chan Decl. Ex. AA.) The product posting refers to California legislation prohibiting the sale of 3D printers with the primary function of manufacturing firearms, and it jokes, "we're sure you weren't planning on using your . . . 3D printer [for making guns] anyway, right?" (*Id.*)

11

"[b]ecome [u]ngovernable" with a "veto power on par with their government."  *(Id*. Exs. HH, II.)

**C.      Defendants' conduct presents a major threat to public safety in California**

Ghost guns and prohibited firearm accessories pose a grave threat to public safety. Because they can be procured without a background check, ghost guns make it easier for prohibited persons such as people convicted of dangerous felonies and violent crimes, adjudicated domestic abusers, and minors to obtain firearms. (Lew Decl. ¶¶ 5-6; see also 18 U.S.C. § 922(d), (t); Pen. Code § 28160 *et seq.*) And because they lack serial numbers, ghost guns impede law enforcement's ability to trace firearm ownership and prevent and solve crimes. (Lew Decl. ¶¶ 5-7; Declaration of San Mateo District Attorney Stephen Wagstaffe ("Wagstaffe Decl.") ¶ 9.) Ghost guns also endanger law enforcement officers executing search warrants and restraining orders, as they cannot check in advance if residents may be in possession of ghost guns like they do with registered firearms. (Wagstaffe Decl. ¶ 11.) And ghost guns are inherently more dangerous than commercial firearms because of the variability in the manufacturing and assembly process and they have been found unsafe to fire. (Declaration of Oakland Police Department Officer Bryant Weatheroy ("Weatheroy Decl.") ¶ 7.) Moreover, many ghost-gun handgun designs lack important safety features required by California law that are intended to prevent accidental discharges and reduce the resulting risk of injury or death. (See Gonzalez Decl. ¶¶ 40-58; Pen. Code § 31910, subd. (a).) Finally, prohibited accessories dangerously increase the capacity of a firearm to inflict harm, such as with auto-sears. (See Lew Decl. ¶ 10(b).)

California is suffering from a ghost-gun crisis that has escalated dramatically over the course of a decade. Statewide, law enforcement agencies recovered just 26 ghost guns in 2015 and more than 11,000 ghost guns and auto-sears on average per year over the past five years.[9] (Gonzalez Decl. ¶ 92.) In San Francisco, 44% of guns recovered in homicide cases in 2020 were ghost guns, and hundreds of ghost guns were recovered between 2022 and 2025. (Lew Decl. ¶ 7.) In Oakland, more than 1,100 ghost guns were recovered over the past five years. (Weatheroy Decl. at ¶ 6.) In San Mateo County, approximately 33%-50% of all firearms-related crimes

---

[9] Data for 2015-2025 includes reports of seized ghost guns and data for 2024-2025 includes reports of seized ghost guns as well as auto-sears.  (Gonzalez Decl. ¶ 92.)

charged by the District Attorney's Office involve ghost guns. (Wagstaffe Decl. ¶ 5.) And in San Diego County, the Sheriff's Office has recovered at least 830 ghost guns since 2020. (Declaration of San Diego County Sheriff's Office Crime and Intelligence Analysis Manager Brent Jordan ("Jordan Decl.") ¶ 4.)

3D printed firearms and prohibited accessories are a rapidly expanding part of the ghost gun problem. Since federal and state regulations have restricted the sale of ghost gun "kits" and unfinished frames and receivers used to produce ghost guns, 3D printed guns have become more appealing for evading gun control laws. (See *Bondi v. VanDerStok*, 604 U.S. 458 (2025); Pen. Code § 30400.) In San Francisco, while 3D printed firearms were rarely recovered before 2022, since then, approximately 40 have been recovered. (Lew Decl. ¶ 9.) And local law enforcement agencies in the state have recovered 3D printed firearms in cases involving drugs, assaults, thefts, and criminal threats, and from prohibited persons including felons and minors. (*Id.* Decl. ¶ 10; Weatheroy Decl. ¶ 9; Jordan Decl. ¶ 6.) They have also recovered exceptionally dangerous 3D printed firearms and accessories, including illegal assault rifles, machineguns, auto-sears, and large-capacity magazines. (Wagstaffe Decl. ¶ 7; Lew Decl. ¶¶ 9-10.)

Specific cases underscore the real and substantial danger posed by ghost guns and illegal firearm accessories. For example, in May 2023, a San Francisco resident prohibited from possessing firearms due to a prior felony conviction was arrested for manufacturing and selling firearms, including 3D printed ghost guns, machineguns converted with auto-sears, and a gun that had been used to shoot at police officers. (Lew Decl. ¶ 10(c).) He had more than a dozen frames and receivers, four pistols, an AR-15 style rifle, and hundreds of rounds of ammunition in his possession. (*Id.*) In 2025, SFPD officers investigating the illegal sale of an auto-sear recovered several 3D printed firearms, multiple 3D printers, and various magazines, firearm parts, and ammunition from the suspect's home. (*Id.* ¶ 10(b).) In 2025, police officers arrested a San Mateo County resident for stalking and firearm-related crimes and recovered from his home six illegal assault weapons, all of which were ghost guns, as well as a 3D printer and other machinery for building guns. (Wagstaffe Decl. ¶ 7.) And in November 2025, two minors were arrested in

connection with a school shooting in Oakland involving a ghost gun in which a minor student had been shot in the back. (Weatheroy Decl. ¶ 9.)

## III.   LEGAL STANDARD

The Attorney General and City Attorney have the authority to seek injunctive relief under each of the three causes of action here. (Civ. Code §§ 3273.61, subd. (c)(2), 3273.625, subd. (c)(2); Bus. & Prof. Code § 17203.) When the People seek to preliminarily enjoin the violation of laws that provide for such injunctive relief and establish that it is "reasonably probable" they will prevail on the merits, "a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant." (*IT Corp. v. Cnty. of Imperial* (1983) 35 Cal.3d 63, 72.) A court need not balance the harms to the parties unless the defendant can show that "it would suffer grave or irreparable harm from the issuance of the preliminary injunction." (*Ibid.*) In conducting that inquiry, "the cost of ceasing illegal conduct is not a cognizable injury." (*BBBB Bonding Corp. v. Caldwell* (2021) 73 Cal.App.5th 349, 378.) Furthermore, where it is not only reasonably probable but "fairly clear" the plaintiff will prevail on the merits, a preliminary injunction may issue even if "the plaintiff is unable to prevail in a balancing of the harms." (*IT Corp.*, *supra*, 35 Cal.3d at pp. 72–73.)

## IV.   LEGAL ARGUMENT

### A.    The People are reasonably probable to prevail on their claim under Civil Code section 3273.61

Civil Code section 3273.61(a)(1) makes it unlawful for any person to knowingly distribute or cause to be distributed any digital firearm manufacturing code to anyone in California who is not a federally licensed firearms manufacturer or a member of law enforcement or the military. "Digital firearm manufacturing code" means "any digital instructions in the form of computer-aided design ["CAD"] files . . . or other code or instructions stored and displayed in electronic format as a digital model that may be used to program . . . a three-dimensional printer . . . to manufacture or produce" a firearm, firearm precursor part, or certain firearm-related products or accessories, including auto-sears, large-capacity magazines, and silencers.  (Civil Code § 3273.60, subd. (a).)

14

**1.    There is a rebuttable presumption that Defendants have violated the law.**

As of January 1, 2026, the law includes a rebuttable presumption that a person has violated the law if: (1) the person owns or participates in the management of an internet website or other electronic portal, database, or platform that makes digital firearm manufacturing code available for download or other distribution to unlicensed individuals in California, and (2) "[u]nder the totality of circumstances," the website or other electronic portal, database, or platform encourages visitors to use the code to manufacture firearms or firearm accessories.  (Civ. Code § 3273.61, subd. (f).)  Both conditions are plainly met here.

As to the first condition, the People have shown that Defendants make digital firearm manufacturing code available to unlicensed individuals in California through their websites and Odysee profiles.  On January 7, 2026, a legal analyst from the California Attorney General's Office visited Defendants' website from a computer located in San Francisco.  (Fernandez Decl. ¶¶ 17-28.)  With a few keystrokes he downloaded a series of CAD files that may readily be used to program a 3D printer to print the firearm designs reflected in the files. (See *id.*; Briant Decl. p. 4.)  The People have used the code from one of the downloaded files to print and assemble a functioning handgun modeled after a Glock 19 pistol.  (Briant Decl. pp. 30-39; Gonzalez Decl. ¶¶ 20-38.)  SAS Gonazalez, the People's firearms expert, has also determined that several of the files appear to be designed to produce functioning prohibited firearms accessories, including an auto-sear, a large-capacity magazine, and a silencer, just as advertised.  (Gonzalez. Decl. ¶¶ 59-85.)

The second condition is likewise easily established here.  Under the totality of the circumstances, Defendants' websites and Odysee profiles encourage individuals who access them to use the digital firearm manufacturing code to manufacture firearms or firearm accessories.  Indeed, this is the core purpose of Defendants' online presence.  For example, the digital firearm code files available from the Odysee profiles—and linked from the Gatalog and Ctrl Pew websites—are often accompanied by detailed instructions on how to 3D print the firearm or accessory (including recommended printer settings) and many are also accompanied by instructions on how to assemble the parts into an operational gun or accessory. (Briant Decl. pp.

15

10-11; Gonzalez Decl. ¶¶ 21-22, 63, 68, 79-80, Exs. B, C, H, and P.)

Defendants also make numerous statements explicitly encouraging the use of the codes to build firearms and accessories. On the Gatalog and Ctrl Pew websites, Defendants state that they want anyone who finds the digital codes to "[be] able to construct them successfully" and to "build whatever we have released," respectively. (Chan Decl. Exs. NN, JJ.) The Ctrl Pew site further encourages users by providing "project documentation" for certain designs and telling users to "print every weapon" and "print more guns." (*Id.* Exs. C, KK.) Defendants even encourage users to "print" the firearms or firearm accessories in the names of the profiles and the designs (e.g., "The Gatalog's *Printable* Frames and Receivers," "The Gatalog's *3D Printable* Magazines," and "The FMDA DD 19.2 *3D Printable* Glock Frame") (emphasis added). (Fernandez Decl. Exs. G, J, Q.)

**2.    The evidence reflects Defendants' knowing distribution of digital firearm manufacturing code to California.**

Additionally, the People's investigation has adduced facts sufficient to establish directly that Defendants knowingly distribute or cause to be distributed digital firearm manufacturing code into California.

As a threshold matter, Defendants cannot feign ignorance about the content of the code files. Rather, they proudly assert that they have contributed code file designs themselves and control what files are disseminated as official Gatalog releases. (See Sections II.B.1, II.B.4, *supra*.) The files disseminated by Defendants include detailed instructions on how to 3D print and assemble firearms and prohibited accessories using the code, and Defendants' websites are filled with content that instructs and encourages users to do so. (See Section IV.A.1, *supra*.)

Defendants' statements also illustrate their clear intention to distribute their code files in California. As described above, Defendants make no attempt to screen out California users and instead market directly to visitors from California by offering a "California compliant" Glock 19-based Carbine kit, referring users to the California Department of Consumer Affairs, and selling 3D-printing related merchandise encouraging violation of California laws. (Fernandez Decl. Ex. P; Chan Decl. Exs. FF, AA.) Indeed, Defendants' stated purpose for distributing the files is to

16

evade firearms laws—they urge users to "Print one of everything.  Laugh on the grave of gun control."  (Chan Decl. Ex. GG.)

### B. The People are reasonably probable to prevail on their claim under Civil Code § 3273.625

The People are reasonably probable to prevail on their claim that Defendants' distribution of code and instructions for 3D printing firearms and prohibited firearm accessories furthers the unlawful manufacture of firearms in California.

Civil Code section 3273.625 is broad. It provides that it shall be unlawful "to knowingly, willfully, or recklessly cause another person to engage in the unlawful manufacture of firearms, or to knowingly, willfully, or *recklessly* aid, abet, *promote*, or *facilitate* the unlawful manufacture of firearms." (Civ. Code § 3273.625, subd. (a) (emphasis added).)

Civil Code Section 3273.625(b) expressly incorporates the expansive definition of "unlawful manufacture of firearms" from Penal Code section 29186, which includes, but is not limited to, the manufacture of: any firearm using a three-dimensional printer by an individual unlicensed to manufacture firearms (Pen. Code § 29186, subd. (b)(3)); firearms not imprinted with a valid serial number or mark of identification (Pen. Code § 29186, subd. (b)(6)(C)); large-capacity magazines (Pen. Code § 29186, subd. (b)(6)(D)); machineguns (Pen. Code § 29186, subd. (b)(6)(E)); and unsafe handguns (Pen. Code § 29186, subd. (b)(6)(I)).

While Defendants' conduct strongly suggests they know and intend that visitors to their websites will 3D print firearms and firearm accessories, the People need not show such knowledge or intent to prove a violation of section 3273.625. Instead, the People must only demonstrate it is reasonably probable that Defendants "recklessly" "promote" or "facilitate" the unlawful manufacture of firearms.

Defendants clearly "promote" or "facilitate" the unlawful manufacture of firearms. To "promote" means to "contribute to the growth or prosperity of" or to "help bring (something, such as an enterprise) into being." (*Promote*, Merriam-Webster, https://www.merriam-webster.com/dictionary/promote (Feb. 27, 2026).) To "facilitate" means to "make (something) easier" or to "help bring (something) about." (*Facilitate*, Merriam-Webster,

17

https://www.merriam-webster.com/dictionary/facilitate (Feb. 27, 2026).) As described above, Defendants distribute or cause to be distributed computer code and detailed accompanying instructions for 3D printing firearms and prohibited firearm accessories. The code is intended for 3D printing, and the instructions make it easy for anyone accessing the codes to successfully print firearms or firearm accessories.  By providing the code and related instructions, Defendants undoubtedly "make[] easier" and "bring[] about" the unlawful manufacture of firearms.

Nor is there any question that Defendants' conduct is, at a minimum, reckless.  A defendant acts recklessly when he "consciously disregards a substantial and unjustifiable risk that [a] material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." (Model Pen. Code, § 2.02, subd. (2)(c).)  As described above, Defendants make their 3D printing code and instructions available to all.  And, despite displaying an awareness of California's laws, Defendants direct their websites to California users and their code files and websites actively encourage users to flout those laws by printing firearms.  Notwithstanding the substantial and unjustifiable risk that their codes will be used to unlawfully manufacture firearms in California, Defendants make no effort to prevent their code and instructions from being downloaded in the state or to ensure that distribution is limited to individuals licensed to manufacture firearms.

### C.   The People are reasonably probable to prevail on their claim under the UCL

The UCL, Business and Professions Code section 17200, et seq., prohibits "any unlawful, unfair, or fraudulent business act or practice."  (*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) Claims under the UCL's "unlawful" prong "'borrow[]' violations of other laws and treat these violations, when committed pursuant to business activity, as unlawful practices independently actionable under" the UCL.  (*Farmers Ins. Exch. v. Superior Ct.* (1992) 2 Cal.4th 377, 383.) As discussed above, Defendants have violated and are continuing to violate Civil Code sections 3273.61 and 3273.625. The People therefore are

18

reasonably probable to prevail on their UCL claims predicated on violations of these statutes.

### D. The People have established irreparable harm absent a preliminary injunction

Because the People have demonstrated a reasonable probability of success on the merits of their claims, the Court should presume harm to the public. (*IT Corp. v. Cty. of Imperial*, 35 Cal.3d 63, at 72.) Beyond the presumption, the irreparable harm to the public flowing from Defendants' business practices is clear.

By providing digital code and instructions for 3D printing ghost guns and prohibited accessories, Defendants cause irreparable harm. They make it easier for prohibited persons to obtain firearms, facilitate the production of unserialized and untraceable firearms that impede law enforcement's ability to prevent and solve crimes and endanger officer safety, enable the manufacture of dangerous and illegal firearm accessories such as machinegun conversion devices, and facilitate the manufacture of unsafe firearms and unsafe handguns. (See Section II.C, *supra*.)

Ghost guns and prohibited firearm accessories such as those produced using Defendants' code are a widespread problem in California. Since 2015, the number of ghost guns and auto-sears seized across the state has increased by over 40,000% to an average of over 11,000 per year (Gonzalez Decl. ¶ 92). In some localities, ghost guns have accounted for between one-third and one-half of homicide and firearms-related cases. (Section II.C, *supra*.) And the harm posed by 3D printed ghost guns and prohibited accessories is clear from a variety of alarming incidents, including shootings involving minors and the mass manufacture and sale of ghost guns and auto-sears by prohibited persons. (See *id.*)

## V. CONCLUSION

The People respectfully request that this Court enter the requested preliminary injunction enjoining Defendants from distributing or causing to be distributed digital firearm manufacturing code into California; aiding, abetting, promoting, or facilitating the unlawful manufacture of firearms in California by distributing or causing to be distributed digital firearm manufacturing code and/or accompanying instructions into California that may be used to produce the firearm-related products identified in Penal Code § 29186.

Respectfully submitted,

Dated:  April 1, 2026

ROB BONTA
Attorney General of California

By:    */s/ Vesna Cuk*

VESNA CUK
Deputy Attorney General

Dated:  April 1, 2026

DAVID CHIU
San Francisco City Attorney

By:    */s/ Karun A. Tilak*

KARUN A. TILAK
Deputy City Attorney

*Attorneys for Plaintiff*
*The People of the State of California*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PEOPLE'S MOTION FOR PRELIMINARY INJUNCTION
(Case No. CGC-26-633508)