UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:26-cv-340

CTRLPEW LLC, ALEXANDER
HOLLADAY, CENTURION PARTNERS
GROUP, LLC, JONATHAN ADAMS, and
TREY BICKLEY,

*Plaintiffs*,

v.

DAVID CHIU, in his official capacity as San
Francisco City Attorney, and ROB BONTA, in
his official capacity as Attorney General of
California,

*Defendants*.

_____/

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

i

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

REQUESTED ORDER .................................................................................... 3

FACTUAL BACKGROUND ........................................................................... 3

A.    Plaintiffs publish and receive protected speech in Florida. ....... 3

B.    The files at issue are human-viewable expression. ...................... 5

C.    Defendants' enforcement theory reaches speech. ........................ 7

D.    Defendants' enforcement campaign has inflicted injury. ........... 8

E.    This Court's Prior TRO Order. ......................................................... 9

LEGAL STANDARD ..................................................................................... 13

ARGUMENT ................................................................................................... 13

I.    PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF
SUCCESS ON THE MERITS ..................................................................... 14

   A)    Plaintiffs' publications are protected speech. .................................... 14

   B)    Defendants' enforcement theory is content-based ............................. 15

   C)    Defendants' conduct is prior restraint and indirect censorship. ....... 16

   D)    Defendants cannot suppress speech because it might facilitate
   unlawful downstream conduct. ................................................................ 17

   E)    Bickley, Adams, and Centurion have independent injuries. ............. 18

   F)    Defendants' application violates due process. ................................... 19

   G)    Defendants' conduct unduly burdens interstate commerce ............... 20

   H)    Defendants' enforcement campaign burdens Adams's and Centurion's
   Second Amendment rights. ...................................................................... 21

II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT
AN INJUNCTION. ......................................................................................... 22

III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR
RELIEF. ............................................................................................................ 23

IV.    SECURITY SHOULD BE WAIVED OR SET NOMINALLY. ......... 24

CONCLUSION ................................................................................................ 25

CERTIFICATE OF SERVICE ..................................................................... 26

i

Plaintiffs CTRLPEW LLC, Alexander Holladay, Centurion Partners Group LLC, Trey Bickley, and Jonathan Adams move under Federal Rule of Civil Procedure 65 and Local Rule 6.02 for a preliminary injunction barring Defendants Rob Bonta and David Chiu, and those acting in concert with them, from applying California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' lawful Florida speech activities.

Plaintiffs do not seek to enjoin any California state-court proceeding. Plaintiffs do not seek an order directed to any California court. Plaintiffs do not seek to prevent California from enforcing its laws against any conduct occurring in California. Plaintiffs seek only to enjoin Defendants from reaching into Florida to suppress, punish, chill, or disable protected Florida speech and lawful Florida conduct.

## INTRODUCTION

California may regulate California conduct. It may not export California's speech regime into Florida, impose crushing civil penalties on Florida speakers, or pressure internet intermediaries to disable Florida publication infrastructure because California disapproves of firearms-related expression that Floridians publish, receive, and lawfully use in Florida.

Defendants call the targeted materials "digital firearm manufacturing code," but this is a misnomer in every material respect. The statute is not limited to actual manufacturing code. It sweeps in digital models and "instructions stored and displayed in electronic format as a digital model." Cal. Civ. Code § 3273.60. Defendants' enforcement theory goes further still, reaching written guides, photographs, PDFs, links, and commentary that allegedly "promotes" or "facilitates" unlawful manufacture. (Doc. 34-3 at 7, 14–18).

1

The present record shows what those materials are. Plaintiffs' 3D models are human-viewable digital works. They do not operate a printer, command a CNC machine, or manufacture anything. Holladay Decl. ¶¶ 11–17; Lettman Decl. ¶¶ 5, 12, 14–16, 38–43. Users download, inspect, and appreciate them as visual, technical, political, and cultural works. Holladay Decl. ¶ 17; Bickley Decl. ¶¶ 5–12. Plaintiffs' written guides, photographs, commentary, and curated presentation are ordinary human-readable expression. Holladay Decl. ¶¶ 5, 8, 11, 23–24, 30. Whatever label California uses, the record shows Defendants' theory reaches human-readable writings, images, links, curation, and viewable 3D models that do not themselves operate machines.

Defendants' enforcement campaign has already chilled speech. Holladay has ceased publishing new firearms-related works from Florida. Holladay Decl. ¶¶ 38–41. Bickley cannot receive, study, or archive new works in Florida. Bickley Decl. ¶¶ 5–12. Adams cannot receive and use Holladay's withheld reinforced Plastikov V4 model to restore his lawfully possessed home-defense firearm to operable condition. Adams Decl. ¶¶ 5–12, 20–35. Centurion, a lawful Florida business, cannot use CTRLPEW's new works as it otherwise would for lawful Florida research, manufacturing, and customer work. Monica Decl. ¶¶ 4–15, 17–35.

The requested injunction prevents only the extraterritorial application of California law to Florida speech, Florida recipients, Florida publication infrastructure, and lawful Florida conduct.

2

## REQUESTED ORDER

Plaintiffs request the following preliminary injunction:

Pending final judgment, Defendants Rob Bonta and David Chiu, and their officers, agents, employees, attorneys, and all persons acting in concert with them who receive actual notice of this Order, are enjoined from applying, enforcing, threatening to apply, or taking steps to effectuate California Civil Code §§ 3273.61 and 3273.625, including through California's Unfair Competition Law, against any Florida speech activity not specifically directed into California

Defendants are further enjoined from requesting or procuring any host, domain registrar, CDN, social-media platform, file platform, search provider, payment processor, ISP, or similar intermediary to disable, delist, block, suspend, remove, or restrict Plaintiffs' Florida publication infrastructure or Florida access based on §§ 3273.61 or 3273.625. Mere accessibility from California shall not authorize Defendants to demand nationwide or Florida-disabling third-party relief. Nothing in this Order prevents Defendants from asking a California court to regulate any activity occurring or specifically directed into California.

## FACTUAL BACKGROUND
### A. Plaintiffs publish and receive protected speech in Florida.

CTRLPEW is a Florida publication platform. Holladay is a Florida author, designer, and digital artist. Holladay Decl. ¶¶ 2–7. Plaintiffs create, curate, publish, study, archive, and use firearms-related expression from Florida. *Id.*; ¶¶ 5–11; Bickley Decl. ¶¶ 2–13; Adams Decl. ¶¶ 3–6, 24–35; Monica Decl. ¶¶ 4–14. That

expression includes written works, photographs, and three-dimensional digital models. Holladay Decl. ¶¶ 5, 8, 11.

Representative examples illustrate the expressive nature of the works. The Joshie Woshie 9 is a three-dimensional digital work depicting a pistol frame adorned with political, artistic, and cultural imagery, including stylized artwork, a political URL, and other satirical design features. Holladay Decl. ¶¶ 21–22. The TacDaddy Readme is a human-readable written and visual publication containing cover art, a personal foreword, commentary, renderings, original photographs, humor, safety discussion, and design explanation. (Doc. 34-7); Holladay Decl. ¶¶ 23–24. The withheld Plastikov V4 grip is both expressive and useful: it incorporates Soviet-era design cues, critiques and appropriates those cues, and—if manufactured strengthens a weak point in an extant lawful firearm design. *Id*. ¶¶ 25–26; Adams Decl. ¶¶ 20–28. Another project withheld because of Defendants' enforcement campaign revisits an unusual nineteenth-century mechanism associated with E.K. Root and Samuel Colt, combining it with modern references to the work of Emilio Ghisoni's Mateba revolvers, with Holladay presenting the result as a "small museum" of unusual historical design paths. Holladay Decl. ¶¶ 27–29. Holladay's digital models use design to preserve abandoned mechanical ideas, present them to future designers, criticize legal and cultural hostility toward private arms ownership, and invite study, critique, modification, and lawful use by others. *Id*. The works are intended to be observed, studied, discussed, experienced, and built upon. *Id*.

4

The record does not require this Court to decide that every digital model is high art. It is enough that Defendants' theory reaches expressive materials.

B. **The files at issue are human-viewable expression.**

This Court is no doubt familiar with a JPEG image file and a PDF document. The 3D models at issue here are STEP and STL digital model files. These digital models cannot reasonably be dubbed "code," much less "manufacturing code." Holladay Decl. ¶¶ 11–16; Lettman Decl. ¶¶ 5, 12, 14–16, 38–43. A STEP or STL file does not operate a printer, command a CNC machine, or manufacture anything. They may be viewed, studied, or modified on a computer without manufacturing anything. *Id.* ¶¶ 16, 43. These files, plus the common images and written document formats, are the only files Holladay posts. Holladay Decl. ¶¶ 11, 15.

By contrast, G-code, a type of CAM ("Computer Aided Manufacturing") output are machine-control instructions generated with respect to a particular machine, tooling, and material. Lettman Decl. ¶¶ 17 19, 21 23, 27 37. G-code contains commands directing how and where a machine should move a tool relative to a workpiece, at what speed, or other process-specific settings. *Id.* ¶ 17. In other words, G-code is materially different from a digital model file. *Id.* ¶¶ 38–43, 57–60.

A person who wishes to use a digital model as a resource for manufacturing must use separate software and make a series of independent choices about the manufacture which are not—and cannot—be found in the digital model itself. *Id.* ¶¶ 36–41. The separate software then creates a new file—often G-code—containing machine instructions suited to a particular set of circumstances based on human input. *Id.*

As a point of comparison, Technologist John Lettman explains that an ordinary JPEG image file contains visual information software can display, but the JPEG does not instruct a machine to manufacture the object depicted in the image. *Id.* ¶¶ 47–57. A digital model file is similar in the relevant respect: it is data representing a three-dimensional object that can be displayed, studied, modified, and rendered for use by a human. *Id.*

An apt comparison can be found in *La Trahison des images*, the most famous work of surrealist René Magritte:



*La Trahison des images* is well understood: the painting is not a pipe. It is a painting of a pipe. Likewise, the above JPEG inserted into this document is not *La Trahison*

itself. It is a JPEG of *La Trahison*. The resultant display of a likeness of *La Trahison* on a computer renders the above no more instructions for a machine to manufacture a pipe than Holladay's models are instructions for a machine to manufacture a gun. Defendants' theory collapses the distinction between a human-viewable model with machine instructions later generated by a user's separate choices. That impermissibly collapses speech, study, and manufacture.

C. **Defendants' enforcement theory reaches speech and publication infrastructure.**

As discussed *supra*, California Civil Code § 3273.60 defines "digital firearm manufacturing code" broadly enough to include a host of expressive digital models and instructions. Section 3273.61 authorizes actions over distribution by any means, including the internet, and authorizes civil penalties up to $25,000 per violation, strict-liability damages for certain injuries, injunctive relief, fee shifting, and a rebuttable presumption based on ownership or management of a website, electronic portal, database, or platform. Section 3273.625 separately reaches anyone who "aid[s], abet[s], promote[s], or facilitate[s]" unlawful manufacture and authorizes additional penalties, damages, injunctive relief, and fee shifting.

Defendants' California filings confirm that their enforcement theory reaches written instructions, digital models, web pages, and external links to information. Ex. A at 3–4; Doc. 34-3 at 7, 14–18. None of these are "code" in any reasonable sense of the word. They have also demonstrated a desire to effectuate injunctive relief through third parties, including internet service providers supporting websites and online profiles. Ex. A at 6-8. This is a transparent expression of Defendants' desire to control

7

speech extraterritorially. These mechanisms would not merely regulate California conduct. Any attempt to comply with California's demands would disable Florida publication infrastructure and prevent Florida recipients from accessing protected speech in Florida. Lettman Decl. ¶¶ 61–81.

**D. Defendants' enforcement campaign has already inflicted constitutional injury.**

Holladay has stopped publishing the heretofore-discussed works from Florida because of Defendants' enforcement campaign. Holladay Decl. ¶¶ 38–43, 53. But for Defendants' threatened application of California Civil Code §§ 3273.61 and 3273.625, Holladay would immediately resume publishing, including the reinforced Plastikov V4 grip model and other expressive works. *Id.*

Bickley uses CTRLPEW to study and archive firearms-related visual, technical, and artistic works in Florida. Bickley Decl. ¶¶ 2 12. He is waiting to receive updated or new works. *Id.* He values these works for their engineering problem-solving, design intricacy, expressive character, and technological significance. *Id.*

Adams lawfully made and possesses a Plastikov V4 firearm in Florida. Adams Decl. ¶¶ 3–12, 14–35. He relies on it for lawful purposes, including home defense. *Id.* The firearm is presently inoperable because of a failure in the fire-control mechanism. *Id.* Adams has re-printed the fire-control group three times, with the failure persisting. *Id.* No available model solves the problem. *Id.* Holladay's withheld reinforced model would solve or materially reduce the problem, and Adams intends to receive and use that model exclusively in Florida if it is made available. Adams Decl. ¶¶ 20–28; Holladay Decl. ¶¶ 25–26, 53(c).

8

Centurion is a Florida Type 07 federal firearms licensee. Monica Decl. ¶¶ 4–7. It uses CTRLPEW's publications for lawful Florida business purposes such as design evaluation, prototyping, manufacturing, repair, research, and other business activity. *Id* ¶¶ 8–18, 21  35.. Defendants' enforcement campaign deprives Centurion of new speech it would otherwise receive and use lawfully in Florida. Ex. A at 3–4; Doc. 34-3 at 7, 14–18.

### E. This Court's Prior TRO Order.

The Court previously denied temporary restraining relief on an emergency record. The order also rested on the absence of facts sufficient to apply the Third Circuit's recent *Defense Distributed* analysis, observing that the initial papers did not adequately describe "the nature of the code itself or how customers interact with the code." (Doc. 10 at 4–5).

That record is now clearly before the court, but the prior order also adopted a frame that this motion must correct. The order referred to the challenged provisions as the "Ghost Gun Ban," characterized the case as involving "computer code used to print ghost guns," and treated California's law as an effort "to prohibit the sale or manufacture of ghost guns inside of its own borders." (Doc. 10 at 2, 4, 6). From that premise, the order characterized the statutes as "a classic example of the exercise of state police power and moral judgement." (Doc. 10 at 6).

A State's police power over conduct inside its borders does not include power to censor speech in another State. *See Bigelow v. Virginia*, 421 U.S. 809, 824–25 (1975) (Virginia could not suppress in-state publication of information about abortion

9

services legal in New York merely because Virginia disapproved of the subject); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57 (1976) (First Amendment protects the recipient's right to receive information). California's authority to regulate California manufacture does not answer whether Defendants may impose penalties and cause intermediaries to disable Florida publication infrastructure because their speech is accessible on the open internet.

The order's reliance on *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), illustrates the framing problem. *Ross* concerned a California product-entry rule governing pork products sold in California. It held that, absent purposeful discrimination, a State generally may prohibit the in-state sale of physical articles it deems prejudicial to its citizens. *Id.* at 369–70. But Plaintiffs are not asking to do anything in California or require California to admit any physical article into its territory. This case concerns speech published in Florida, received in Florida, and used lawfully in Florida. *Ross* did not hold that a State may project its law outward to suppress out-of-state speech. To the contrary, *Ross* reaffirmed that the dormant Commerce Clause continues to forbid purposeful discrimination against interstate commerce and did not involve protected expression at all. *Id.* at 369–70.

*Granholm v. Heald*, 544 U.S. 460 (2005), was likewise misfit to the record. *Granholm* addressed discriminatory treatment of in-state and out-of-state wineries. *Id.* at 466. The TRO order reasoned that California's law does not discriminate against out-of-state ghost-gun manufacturers or sellers. (Doc. 10 at 5–6). But Plaintiffs' due-process and extraterritoriality claims do not depend on discrimination

10

between California and Florida manufacturers. A due-process challenge asks whether California has constitutional authority to apply its law to the regulated person and conduct; it is not defeated merely because California regulates Californians and Floridians alike. *See Home Ins. Co. v. Dick*, 281 U.S. 397, 407–08 (1930); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818–22 (1985); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572–73 (1996).

The same framing error affected the First Amendment analysis. The order stated that Plaintiffs "simply assert[ed] that the computer code downloaded by Plaintiffs' customers is speech," and held that the record did not sufficiently describe "the nature of the code itself or how customers interact with the code." (Doc. 10 at 4–5). Plaintiffs now supply that record. But the problem runs deeper: California's statutory label "digital firearm manufacturing code" is not limited to manufacturing code at all. It sweeps in "computer-aided design files," and "instructions stored and displayed in electronic format as a digital model." Cal. Civ. Code § 3273.60. Defendants' enforcement theory reaches written guides, photographs, digital models, commentary, links, and web pages. x. A at 3–4; Doc. 34-3 at 7, 14–18. "The creation and dissemination of information are speech within the meaning of the First Amendment[,]" and thus Defendants cannot simply ring-fence information they do not like out of the First Amendment's protection through circuitous definitions. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).

Technical information, diagrams, and visual works do not lose protection because they are useful. *See Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445–

11

51 (2d Cir. 2001); *Junger v. Daley*, 209 F.3d 481, 484–85 (6th Cir. 2000); *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2402–04 (2024). Nor may a State suppress speech because it fears that some listener may later misuse the information. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253–54 (2002); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927  29 (1982).

The TRO order relied on *Defense Distributed* for the proposition that whether code is protected requires a "fact-based and context-specific analysis." (Doc. 10 at 4–5). But, unlike the litigants in *Defense Distributed*, Plaintiffs do not baldly assert that "code is speech" while refusing to identify what materials are at issue. *Def. Distributed v. Att'y Gen. of New Jersey*, 167 F.4th 65, 85 (3d Cir. 2026) (noting the "complaint fails to identify, or provide information sufficient to infer" which, if any, of the file types identified in the complaint express anything at all, instead insisting that "digital firearms information ... is an important expression of technical, scientific, artistic, and political matter" and that "[e]ach and every computer file at issue has these values in the abstract."). This motion, and the FAC, identify the file types shared by Plaintiffs, and targeted by Defendants, with specific examples. Plaintiffs' files are human-viewable digital models, images, and written documents. They are not machine commands, and thus the *Defense Distributed* "computer code" framework is simply inapposite. Lettman Decl. ¶¶ 5, 12, 14–18, 34–43.

This case has nothing to do with whether California may regulate ghost guns in California. The question is whether California officials may punish or disable Florida speech and Florida publication infrastructure because California defines

12

expressive materials as "digital firearm manufacturing code" and because Californians might access those materials on the open internet. They may not. The First Amendment forbids officials from using intermediaries to accomplish indirectly what they could not command directly. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 72 (1963); *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 189–93 (2024); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230–31, 238–42 (7th Cir. 2015). Defendants may not convert California's authority over California conduct into practical control over Florida speakers' access to the internet.

## LEGAL STANDARD

A preliminary injunction is warranted when the movant establishes: "(1) a substantial likelihood of success on the merits; (2) irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

When the government is the opposing party, the balance of equities and public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). In First Amendment cases, the remaining factors strongly follow from likelihood of success because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The government has no legitimate interest in enforcing unconstitutional restrictions. *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020).

## ARGUMENT

13

## I.   **PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**

Pre-enforcement challenges are justiciable where there is a credible threat of enforcement and/or where threatened enforcement itself causes self-censorship. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159–67 (2014); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 93 (1988); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). A credible threat exists where the plaintiff's intended conduct is arguably covered by the challenged law and the government's actions indicate an intent to enforce. *Susan B. Anthony List*, 573 U.S. at 162–65.

Defendants have already filed a civil enforcement complaint against some Plaintiffs seeking preliminary injunctive relief and penalties, and Defendants have told the California court they plan to seek a preliminary injunction "in short order" and may implement it via third parties to prevent Plaintiffs' access to the internet. (Doc. 1-2; Ex. A at 4–6, 8). Defendants' actions have caused Plaintiffs to respond by ceasing firearms-related publication activity. Holladay Decl. ¶¶ 38–41. Thus, injunctive relief is appropriate. *Am. Booksellers*, 484 U.S. at 392–93; *Susan B. Anthony List*, 573 U.S. at 164–67.

Holladay and CTRLPEW face direct enforcement and self-censorship; Bickley, Adams, and Centurion are not California defendants and suffer independent Florida right-to-receive injuries.

A)   Plaintiffs' publications are protected speech.

Defendants' enforcement theory reaches speech first and code second. Plaintiffs publish and receive written guides, PDFs, photographs, commentary, links, and three-dimensional digital models. Holladay Decl. ¶¶ 5, 8, 11; Bickley Decl. ¶¶ 5–

14

7, 10–12. Those materials are ordinary speech. *Sorrell*, 564 U.S. at 570; *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57 (1976).

The digital models are likewise protected expression. As explained above, they are human-viewable digital objects, not machine-executing commands. Lettman Decl. ¶¶ 5, 12, 14–18, 34–43. They communicate geometry, aesthetic choices, engineering judgments, political themes, cultural references, and historical references. Holladay Decl. ¶¶ 19–22, 26–30; Lettman Decl. ¶¶ 14–16, 39, 43. Plaintiff Bickley exclusively uses them as expressive works. Bickley Decl. ¶¶ 5–12.

That some works are technical or useful does not remove them from the First Amendment. *Sorrell*, 564 U.S. at 570. That none of the materials here may reasonably be dubbed "computer code" aside, computer code may still be protected speech. *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445–51 (2d Cir. 2001); *Junger v. Daley*, 209 F.3d 481, 484–85 (6th Cir. 2000). Holladay's site also curates and links to similar works by other authors. Holladay Decl. ¶¶ 7, 30. Editorial curation and presentation of others' speech is protected expression. *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2402–04 (2024). Photographs, diagrams, instructions, and digital models are not stripped of protection because they may be useful to readers.

B) <u>Defendants' enforcement theory is content-based and subject to strict scrutiny.</u>

A law is content based if it targets speech because of the topic discussed, idea expressed, message conveyed, function, or purpose. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015). Content-based restrictions are presumptively unconstitutional and subject to strict scrutiny. *Id*.

Defendants' law and enforcement theory is obviously content-based. Defendants target speech they feel may "encourage," "promote," or "facilitate" the private manufacture of firearms—conduct which is perfectly lawful in Florida. That is a content- and function-based enforcement theory: Defendants identify speech by subject matter and by its alleged communicative effect, then seek penalties and injunctions because of that content. *See* Ex. A at 3–4.; *see also* Cal. Civ. Code §§ 3273.60, 3273.61, 3273.625.

The State cannot satisfy strict scrutiny. Plaintiffs do not here dispute California's interest in regulating unlawful manufacture in California. But suppressing Florida speech and Florida access to speech is not narrowly tailored to that interest. California may not impose Florida publication restrictions because someone in California might later misuse information published to the open internet.

C) <u>Defendants' threatened third-party enforcement is prior restraint and indirect censorship.</u>

An injunction forbidding publication is a prior restraint, the "most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Prior restraints carry a heavy presumption against constitutional validity. *Id.*; *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

Defendants seek injunctive relief and have represented that they may effectuate relief through third parties including internet service providers and related intermediaries. Ex. A at 6, 8. That threat is not limited to California conduct. Such measures would disable or burden Plaintiffs' Florida publication infrastructure and prevent Florida recipients from receiving speech.

16

Government officials may not use threats or coercion against private intermediaries to suppress protected speech. *Bantam Books*, 372 U.S. at 67–72. *Vullo* reaffirmed that the First Amendment prohibits government officials from wielding power to punish or suppress speech through private intermediaries. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 189–93 (2024). *Backpage.com v. Dart* is directly analogous: the Seventh Circuit ordered preliminary relief after a sheriff pressured payment processors to choke off a website because he disapproved of some downstream unlawful use. 807 F.3d 229, 230–31, 238–42 (7th Cir. 2015).

*Media Matters for America v. Paxton* is also instructive. There, an out-of-state attorney general's enforcement campaign against a media organization supported preliminary injunctive relief where the campaign caused concrete First Amendment injury, including chilling and disruption of editorial activity. 138 F.4th 563, 590–96 (D.C. Cir. 2025). Defendants' enforcement campaign has already stopped Holladay's publication. Holladay Decl. ¶¶ 38–45.

D) <u>Defendants cannot suppress speech because it might facilitate unlawful downstream conduct.</u>

Defendants' core premise is that Plaintiffs' speech may be punished or enjoined because it could make unlawful California manufacture easier. But the government may not forbid advocacy of unlawful conduct unless the speech is directed to inciting imminent lawless action and likely to produce such action. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). Even forceful advocacy remains protected absent incitement. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927–29 (1982). The government

17

likewise may not suppress speech merely because it believes speech might encourage future unlawful acts. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253–54 (2002).

Plaintiffs' works are public expressive materials with lawful uses and lawful audiences. They are used for lawful Florida business activity. They are needed by Adams to restore a lawfully possessed Florida firearm to operable condition. Bickley Decl. ¶¶ 2–13; Monica Decl. ¶¶ 8–35; Adams Decl. ¶¶ 20–35.

This case a far sight from *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), which involved coordinated material support to designated foreign terrorist organizations. Nor is it *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233 (4th Cir. 1997), which involved a manual allegedly marketed for the purpose of assisting murder. Plaintiffs publish public expressive works with lawful uses in Florida. Defendants' broad "promote" and "facilitate" theory would suppress protected speech because of its content and possible downstream effects. California may pursue unlawful California manufacture, prohibited persons, unserialized firearms, and actual California distribution. But it may not use those interests to disable Florida speech and Florida access wholesale. That is unconstitutional.

E) <u>Bickley, Adams, and Centurion have independent right-to-receive injuries.</u>

The First Amendment protects willing recipients as well as speakers. *Va. State Bd. of Pharmacy*, 425 U.S. at 756–57; *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982).

Bickley is not asserting a generalized interest in internet access. He regularly visits CTRLPEW from Florida to receive, view, save, and study specific firearms-related works. Bickley Decl. ¶¶ 2, 5–13. He has saved works and is waiting to receive

18

updated or new works. *Id*. He values these works for their engineering problem-solving, design intricacy, expressive character, and technological significance. *Id*.

Adams wants to receive information he is deprived of—the withheld Plastikov V4 model—which he needs in order to manufacture a part to repair a lawfully possessed firearm in Florida. Adams Decl. ¶¶ 20–35. Centurion is deprived of speech it uses and would use in its business. Monica Decl. ¶¶ 13–35.

Those injuries are independent of Holladay's and CTRLPEW's injuries. Bickley, Adams, and Centurion are not parties to any California case and have no forum there to litigate their injuries. Three plaintiffs seeking Florida-recipient relief are strangers to the California enforcement case.

F) <u>Defendants' application of California law to Florida speech violates due process.</u>

The Due Process Clause limits a State's power to apply its law to persons and conduct lacking a sufficient connection to the State. *Home Ins. Co. v. Dick*, 281 U.S. 397, 407–08 (1930); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818–22 (1985). A State may not impose sanctions for lawful out-of-state conduct to change that conduct. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572–73 (1996).

California cannot impose new penalties and presumptions on Florida speakers for preexisting publications they cannot reliably claw back or geofence. Plaintiffs' relevant speech, publication decisions, receipt, and business activity occur in Florida. Holladay Decl. ¶¶ 2, 4, 9–10, 48–51; Bickley Decl. ¶¶ 1, 12–13; Adams Decl. ¶¶ 3, 25–35; Monica Decl. ¶¶ 4–5, 12–13, 32–35. Plaintiffs do not maintain California offices, do not buy California advertising, do not conduct the relevant publication activity in

19

California, and do not solicit California users to access the challenged works. Holladay Decl. ¶¶ 9–10.

Even if Plaintiffs wanted to comply, there is no reliable compliance mechanism that would allow Plaintiffs to preserve Florida access while excluding only non-exempt California users. Websites and platforms generally do not know a user's true location with certainty; and a host of services obscure or misidentify location; and many third-party platforms do not provide reliable state-specific exclusion tools. Lettman Decl. ¶¶ 61–71. Worse, a takedown request to a third-party platform often results in global disabling, thereby suppressing lawful Florida access. *Id*. ¶¶ 78–81.

Due process does not permit California to impose severe penalties on Florida speakers because anonymous third parties may access Florida speech in California.

G) <u>Defendants' conduct unduly burdens interstate speech and commerce</u>

California's approach forces nationwide restructuring, geofencing, or takedown of internet speech because reliable California-only exclusion is not feasible. *Id*. ¶¶ 61–81. Courts have long recognized that internet-speech laws risk impermissibly projecting a State's policy onto out-of-state speakers and recipients. *See Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 168–83 (S.D.N.Y. 1997); *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 102–04 (2d Cir. 2003); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 239–41 (4th Cir. 2004).

*Ross* cautions against invalidating state laws merely due to potential upstream effects. 598 U.S. at 371 74. But this case is not about incidental upstream commercial effects from a rule governing products sold in California. It is about California's direct, aggressive regulation of out-of-state speech. California may regulate

20

California conduct. It ought not be controversial to say California may not dictate the means and manner of Florida speech on the national internet.

H) Defendants' enforcement campaign burdens Adams's and Centurion's Second Amendment rights.

The Second Amendment protects the right of the people to keep and bear arms for lawful purposes, especially self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 628–35 (2008); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022). That right necessarily includes the practical ability to maintain, repair, and keep operable arms lawfully possessed for self-defense.

Adams's injury is not abstract. He lawfully made and possesses a Plastikov V4 firearm in Florida for lawful purposes, including home defense. Adams Decl. ¶¶ 3–12, 20–35. The firearm is presently inoperable because of an issue with its fire control housing. *Id*. Without this model, Adams is deprived his home defense weapon. *Id*. No available model solves the problem, and Adams intends to receive and use Holladay's reinforced design exclusively in Florida once it is made available. *Id*. ¶¶ 20–21.

Centurion is a licensed Florida firearms manufacturer that uses CTRLPEW's publications for lawful Florida firearms-related research, prototyping, repair, manufacturing, and custom work. Monica Decl. ¶¶ 4–15, 17–35. Defendants' campaign burdens Centurion's ability to receive and use protected information in its lawful Florida business and to serve lawful Florida customers. *Id*.

Where a law implicates conduct within the Second Amendment's "unqualified command", the burden shifts to the state to identify longstanding historical analogues. *Bruen*, 597 U.S. 1, 17 (2022). There is no founding-era regulations even

21

remotely similar to California's desire to censor information that might be "useful" in "encouraging" or "facilitating" the manufacture of firearms, and thus it cannot meet its burden.

## II.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION.

Irreparable harm is ongoing. Holladay has stopped publishing. Holladay Decl. ¶¶ 38–52. CTRLPEW's publication function is impaired. *Id*. Bickley is unable to receive and archive new works. Bickley Decl. ¶¶ 10–12. Adams cannot receive and use the withheld model to restore his lawfully possessed home-defense firearm. Adams Decl. ¶¶ 20–35. Centurion cannot use CTRLPEW's new publications as it otherwise would for lawful Florida business activity. Monica Decl. ¶¶ 17–35.

In First Amendment cases, loss of constitutional freedoms "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.). The Eleventh Circuit likewise recognizes that direct penalization or suppression of speech supports irreparable harm. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). Third-party suppression of websites or social-media channels would cause immediate harm that cannot be repaired after final judgment.

Here, irreparable harm is present in at least three independent ways. First, Holladay has ceased publishing firearms-related works due to Defendants' unlawful conduct. Holladay Decl. ¶¶ 38–45. Self-censorship induced by credible enforcement threats is an irreparable First Amendment injury. *Elrod*, 427 U.S. at 373; *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) (Where one "contends that when he

triggers the [challenged policy], he will speak less than he wants" his "injury is obviously irreparable."). Second, Defendants intend to effectuate California law against the Florida Plaintiffs through compelling third parties, including ISPs supporting Plaintiffs' websites and online profiles. (Ex. A at 6, 8.) If Plaintiffs lose the ability to publish through their websites and online profiles, the harm is immediate and not readily compensable by damages—especially because the injury includes loss of audience and ongoing expressive opportunities. *KH Outdoor*, 458 F.3d at 1272. Third, Defendants told the California court they anticipate moving "in short order" for a preliminary injunction and emphasized the aggressive ways they would silence Plaintiffs. (Ex. A at 4–6, 8). The requested relief is warranted where the threatened harm is imminent and cannot be undone later. *Schiavo*, 403 F.3d at 1226–27.

### III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR RELIEF.

The equities favor Plaintiffs. The requested injunction is narrow. It does not prevent California from enforcing its laws against California conduct. It does not enjoin any California court. It does not stay any California proceeding. It merely prevents Defendants from exporting California law into Florida to suppress Florida speech and lawful Florida conduct.

Defendants have no legitimate interest in unconstitutional enforcement. *Otto*, 981 F.3d at 870. The public interest favors protecting First Amendment rights, protecting the right to receive information, preventing indirect censorship through intermediaries, and preserving the constitutional boundary between California's authority over California conduct and Florida speakers' rights in Florida.

When a party faces imminent deprivation of constitutional rights, the balance of equities strongly favors preventing that injury. *Elrod*, 427 U.S. at 373; *Scott*, 612 F.3d at 1295. Defendants, by contrast, have no legitimate equitable interest in enforcing an unconstitutional regime or obtaining injunctive relief that suppresses Florida-based speech via third parties. *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) (equities and public interest favor preventing constitutional violations).

The requested injunction is narrowly framed to preserve the status quo and prevent Defendants from suppressing Florida speech through extraterritorial enforcement and third-party disruption. Further, the requested relief in no way implicates the cause pending in California state court, relating only to the extraterritorial application and enforcement of California law here in Florida.

## IV.    SECURITY SHOULD BE WAIVED OR SET NOMINALLY.

Rule 65(c) requires security "in an amount that the court considers proper." Fed. R. Civ. P. 65(c). The Court has discretion to waive security or set nominal security where the injunction prevents constitutional injury and creates no cognizable monetary risk to the enjoined government officials. *BellSouth Telecomms., Inc. v. MCIMetro Access Trans. Servs.*, LLC, 425 F.3d 964, 971 (11th Cir. 2005).

No security, or nominal security of $1.00, is appropriate. The injunction would not impose compensable monetary injury on Defendants.

24

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant this motion and enter a preliminary injunction barring Defendants, their officers, agents, employees, attorneys, and all persons acting in concert with them from applying or effectuating California Civil Code §§ 3273.61 and 3273.625 against Plaintiffs' Florida speech, Florida receipt and viewing of speech, Florida repair and maintenance of lawful arms, lawful Florida manufacture, and lawful Florida business activity, including through third-party mechanisms that would suppress Plaintiffs' Florida publication infrastructure or Florida recipients' access to protected speech.

DATED: May 26, 2026

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
Fla. Bar № 1005581
*The Law Offices of Matthew Larosiere.*
6964 Houlton Cir.
Lake Worth, FL 33467
Email: Larosieremm@gmail.com
Telephone: (561) 452-7575
*Lead Counsel for Plaintiffs*

25

## CERTIFICATE OF SERVICE

I hereby certify that on the date noted below, the foregoing document was filed with this Court's ECF system, which generated a notice of filing, and a true and correct copy of the foregoing Motion was emailed to the following counsel for Defendants:

VESNA CUK
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone:  (415) 510-3782
Fax:  (415) 703-5480
E-mail:  vesna.cuk@doj.ca.gov

KARUN A. TILAK
Deputy City Attorney
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, CA  94102-5408
Telephone:  (415) 355-3308
Fax:  (415) 437-4644
E-mail:  karun.tilak@sfcityatty.org

May 26, 2026

*/s/ Matthew Larosiere*
Matthew Larosiere, Esq.
*Lead Counsel for Plaintiffs*

26