UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |
|---|---|
| CTRLPEW LLC *et al.*,<br><br>                          Plaintiffs,<br><br>    v.<br><br>DAVID CHIU, in his official capacity as San Francisco City Attorney, and ROB BONTA, in his official capacity as Attorney General of California,<br><br>                          Defendants. | Case No.: 6:26-cv-340-PGB-RMN |

### **DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM OF LAW**

Plaintiffs[1] seek to enjoin a pending state-court enforcement action filed in California by two California officials—Defendants California Attorney General Rob Bonta ("AG Bonta") and San Francisco City Attorney David Chiu ("City Attorney Chiu")—to enforce California law. Despite adding new Plaintiffs and additional allegations, the First Amended Complaint ("FAC") is still deficient and must be dismissed. First, this lawsuit fundamentally asks the Court to adjudicate the merits of issues pending in the ongoing California

---

[1] Plaintiffs are CtrlPew LLC ("CtrlPew"), Alexander Holladay, Centurion Partners Group LLC ("Centurion"), Trey Bickley, and Jonathan Adams. CtrlPew and Holladay are defendants in an ongoing enforcement action in California state court. Centurion, Bickley, and Adams are not defendants in the California action.

1

state court proceeding and to limit the scope of relief that the state court may order in that enforcement action. The lawsuit thus exceeds the well-established limits on federal courts' jurisdiction to enjoin state court proceedings under *Younger v. Harris*, 401 U.S. 37 (1971). Second, Plaintiffs Centurion, Bickley, and Adams lack standing to sue because their alleged injuries are not fairly traceable to Defendants' conduct and flow instead from voluntary choices made by CtrlPew and Holladay. Third, Plaintiffs cannot show that this Court has personal jurisdiction over Defendants under the Florida long-arm statute or principles of constitutional due process. Dismissal is therefore appropriate under Federal Rule of Civil Procedure 12(b)(1) and (2).

## FACTUAL BACKGROUND

The State of California faces a public safety crisis stemming from the proliferation of untraceable self-manufactured firearms—commonly called ghost guns. FAC Ex. 1 (CA Compl.) ¶¶ 2, 33-36. Firearms built using 3D printers represent a growing subset of the ghost gun threat in the State. *Id.* ¶¶ 3, 37-49. These weapons are particularly dangerous because they bypass background check requirements, allowing felons and other dangerous individuals easy access to firearms, and because they are effectively untraceable by law enforcement. *Id.* ¶¶ 28-29, 32. In response, the California Legislature has enacted laws that prohibit (a) the knowing distribution to

unauthorized individuals in California of digital code that can be used to 3D print firearms ("digital firearm manufacturing code"), Cal. Civ. Code §§ 3273.61; and (b) the knowing, willful, or reckless facilitation of the unlawful manufacture of firearms in California, including by 3D printer, *id.* § 3273.625(a).

Plaintiff Holladay creates digital code files—including STEP and STL files—and related instructional guides for 3D printing firearms. FAC ¶ 55. These code files, when combined with 3D printing software and equipment, enable users to print firearms and firearm parts. FAC ¶¶ 67-68, 79, 84, 87, 91. Holladay and CtrlPew distribute these code files through a website and related social media profiles without any restrictions. FAC ¶¶ 131, 217-18. Their code is available in California. FAC ¶¶ 217-18; CA Compl. ¶¶ 79-84.

On February 6, 2026, AG Bonta and City Attorney Chiu filed a civil enforcement action in San Francisco Superior Court (the "California case") against CtrlPew, Holladay, and other associated individuals and entities. FAC ¶ 97; *see* FAC Ex. 1. The California case alleges that CtrlPew and Holladay distribute digital firearm manufacturing code into California in violation of California Civil Code §§ 3273.61 and 3273.625, and California's unfair business practices statute, California Business and Professions Code

3

§ 17200 *et seq.* CA Compl. ¶¶ 1-7, 97-105.[2] Through the California case, AG Bonta and City Attorney Chiu seek geographically limited relief to prevent defendants from (1) "distributing or causing to be distributed digital firearm manufacturing code *into California*" or (2) "promoting[] or facilitating the unlawful manufacture of firearms *in California*" by distributing code "into California." FAC Ex. 3 (CA PI Mot.) at p. 19 (emphasis added); *see also* CA Compl. ¶¶ 7, 105(a), (b); FAC Ex. 5 at p. 2:10-13.[3]

CtrlPew and Holladay allege that, as a result of the California case, they have ceased making new code files and instructions available on their websites and profiles. FAC ¶ 146. Plaintiffs Centurion, Bickley, and Adams are not defendants in the California case. *Id.* ¶ 143. Each of them is a Florida resident who intends to use CtrlPew and Holladay's files in Florida. *Id.* ¶¶ 153-59, 164-65, 172, 175. They nevertheless claim that they have been harmed because CtrlPew and Holladay have stopped releasing new code files and related instructions on their website and profiles. *Id.* ¶¶ 160, 170, 183.

---

[2] AG Bonta and City Attorney Chiu are authorized to enforce these statutes in the name of the sovereign People of the State of California. *See* Cal. Civ. Code §§ 3273.61(c), 3273.625(c)(2); Cal. Bus. & Prof. Code §§ 17203, 17204, 17206.

[3] CtrlPew and Holladay have moved to quash service of process in the California case for lack of personal jurisdiction. On June 5, the California court tentatively authorized jurisdictional discovery prior to resolving the motion to quash. The preliminary injunction motion will not be resolved until after the California court rules on the motion to quash.

CtrlPew and Holladay filed the instant action on February 11, 2026, and filed the operative FAC on May 10.[4] Plaintiffs' FAC alleges that the relief in the California case will unlawfully apply extraterritorially and will infringe on Plaintiffs' constitutional rights under the First and Second Amendments, the Due Process Clause, and the Dormant Commerce Clause. FAC ¶¶ 195-274. Plaintiffs seek injunctive and declaratory relief adjudicating the constitutionality of the California statutes at issue in the California case and limiting the scope of relief in that case. *See* FAC pp. 45-47 (Prayer for Relief).

## LEGAL STANDARD

In adjudicating a facial attack to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a district court must determine if the well-pleaded allegations in the complaint allege a sufficient basis for subject matter jurisdiction. In doing so, the court may consider material attached to the complaint, incorporated by reference, or subject to judicial notice. *See Mulhall v. United Here Local 355*, 618 F.3d 1279, 1289 n.10 (11th Cir. 2010). Motions to dismiss raising *Younger* abstention may be brought under Rule 12(b)(1). *See, e.g., Moore v. Jud. Inquiry Comm'n of the State of Alabama*, 200 F. Supp. 3d 1328, 1331 (M.D. Ala. 2016); *see also Abusaid v. Hillsborough Cnty. Circuit Court*, No. 8:20-cv-121-T-33CPT, 2020 WL

---

[4] Plaintiffs moved for a temporary restraining order, which this court denied. *See* ECF No. 10. Defendants filed a motion to dismiss the initial complaint, which was denied as moot after Plaintiffs filed the FAC. ECF No. 35.

6060928 (M.D Fla. Oct. 14, 2020) (granting 12(b)(1) motion to dismiss on *Younger* grounds).

In order to survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a plaintiff must allege "sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). But if defendants submit evidence rebutting the allegations, the burden shifts back to the plaintiff to provide evidence supporting jurisdiction. *Id.*

## SUMMARY OF ARGUMENT

Plaintiffs' complaint is fatally flawed and must be dismissed. First, under Rule 12(b)(1), this Court lacks subject matter jurisdiction and must abstain under *Younger v. Harris*, 401 U.S. 37 (1971), because Plaintiffs' claims seek to interfere with the ongoing California civil enforcement action. Plaintiffs Centurion, Bickley, and Adams also lack standing because their injuries are not fairly traceable to Defendants' conduct. Second, under Rule 12(b)(2), Plaintiffs have failed to establish that this Court has personal jurisdiction over AG Bonta and City Attorney Chiu under either the Florida long-arm statute or the Due Process Clause because Defendants are merely seeking to enforce California law in a California court against Plaintiffs' efforts and activities in California.

6

## ARGUMENT

### I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS

#### A.   Plaintiffs' Action Is Barred by *Younger* Abstention

Under the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), a federal court must "abstain where a plaintiff's federal claims could be adjudicated in a pending state judicial proceeding." *Leonard v. Ala. State Bd. of Pharmacy*, 61 F.4th 902, 907 (11th Cir. 2023) (quoting *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988)). *Younger* abstention "reflects the norms of comity and respect inherent in 'Our Federalism.'" *Id.* (quoting *Younger*, 401 U.S. at 44). To determine whether *Younger* abstention applies to a specific case, a federal court looks to the three factors from *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). "First, is the state proceeding 'ongoing' at the same time as the federal one," *e.g., Leonard*, 61 F.4th at 908 (citation omitted), such that the federal case would "interfere with the state proceeding"? *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003). "Second, does the state proceeding implicate an 'important state interest'?" *Leonard*, 61 F.4th at 908. "And third, does the state proceeding provide an 'adequate opportunity' to raise the federal claim?" *Id.*

All three Middlesex factors are met here. First, a state proceeding was ongoing when Plaintiffs filed this case. Defendants filed their state court

enforcement action in California Superior Court on February 6, and Plaintiffs filed this action five days later on February 11. And Defendants' civil enforcement action is the quintessential kind of action to which *Younger* applies. *See, e.g., Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79-80 (2013) (*Younger* abstention applies to civil enforcement actions akin to criminal prosecutions).

In terms of interference under the first *Middlesex* factor, a court "look[s] to the relief requested and the effect it would have on the state proceedings." *31 Foster Children*, 329 F.3d at 1276. "The relief sought need not directly interfere with an ongoing proceeding or terminate an ongoing proceeding in order for *Younger* abstention to be required." *Id*. Instead, the interference requirement is met where a federal plaintiff seeks to place "decisions that are . . . in the hands of the state courts under the direction of the federal district court," *id*. at 1278, or to affect the state court's "ability to conduct proceedings," *id*. at 1277 (quoting *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002)).

In this case, "[c]learly, there is an ongoing state judicial proceeding . . . that effectively would be enjoined if the federal court declared the" challenged California law "to be unconstitutional: the state court enforcement action." *Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1261-62 (11th Cir. 1997). Plaintiffs here ask this court to prevent the "application of

8

California law to Plaintiffs' Florida speech [and] Florida publication decisions." FAC ¶ 4; *see also, e.g., id*. ¶¶ 7, 186, 192, 193, 194. But Plaintiffs themselves allege that these activities are precisely the same conduct at issue in the California enforcement action. *E.g.*, FAC ¶ 24 (enforcement action targets "materials that were created and placed on the open internet . . . in Florida"); *id*. ¶ 27 (enforcement action "accuse[s] [plaintiffs'] Florida publications of illegality"); *id*. ¶ 37 (enforcement action "seeks to impose civil penalties and injunctive relief on Plaintiffs for purely Floridian speech"); *id*. ¶ 106 (enforcement action "seek[s] to suppress" Plaintiffs' "Florida activities").

A ruling from this Court that California cannot apply its laws to the conduct at issue in that enforcement action would plainly interfere with the ongoing enforcement action—and that is precisely what Plaintiffs seek here. And in order to award Plaintiffs the relief they seek, this Court "would have to find that [California] state courts are incapable of enforcing the federal constitution in this context"—that is, that the California state court will not limit Defendants' enforcement of the challenged statutes to within the bounds of the Constitution. *Old Republic Union Ins. Co.*, 124 F.3d at 1263. "Merely stating that proposition is sufficient to illustrate why the *Younger* doctrine stands in the way of the relief sought." *Id.*

Second, the civil enforcement proceeding implicates an important state interest. As the California complaint explains, ghost guns pose a growing

9

danger to public safety. *See* CA Compl. ¶¶ 2-3, 29, 33-36, 43, 45-49. Code that allows any individual in California to 3D print a working firearm (regardless of whether they are legally allowed to possess firearms)—such as the code available on Plaintiffs Holladay's and CtrlPew's websites—creates a tangible and grave risk to public safety in California. *Id.* The laws that Plaintiffs challenge seek to mitigate that risk by prohibiting the distribution within California of the digital firearm manufacturing code that allows any person, anywhere to 3D print their own functional ghost gun. *See id.* ¶ 4.

Third, the ongoing California proceeding provides an adequate forum to raise the constitutional issues that Plaintiffs raise here. "Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *31 Foster Children*, 329 F.3d at 1279 (quoting *Middlesex*, 457 U.S. at 431) (emphasis omitted). Thus, "[a] federal court 'should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *Id.* (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)). Plaintiffs Holladay and CtrlPew will have every opportunity to raise every argument they seek to raise here in the pending civil enforcement action, including any challenge to the constitutionality and territorial reach of California's laws. There is no dispute that the California court is capable of properly limiting Defendants' enforcement of the challenged statutes to within the bounds of

10

the Constitution. *See Old Republic Union Ins. Co.*, 124 F.3d at 1263. In fact, Plaintiffs Holliday and CtrlPew are already contesting the alleged extraterritorial reach of Defendants' enforcement action by disputing personal jurisdiction before the California state court. Thus, the third *Middlesex* factor is met.

Because all three *Middlesex* factors are met, *Younger* abstention applies. That outcome is not altered by the fact that some of the plaintiffs here— Adams, Bickley, and Centurion (the "non-party plaintiffs")—are not parties to the California enforcement action. The Supreme Court has held that *Younger* abstention applies when the interests of plaintiffs who are not parties to the relevant state action are "intertwined[]" with plaintiffs who are parties to the state court action. *Hicks v. Miranda*, 422 U.S. 332, 348 (1975); *see also, e.g.*, *The News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1511 (11th Cir. 1991) (applying *Younger* to newspaper's challenge to pre-trial order in state court case to which it was not a party); *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 881 (8th Cir. 2002) ("It is not a prerequisite to *Younger* abstention that the federal plaintiffs also be defendants in the action pending in state court."). Appeals courts have thus "consistently recognized that . . . where the plaintiffs' interests are so inextricably intertwined that 'direct interference with the state court proceeding is inevitable,' *Younger* may extend to bar the claims of plaintiffs who are not party to the pending state

11

proceeding." *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 82 (2d Cir. 2003).

That is precisely the case here. The decision in *Spargo* is illustrative. In *Spargo*, a group of plaintiffs challenged state rules regarding conduct during judicial elections as violating the First Amendment. 351 F.3d at 70. One of the plaintiffs was a judicial candidate subject to an enforcement action for violating those rules; the other two plaintiffs contended they were harmed by the rules' application to the judicial candidate. *Id.* The Second Circuit held that *Younger* abstention applied to the claims of the two non-candidate plaintiffs. *Id.* at 83-84. The court explained that the two non-candidate plaintiffs were "not directly regulated by the challenged rules" and their claimed harm flowed from the application of the rules to the candidate-plaintiff. *Id.* at 83. Thus, it "would be impossible for the District Court to analyze" the non-candidates' claims "independently" from the candidate's constitutional claims—"a matter which, under *Younger*, must be resolved in the pending state disciplinary proceeding." *Id.* at 84. The non-candidates' claims were therefore barred by *Younger* abstention as well. *Id.*

The facts in *Spargo* are on all-fours with the facts here. Like the non-candidates in *Spargo*, the non-party plaintiffs here allege harms that are derived from the enforcement action brought against Holladay and CtrlPew (the "party plaintiffs"). E.g., FAC ¶¶ 160-161, 170-171, 183-184. And as in

12

*Spargo*, this Court could not meaningfully adjudicate the non-party plaintiffs' claims separate and apart from adjudicating the party plaintiffs' claims. Because the non-party plaintiffs' alleged harms turn on the alleged unlawfulness of the California enforcement action and Holladay and CtrlPew's right to relief from that case, this Court would necessarily need to determine the scope of Holladay and CtrlPew's claims to resolve the non-party plaintiffs' claims. But Holladay and CtrlPew's claims "under *Younger*, must be resolved in the pending state [enforcement] proceeding." *Spargo*, 351 F.3d at 84. Thus, the non-party plaintiffs' claims are also barred by *Younger*, and this action should be dismissed in full.

### B.   Plaintiffs Centurion, Bickley, and Adams Lack Standing

For federal jurisdiction to exist, a plaintiff must have standing as required by Article III. The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The burden is on the plaintiff to demonstrate standing under the applicable standards at the stage of litigation at which standing is challenged. *Id.* The non-party plaintiffs have failed to establish standing.

To start, none of the non-party plaintiffs alleges that they wish to engage in conduct within the scope of the challenged California laws. All three of these plaintiffs are Florida residents who do not allege they have been or intend to be physically present within California. See FAC ¶¶ 49-51. And all three allege that they wish to receive and use the party plaintiffs' firearms manufacturing code in Florida. *See id.* ¶¶ 155, 156, 159, 165, 169, 170, 173, 181, 182. None of the non-party plaintiffs alleges that they wish to distribute any firearms code into California, to manufacture any firearms in California, or to possess any firearms in California. Thus, they are plainly not subject to the California laws at issue here, which only apply to the distribution of code into California and the unlawful manufacture of firearms in that State; the California laws do not prohibit the non-party plaintiffs from receiving, possessing, or using any digital firearms code in Florida.

Where, as here, "a plaintiff challenges the government's . . . regulation (or lack of regulation) of *someone else*,' 'standing is not precluded, but it is ordinarily substantially more difficult to establish.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (citation omitted; emphasis in original). The non-party plaintiffs have failed to carry this difficult burden. They claim that they have been unable to access Holladay and CtrlPew's code because of Defendants' California enforcement action. But this alleged injury is not fairly traceable to the challenged laws or Defendants' enforcement of

14

those laws. It is instead the result of voluntary choices made by CtrlPew and Holladay.

While Holladay and CtrlPew have chosen to entirely stop putting new code files online, they allege that they have done so because they cannot "reliably determine whether any anonymous internet user is in California"— i.e., because they fear that they will be subject to penalties in California because of an alleged inability to discern where an unknown online user may be using available technology. FAC ¶¶ 128-129. But here, the non-party plaintiffs are *known* to be in Florida. Holladay and CtrlPew tellingly do *not* allege that they have been chilled from distributing code to users known to be in Florida. Nor could they. The California laws and the state court enforcement action do not prevent CtrlPew and Holliday from distributing code to individuals in Florida, including the non-party plaintiffs. Neither CtrlPew nor Holliday faces any threat of enforcement from their distribution of manufacturing code to individuals in Florida. Nor does Plaintiffs' complaint include any allegations about the inadequacy of alternative means of providing code to the non-party plaintiffs known to be in Florida—such as by emailing the desired code directly to the non-party plaintiffs in Florida or by mailing an external storage drive containing the code to an address in Florida. Defendants' action neither prohibits nor inhibits party plaintiffs from providing non-party plaintiffs with code. Thus, any injury suffered by

15

the non-party plaintiffs is not fairly traceable to the challenged laws and the non-party plaintiffs lack standing.

## II.   THE COURT LACKS PERSONAL JURISDICTION

Plaintiffs' complaint must also be dismissed under Rule 12(b)(2) for lack of personal jurisdiction over Defendants. Plaintiffs bear the burden of establishing that personal jurisdiction exists under *both* Florida's long-arm statute and the Due Process Clause. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996). Because Florida's long-arm statute "is not coextensive with the limits of due process," these two requirements are distinct. *Saint-Gobain Tech. Fabrics Am., Inc. v. Checkmate Geosynthetics, Inc.*, No. 6:09-cv-557-Orl-35KRS, 2010 WL 11507686, \*2 (M.D. Fla. Feb. 5, 2010); *see also Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 393-94 (11th Cir. 1988).[5] Neither requirement is satisfied here.

### A.   Plaintiffs Cannot Satisfy the Florida Long-Arm Statute

To establish specific personal jurisdiction over a non-resident defendant under the Florida long-arm statute, a plaintiff must allege that the defendant committed one of nine statutorily enumerated acts and that plaintiff's cause of action arises from those acts. *See* Fla. Stat. Ann. § 48.193(1)(a)(1)-(9).

---

[5] On this basis alone, Plaintiffs' citations to *Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020) and *Media Matters for America v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025) are inapposite. *See* FAC ¶ 37. Unlike the Florida long-arm statute, the long arm statutes at issue in those cases (Texas and D.C. respectively) were both coextensive with the Due Process Clause. *See Def. Distributed*, 971 F.3d at 490; *Media Matters*, 138 F.4th at 576.

Plaintiffs' FAC only invokes subsection (a)(2) of Florida's long-arm statute, FAC ¶ 38, which confers jurisdiction for tortious acts committed within the state. But Plaintiffs' claims do not satisfy the "tortious act" prong.

As an initial matter, Plaintiffs have failed to allege the commission of a tort. While they cast Defendants' actions as a "coercive enforcement campaign," in sum and substance, Plaintiffs allege that Defendants filed a lawsuit in California seeking injunctive relief against Florida residents pursuant to duly-enacted California laws, served Plaintiffs with the complaint, and held a press conference in California about the lawsuit. *See, e.g.*, FAC ¶¶ 38-39. None of these acts is tortious.

Plaintiffs also cannot show that Defendants committed a tortious act *in Florida.* To meet this requirement, a plaintiff must demonstrate that the non-resident defendant committed "a substantial aspect of the alleged tort in Florida" by establishing that the defendant's activities in Florida were "essential to the success of the tort." *Williams Elec. Co.*, 854 F.2d at 394 (quotation marks and citation omitted). Here, Plaintiffs' allegations about the "coercive enforcement campaign" are focused on Defendants' actions in *California*—namely, the California lawsuit and the relief sought in that case. *See* FAC ¶¶ 24-27; 39-43; 97-119; *see also* FAC Ex. 8 (Holladay Decl.) ¶ 14.

But Florida courts of appeal[6] and federal courts have consistently held that non-resident defendants are not subject to personal jurisdiction under the tortious act prong for filing out-of-state lawsuits—even if the plaintiff suffers harm in Florida. *See, e.g.*, *Korman v. Kent*, 821 So.2d 408, 410-11 (Fla. Dist. Ct. App. 2002); *Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So.2d 1013, 1017 (Fla. Dist. Ct. App. 2003); *Homeway Furniture Co. of Mount Airy, Inc. v. Horne*, 822 So.2d 533, 538-39 (Fla. Dist. Ct. App. 2002); *Long v. Nammias*, 3:13-cv-175-J-39MCR, 2015 WL 13792147, *4-5 (M.D. Fla. Feb. 13, 2015); *Rubber Res., Ltd., LLP v. Press*, No. 8:08-cv-1730-T-27-TBM, 2009 WL 211556, *4-5 (M.D. Fla. Jan. 27, 2009).[7]

As these courts have explained, in cases like this one that involve allegedly improper lawsuits, the tortious act "is committed in the state where the underlying action . . . [is] filed," *Rubber Res., Ltd.*, 2009 WL 211556, at *4, and the mere fact that the plaintiff suffers damage in Florida "does not extend the tort to being committed in Florida," *Korman*, 821 So.2d at 410. Here, the allegedly tortious conduct that Plaintiffs complain of is the filing of the enforcement action in California and the relief sought in that case. FAC

---

[6] "Absent some indication that the Florida Supreme Court would hold otherwise," federal courts "are bound to adhere to decisions of [Florida's] intermediate courts." *Sculptchair, Inc.*, 94 F.3d at 627 (quotation marks and citation omitted).

[7] *See also Hirsch v. Weitz*, 16 So.3d 148, 149 (Fla. Dist. Ct. App. 2009); *Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 736 (11th Cir. 2018) (both declining to find personal jurisdiction over out-of-state defendant under tortious act prong for alleged legal malpractice occurring outside Florida, despite harms to clients in Florida).

¶¶ 39-43, 97-119, FAC Ex. 8 ¶ 14. Plaintiffs' alleged harm in Florida, FAC ¶ 45, is thus insufficient for purposes of personal jurisdiction. *See Korman*, 821 So.2d at 411 (declining to interpret the long-arm statute to broadly encompass "tortious acts which were complete outside Florida but ultimately have consequences here").

Plaintiffs' passing reference to the fact that Defendants served process in Florida, FAC ¶ 39, is also inadequate to establish personal jurisdiction because it does not constitute a "substantial" or "essential" aspect of the allegedly tortious conduct. *Williams Elec. Co.*, 854 F.2d at 394.[8] In analogous circumstances, courts have found that conduct ancillary to litigation is insufficient to confer jurisdiction under the tortious act prong where, as here, the plaintiffs' causes of action ultimately stem from the prosecution of the underlying action. *See Prunty*, 753 F. App'x at 733-34 (no jurisdiction over defendants for mishandling of out-of-state case even though defendants sent letters about litigation to plaintiff in Florida); *Rubber Res., Ltd.*, 2009 WL 21156, at *4 (taking of deposition in Florida did not confer jurisdiction over claims related to out-of-state lawsuit); *Carlyle*, 842 So.2d at 1016-17 (communications about the litigation were insufficient to confer jurisdiction).

---

[8] Defendants may point to *Media Matters v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025), where the D.C. Circuit noted that the defendant engaged a process server in D.C. 138 F.4th at 578. But that case construed the "doing business" prong of D.C.'s long-arm statute and has no bearing on the interpretation of Florida's long-arm statute. *Id.* at 576-78.

Similarly, Plaintiffs' scattershot reference to Defendants' press conference does not support personal jurisdiction. FAC ¶ 37. The press conference was held in California and announced the California lawsuit, and thus has no link to Florida. Indeed, it is clear that Plaintiffs claims do not "arise from" any statements made at the press conference—which is necessary to meet the Florida long-arm statute's "connexity" requirement—but instead flow from the underlying California enforcement action and the relief sought through that case. FAC ¶¶ 24-27; 39-43; 97-119; FAC Ex. 8 at ¶ 14; *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002) (out-of-state communications support personal jurisdiction where causes of action "arise from the communications").[9]

## B.  Exercising Personal Jurisdiction over Defendants Is Inconsistent with Due Process

Even if Plaintiffs could show that Florida's long-arm statute is satisfied, the exercise of personal jurisdiction over Defendants would violate constitutional due process requirements. Under the Due Process Clause, Plaintiffs must show that Defendants have "minimum contacts" with Florida

---

[9] This case is distinguishable from cases where courts have found that out-of-state communications into Florida can support personal jurisdiction. In those cases, the plaintiffs' cause of action was not complete until the publication of the out-of-state communication in Florida. *See, e.g.*, *Internet Sols. Corp. v. Marshall*, 39 So.3d 1201, 1214-15 (Fla. 2010) (tort of defamation complete upon publication of statement to someone in Florida); *Louis Vouitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) (trademark infringement claim depended on availability of infringing website in Florida). Here, Plaintiffs' causes of action are premised on the prosecution of the California case.

20

and that the exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice." *Moore v. Cecil*, 109 F.4th 1352, 1362 (11th Cir. 2024) (citation omitted). Plaintiffs fail to establish either element.

### 1.   Defendants Lack Minimum Contacts with Florida

The "effects" test articulated in *Calder v. Jones*, 465 U.S. 783 (1984) focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *id.* at 290 ("mere injury to a forum resident is not a sufficient connection with the forum"). Plaintiffs, however, identify *no* connection between Defendants and Florida beyond the alleged injury to Plaintiffs' Florida-based speech. *See, e.g.*, FAC ¶¶ 39, 45 (alleging purposeful direction by reference only to conduct directed at Plaintiffs in Florida).

Rather, as discussed above, Plaintiffs' claims arise from Defendants' efforts to enforce California law in California state court to prevent the distribution of Plaintiffs' code into California. CA Compl. ¶¶ 7, 105; CA PI Mot. at p.19; FAC Ex. 4 at p. 5: 22-24, p. 8:8-9; *id.* Ex. 5 at p. 2:10-13. As this Court noted based on substantially similar allegations in the original complaint, "this case presents an attempt by California to prohibit the sale or manufacture of ghost guns *inside of its own borders* by *anyone*, regardless of in-state or out-of-state status." ECF No. 10 at 6 (first emphasis added). In similar cases, courts have held that a state regulator may enforce its laws

21

against out-of-state residents who engage in activity in the regulator's state without being subject to personal jurisdiction in another forum. *See, e.g.*, *Bulkley & Assocs., LLC v. Cal. Dep't. of Indus. Rels.*, 1 F.4th 346, 354-55 (5th Cir. 2021); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 485-87 (5th Cir. 2008); *United States v. Ferrara*, 54 F.3d 825, 830 (D.C. Cir. 1995); *Berry Coll., Inc. v. Rhoda*, No.4:13-CV-0115-HLM, 2013 WL 12109374, at \*11 (N.D. Ga. June 12, 2013). To hold otherwise would improperly expose a regulator seeking to "uniformly apply its laws" to entities transacting business in its jurisdiction "to suit in any state where the validity of her state's laws were in question." *Stroman Realty, Inc.*, 513 F.3d at 486-87.

Courts have also repeatedly found that the filing of out-of-state litigation targeting an in-state plaintiff does not suffice to establish personal jurisdiction. *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 696 (7th Cir. 2018); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144-45 (9th Cir. 2017); *City of San Francisco v. Exxon Mobil Corp.*, No. 02-18-00106-CV, 2020 WL 3969558,\*17 (Tex. App. June 18, 2020); *SpaceCo Bus. Sols., Inc. v. Mass Engineered Design, Inc.*, 942 F. Supp. 2d 1148, 1154 (D. Colo. 2013).

As in these cases, AG Bonta and City Attorney Chiu do not subject themselves to personal jurisdiction in a Florida court by initiating litigation in California to uniformly enforce California laws with respect to Plaintiffs' distribution of digital code into California. The fact that Defendants' lawsuit

22

is based on Plaintiffs' Florida conduct or would require Plaintiffs to change their Florida-based operations does not change that outcome. *See Bulkley & Assocs.*, 1 F.4th at 354 (no jurisdiction even though California regulator's demand required company to "chang[e] its policies in Texas"); *Stroman Realty*, 513 F.3d at 481, 485-86 (no jurisdiction over Arizona regulator's demand that Texas company cease online business with Arizona residents, even though claim was based on "conduct which occurred entirely in Texas") .

Against this overwhelming weight of authority, Plaintiffs' complaint cites two cases—*Defense Distributed v. Grewal* and *Media Matters of America v. Paxton*—both of which are distinguishable. In *Defense Distributed*, unlike in this case, the New Jersey Attorney General "d[id] not cabin his request by commanding the plaintiffs to stop publishing materials to New Jersey residents" and instead demanded that "plaintiffs cease publication of their materials generally." 971 F.3d at 492; *see also id.* at 493. Given the facts of the case—including that the New Jersey Attorney General had initiated a lawsuit in Washington to "enjoin the national distribution of Defense Distributed's files"—the court concluded that personal jurisdiction was warranted. *Id.*; *see also Bulkley*, 1 F.4th at 354-55 (distinguishing *Defense Distributed* from *Stroman Realty* on these grounds). Here, in stark contrast, Defendants have expressly sought relief only to prohibit the distribution of

23

Plaintiffs' code files into California. *See* CA Compl. ¶¶ 7, 105; CA PI Mot. at p.19; FAC Ex. 4 at p. 5: 22-24, p. 8:8-9; *id.* Ex. 5 at p. 2:10-13.

Similarly, *Media Matters* involved a "sweeping civil investigative demand" issued by the Texas Attorney General to a DC-based business that sought information with little ostensible nexus to Texas, including all "communications with employees and representatives" of eleven different entities, "documents concerning . . . internal operations, structure expenditures, and reporting process," and "sources of funding for reporting on X." 138 F.4th at 569. The court concluded that the investigation was a retaliatory attempt to target the plaintiff's DC operations (a fact that the Texas Attorney General did not contest), *id.* at 578—unlike this case, where Defendants seek only to enforce California laws with respect to Plaintiffs' distribution of code into California. Thus, unlike in the cases Plaintiffs cite, Defendants here do not have minimum contacts with Florida.

### 2. Exercising Jurisdiction over Defendants in Florida Would Offend Fair Play and Substantial Justice

Finally, even if Plaintiffs could show that Defendants have established sufficient contacts with Florida, hauling Defendants into court in Florida would offend notions of fair play and substantial justice. Courts consider four factors: (1) "the burden on the defendant"; (2) "the forum State's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient

24

and effective relief"; and (4) "the judicial system's interest in obtaining the most efficient resolution of controversies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (citations omitted). Here, these factors weigh against personal jurisdiction.

First, it would undoubtedly be burdensome to require Defendants—who have no presence in Florida—to travel over 3,000 miles to litigate the validity of California laws. *See DiMaggio, LLC v. City & Cnty. of San Francisco*, 187 F. Supp. 2d 1359, 1371 (S.D. Fla. 2000. Second, even if Florida has an interest in protecting its residents, it has "little interest in adjudicating disputes over other states' statutes"—particularly given the weighty federalism concerns at play and California's strong interest in having its statutes interpreted by its own courts. *Stroman Realty, Inc.*, 513 F.3d at 487-88 (cleaned up. Finally, Plaintiffs remain able to raise their constitutional claims in the California case, and judicial efficiency and uniformity will be promoted by allowing the California court to adjudicate the constitutionality of California's laws in the earlier-filed action. *Id.* at 488. Therefore, even if Defendants had minimum contacts, the exercise of personal jurisdiction here would not comport with due process.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' complaint.

25

## Local Rule 3.01(g) Certification

Undersigned counsel conferred by opposing counsel by videoconference platform on May 15, 2026. The Parties were unable to agree on resolution of the issues raised in the motion, and undersigned counsel expects that this motion will be opposed.

Dated: June 5, 2026

DAVID CHIU, City Attorney
YVONNE R. MERÉ, Chief Deputy City Attorney
SARA J. EISENBERG, Chief of Complex & Affirmative Litigation
RONALD H. LEE, Assistant Chief of Complex & Affirmative Litigation
KARUN TILAK, Deputy City Attorney

By:  _/s/Karun A. Tilak_
KARUN A. TILAK*
San Francisco City Attorney's Office
1390 Market St., 7th Floor
San Francisco, CA 94102
Telephone:  (415) 355-3308
Email:        karun.tilak@sfcityatty.org

*Attorneys for Defendant David Chiu in his official capacity as San Francisco City Attorney*

*admitted pro hac vice

26

ROB BONTA, Attorney General of
California
ANYA M. BINSACCA
CHARLES J. SAROSY, Supervising
Deputy Attorneys General
KRISTIN A. LISKA, Deputy Attorney
General

By:  */s/ Kristin A. Liska*
KRISTIN A. LISKA*
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Telephone:  (415) 510-3916
E: mail:      Kristin.Liska@doj.ca.gov

*Attorneys for Defendant Rob Bonta in his
official capacity as Attorney General of
California*

*admitted pro hac vice

27