UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CTRLPEW LLC *et al.*,<br><br>       Plaintiffs,<br><br>  v.<br><br>DAVID CHIU, in his official capacity as San Francisco City Attorney, and ROB BONTA, in his official capacity as Attorney General of California,<br><br>       Defendants. | Case No.: 6:26-cv-340-PGB-RMN |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

As Defendants have explained in their motion to dismiss, ECF No. 47, Plaintiffs'[1] first amended complaint ("FAC") suffers from threshold jurisdictional defects: the court lacks subject matter jurisdiction under the *Younger* abstention doctrine; Plaintiffs Adams, Bickley, and Centurion lack standing; and the Court lacks personal jurisdiction over Defendants. Thus, this Court should dismiss the FAC and deny Plaintiffs' preliminary injunction motion as moot.

If, instead, this Court reaches the merits of Plaintiffs' preliminary

---

[1] Plaintiffs are CtrlPew LLC ("CtrlPew"), Alexander Holladay, Centurion Partners Group LLC ("Centurion"), Trey Bickley, and Jonathan Adams.

1

injunction motion, it should deny the motion, which only further underscores these defects. Plaintiffs are unlikely to succeed on the merits for the same reasons this case should be dismissed: this Court lacks subject matter jurisdiction under *Younger* and lacks personal jurisdiction over Defendants.

Because Plaintiffs' claims falter at the jurisdictional threshold, they cannot establish a likelihood of success on the merits.[2] Nor can they establish the remaining elements required for a preliminary injunction. Plaintiffs cannot show irreparable harm where they are currently disputing personal jurisdiction in California and will have the opportunity to raise each of the arguments they make here before the California court. And the equities and public interest weigh heavily against an injunction that would interfere with an ongoing state court enforcement proceeding and undermine Defendants' ability to enforce California law in California. Therefore, Plaintiffs are not entitled to the extraordinary remedy of a preliminary injunction.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Holladay creates digital code files and related instructional guides for 3D printing firearms. ECF No. 42-5 (Holladay Decl.) ¶¶ 5, 12. Holladay and CtrlPew distribute these code files online. *Id.* ¶¶ 6, 7. On

---

[2] In light of the jurisdictional defects in Plaintiffs' claims, the Court need not reach the merits of their constitutional claims for purposes of this motion. Defendants expressly reserve the right to challenge the merits of Plaintiffs' claims at a later stage of the litigation should this case proceed.

February 6, 2026, Defendants AG Bonta and City Attorney Chiu filed a civil enforcement action in California state court against CtrlPew and Holladay ("the party plaintiffs") and other associated individuals and identities. Tilak Decl. Ex. 1. The complaint alleges that CtrlPew and Holladay distribute digital code into California in violation of California law. CtrlPew and Holladay assert that they have stopped uploading code files because of the California case and the relief sought therein. Holladay Decl. ¶¶ 32-35, 38-40.

Plaintiffs Adams, Bickley, and Centurion are Florida residents who intend to use CtrlPew and Holladay's code files in Florida. ECF No. 42-3 (Adams Decl.) ¶¶ 3-4, 26-27; ECF No. 42-4 (Bickley Decl.) ¶¶ 12-13; ECF No. 42-7 (Monica Decl.) ¶¶ 5, 12-13. Adams, Bickley, and Centurion (the "non-party plaintiffs") are not defendants in the California case. They assert that they are harmed because they cannot receive CtrlPew and Holladay's code files as a result of those Plaintiffs' decision to cease uploading content. Adams Decl. ¶¶ 30-31; Bickley Decl. ¶¶ 12-13; Monica Decl. ¶ 27.

In the California case, CtrlPew and Holladay have filed a motion to quash for lack of personal jurisdiction. Tilak Decl. Ex. 2. AG Bonta and City Attorney Chiu have also moved for a preliminary injunction in the California case. *Id.* Exs. 3, 4. Their motion seeks geographically limited relief to prevent defendants from (1) "distributing or causing to be distributed digital firearm manufacturing code *into California*" or (2) "promoting[] or facilitating the

3

unlawful manufacture of firearms *in California*" by distributing code "into California." *Id.* Ex. 3 at p. 19 (emphasis added); Ex. 4 at p. 1 (emphasis added). On June 5, 2026, the California court authorized jurisdictional discovery on the motions to quash. Tilak Decl. ¶ 9. The court has indicated that a briefing schedule and hearing date on the preliminary injunction will be set after the personal jurisdiction issues are resolved. *Id.* ¶ 10.

## LEGAL STANDARD

"The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (citation omitted). The party seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.*

## ARGUMENT

I.   **Plaintiffs Have Not Established a Likelihood of Success on the Merits**

Plaintiffs' motion for a preliminary injunction should be denied because they cannot show a likelihood of success on the merits due to the procedural defects in this suit. The arguments and accompanying affidavits filed in

4

support of the motion only emphasize that this Court lacks subject matter jurisdiction under *Younger* and it lacks personal jurisdiction over Defendants.

### A.    The Court Lacks Subject Matter Jurisdiction

Under the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), norms of comity and federalism require that a federal court "abstain where a plaintiff's federal claims could be adjudicated in a pending state judicial proceeding." *Leonard v. Ala. State Bd. of Pharmacy*, 61 F.4th 902, 907 (11th Cir. 2023) (citation omitted). To determine whether *Younger* abstention applies to a specific case, a federal court looks to the three factors from *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982). "First, is the state proceeding 'ongoing' at the same time as the federal one," *e.g., Leonard*, 61 F.4th at 908 (citation omitted), such that the federal case would "interfere with the state proceeding"? *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003). "Second, does the state proceeding implicate an 'important state interest'?" *Leonard*, 61 F.4th at 908. "And third, does the state proceeding provide an 'adequate opportunity' to raise the federal claim?" *Id.*

All three Middlesex factors are met here. First, a state proceeding was ongoing when Plaintiffs filed this case. Defendants filed their state court enforcement action in California Superior Court on February 6, and Plaintiffs filed this action five days later on February 11. And Defendants' civil

5

enforcement action is the quintessential kind of action to which *Younger* applies. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79-80 (2013) (*Younger* abstention applies to civil enforcement actions akin to criminal prosecutions).

In terms of interference under the first *Middlesex* factor, a court "look[s] to the relief requested and the effect it would have on the state proceedings." *31 Foster Children*, 329 F.3d at 1276. "The relief sought need not directly interfere with an ongoing proceeding or terminate an ongoing proceeding in order for *Younger* abstention to be required." *Id.* Instead, the interference requirement is met where a federal plaintiff seeks to place "decisions that are . . . in the hands of the state courts under the direction of the federal district court," *id.* at 1278, or to affect the state court's "ability to conduct proceedings," *id.* at 1277 (quoting *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002)).

The interference here is evident from the proposed order Plaintiffs seek and the arguments they make in support of that order. Plaintiffs ask this Court to enter an order preventing Defendants from "applying, enforcing. . . or taking steps to effectuate" the challenged California laws against Plaintiffs. ECF No. 42 (PI Mot.) at 3. But to issue such an order, this Court would necessarily have to adjudicate the scope of relief that is presently being sought in California. *See* Tilak Decl. Exs. 3, 4. Plaintiffs cannot avoid this

6

conclusion by claiming that they only seek an order with respect to "any Florida speech activity not specifically directed into California," PI Mot. at 3, because those very issues are currently pending before the California court. In the California case, CtrlPew and Holladay are disputing whether their code is "specifically directed" at California, and the California court has authorized discovery on that question. Tilak Decl. Exs. 2, 5 (disputing whether CtrlPew and Holladay's code is "purposefully directed" into California). They have also argued that it would violate the due process clause and Dormant Commerce Clause for the California statutes at issue to reach their Florida activity. *Id.* Ex. 5 at p. 22:16-17. And they have put at issue whether their code is First Amendment protected "speech." *Id.* Ex. 5 at pp. 23-24.

Thus, in order to award Plaintiffs the relief they seek, this Court "would have to find that [California] state courts are incapable of enforcing the federal constitution in this context"—that is, that the California state court will not limit Defendants' enforcement of the challenged statutes to within the bounds of the Constitution. *Old Republic Union Ins. Co. v. Tillis Trucking*, 124 F.3d 1258, 1263 (11th Cir. 1997). "Merely stating that proposition is sufficient to illustrate why the *Younger* doctrine stands in the way of the relief sought." *Id.*

Second, the civil enforcement proceeding implicates an important state interest in preventing the spread in California of dangerous ghost guns and the digital code that enables the manufacture of these weapons. Tilak Decl. Ex. 1 ¶¶ 28-49. Indeed, Plaintiffs concede the State's interest in regulating the unlawful manufacture of such weapons in California. PI Mot. at 16. The laws that Plaintiffs challenge seek to mitigate that harm by prohibiting the distribution within California of the digital firearm manufacturing code—like the code created by CtrlPew and Holladay—that allows any person, anywhere to 3D print their own functional ghost gun. Tilak Decl. Ex. 1 ¶ 7.

Third, the ongoing California proceeding provides an adequate forum to raise the constitutional issues that Plaintiffs raise here. "Minimal respect for the state processes," requires that a federal court presume that state courts will adequately protect federal constitutional rights absent "unambiguous authority to the contrary." *31 Foster Children*, 329 F.3d at 1279 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)). Plaintiffs Holladay and Ctrlpew will have every opportunity to raise every argument they seek to raise here in the pending civil enforcement action, including any challenge to the constitutionality and territorial reach of California's laws. Indeed, they have already raised some of these issues in their California filings. *See* Tilak Decl. Exs. 2, 5. There is no dispute that the California court is capable of properly limiting Defendants' enforcement of the challenged statutes to

within the bounds of the Constitution. *See Old Republic Union Ins. Co.*, 124 F.3d at 1263. Thus, the third *Middlesex* factor is met.

Because all three *Middlesex* factors are met, *Younger* abstention applies. That outcome is not altered by the fact that some of the plaintiffs here—Adams, Bickley, and Centurion (the "non-party plaintiffs")—are not parties to the California enforcement action. The Supreme Court has held that *Younger* abstention applies when the interests of plaintiffs who are not parties to the relevant state action are "intertwined[]" with plaintiffs who are parties to the state court action. *Hicks v. Miranda*, 422 U.S. 332, 348 (1975); *see also, e.g.*, *The News–Journal Corp. v. Foxman*, 939 F.2d 1499, 1511 (11th Cir. 1991); *Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 881 (8th Cir. 2002). Appeals courts have consistently held that "where the plaintiffs' interests are so inextricably intertwined that 'direct interference with the state court proceeding is inevitable,' *Younger* may extend to bar the claims of plaintiffs who are not party to the pending state proceeding." *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 82 (2d Cir. 2003).

That is precisely the case here. The decision in *Spargo* is illustrative. In *Spargo*, a group of plaintiffs challenged state rules regarding conduct during judicial elections as violating the First Amendment. 351 F.3d at 70. One of the plaintiffs was a judicial candidate subject to an enforcement action for violating those rules; the other two plaintiffs contended they were harmed by

the rules' application to the judicial candidate. *Id.* The Second Circuit held that *Younger* abstention applied to the claims of the two non-candidate plaintiffs. *Id.* at 83-84. The court explained that the two non-candidate plaintiffs were "not directly regulated by the challenged rules" and their claimed harm flowed from the application of the rules to the candidate-plaintiff. *Id.* at 83. Thus, it "would be impossible for the District Court to analyze" the non-candidates' claims "independently" from the candidate's constitutional claims—"a matter which, under *Younger*, must be resolved in the pending state disciplinary proceeding." *Id.* at 84. The non-candidates' claims were therefore barred by *Younger* abstention as well. *Id.*

The facts in *Spargo* are on all-fours with the facts here. Like the non-candidates in *Spargo*, the non-party plaintiffs here allege harms that are derived from the enforcement action brought against Holladay and Ctrlpew (the "party plaintiffs"). *E.g.*, PI Mot. at 8-9. And as in *Spargo*, this Court could not meaningfully adjudicate the non-party plaintiffs' claims separate and apart from adjudicating the party plaintiffs' claims: Because the non-party plaintiffs' alleged harms turn on the alleged unlawfulness of the California enforcement action and Holladay and Ctrlpew's right to relief from that case, this Court would necessarily need to determine the scope of Holladay and Ctrlpew's claims to resolve the non-party plaintiffs' claims. But Holladay and Ctrlpew's claims "under *Younger*, must be resolved in the

10

pending state [enforcement] proceeding." *Spargo*, 351 F.3d at 84. Thus, the non-party plaintiffs' claims are also barred by *Younger*.

**B.    The Court Lacks Personal Jurisdiction Over Defendants**

Plaintiffs bear the burden of establishing that personal jurisdiction exists under *both* Florida's long-arm statute and the Due Process Clause, which are not co-extensive. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996); *Saint-Gobain Tech. Fabrics Am., Inc. v. Checkmate Geosynthetics, Inc.*, No. 6:09-cv-557-Orl-35KRS, 2010 WL 11507686, *2 (M.D. Fla. Feb. 5, 2010).[3] Plaintiffs' motion does nothing to support the exercise of personal jurisdiction over Defendants, and instead only underscores why personal jurisdiction is lacking under both Florida's long-arm statute and the Due Process Clause.

**1.    Plaintiffs Cannot Satisfy the Florida Long-Arm Statute**

Under the Florida long-arm statute, a plaintiff must allege that a non-resident defendant committed one of nine statutorily enumerated acts and that plaintiff's cause of action arises from those acts. *See* Fla. Stat. Ann. § 48.193(1)(a)(1)-(9). Plaintiffs have only invoked subsection (a)(2), which

---

[3] On this basis alone, *Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020) and *Media Matters for America v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025) are inapposite. Unlike the Florida long-arm statute, the long-arm statutes at issue in those cases (Texas and D.C. respectively) were both coextensive with the Due Process Clause. *See Def. Distributed*, 971 F.3d at 490; *Media Matters*, 138 F.4th at 576.

11

confers jurisdiction for tortious acts committed within the state. But the requirements of that provision are not satisfied.

Plaintiffs' motion makes clear that the conduct that they complain of is (1) Defendants' filing of a civil enforcement complaint in California under duly-enacted California statutes; (2) Defendants' effort to obtain a preliminary injunction and penalties in the California case;  and (3) the possibility that Defendants will seek further relief from the California court to effectuate any injunction through third party Internet service providers. PI Mot. at 14; *see* Holladay Decl. ¶¶ 32-35, 39-40 (claiming that he has stopped uploading new code files because Defendants "may seek preliminary injunctive relief," "may attempt to implement relief through third parties" and may seek penalties).[4]

As an initial matter, none of these acts is tortious, but instead reflects Defendants' lawful use of their authority to enforce California law with respect to Plaintiffs' decision to make code available in California. Nor can Plaintiffs show that Defendants committed the allegedly tortious conduct *in Florida. Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988) (cleaned up) (non-resident defendant must have committed "a

---

[4] Unlike the FAC, Plaintiffs' PI motion and declarations make no mention of Defendants' press conference announcing the lawsuit—a telling acknowledgment that their claims do not arise from the press conference, but rather from the underlying California case.

substantial aspect of the alleged tort in Florida" such that Defendants' Florida activities were "essential to the success of the tort"). Here, each of Defendants' alleged threatened enforcement acts that form the basis of Plaintiffs' case—filing the California lawsuit, seeking a preliminary injunction, obtaining an order effectuating relief through third parties, or obtaining penalties—would be sought *in California.*

Florida courts and federal courts applying Florida's long-arm statute have consistently rejected personal jurisdiction over non-resident defendants in analogous circumstances involving challenges to out-of-state litigation. *See, e.g.*, *Korman v. Kent*, 821 So.2d 408, 410-11 (Fla. Dist. Ct. App. 2002); *Rubber Res., Ltd., LLP v. Press*, No. 8:08-cv-1730-T-27-TBM, 2009 WL 211556, at *4-5 (M.D. Fla. Jan. 27, 2009).[5] These courts have recognized that where, as here, a plaintiff's claims arise from litigation conduct, the tortious act occurs where the underlying litigation is filed, *Rubber Res., Ltd.*, 2009 Wl 211556, at *4, and the fact that the plaintiff suffers damage in Florida "does not extend the tort to being committed in Florida," *Korman*, 821 So.2d at 410.

This case is distinguishable from the kinds of cases where courts have found that out-of-state communications into Florida can support personal

---

[5] *See also, e.g.*, *Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So.2d 1013, 1017 (Fla. Dist. Ct. App. 2003); *Homeway Furniture Co. of Mount Airy, Inc. v. Horne*, 822 So.2d 533, 538-39 (Fla. Dist. Ct. App. 2002); *Hirsch v. Weitz*, 16 So.3d 148, 149 (Fla. Dist. Ct. App. 2009); *Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 736 (11th Cir. 2018); *Long v. Nammias*, 3:13-cv-175-J-39MCR, 2015 WL 13792147, at *4-5 (M.D. Fla. Feb. 13, 2015).

jurisdiction. In those cases, the alleged tort was not complete until the publication of the out-of-state communication in Florida. *See, e.g.*, *Internet Sols. Corp. v. Marshall*, 39 So.3d 1201, 1214-15 (Fla. 2010) (tort of defamation complete upon publication of statement to someone in Florida); *Louis Vouitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) (trademark infringement claim depended on availability of infringing website in Florida). Here, as in the consistent line of cases discussed above, the alleged torts that Plaintiffs identify would be complete upon the filing of motions or issuance of orders in the California state court. For example, in arguing that Defendants are unlawfully seeking to apply California law extraterritorially, PI Mot. at 2, Plaintiffs point to motions filed in the California court and orders they fear will be granted by that court.

Thus, Plaintiffs have not satisfied the Florida long-arm statute.

### 2.    Exercising Personal Jurisdiction over Defendants Is Inconsistent with Due Process

Plaintiffs' motion also fails to establish that the exercise of personal jurisdiction over Defendants would comport with the Due Process Clause, which requires that Defendants have "minimum contacts" with Florida and that the exercise of jurisdiction not "offend traditional notions of fair play and substantial justice." *Moore v. Cecil*, 109 F.4th 1352, 1362 (11th Cir. 2024) (citation omitted). The minimum-contacts inquiry focuses on "the defendant's

14

contacts with the forum State itself, not the defendant's contacts with persons who reside there," *Walden v. Fiore*, 571 U.S. 277, 285 (2014). But Plaintiffs' motion identifies *no* contacts between Defendants and Florida beyond an asserted injury to Plaintiffs in Florida.

As discussed above, Plaintiffs' claims and the injunction they request relate to the filing of, and scope of relief sought in, the California case. Courts have routinely found that the filing of out-of-state litigation targeting an in-state plaintiff does not suffice to establish personal jurisdiction. *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 696 (7th Cir. 2018); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144-45 (9th Cir. 2017); *City of San Francisco v. Exxon Mobil Corp.*, No. 02-18-00106-CV, 2020 WL 3969558, at *17 (Tex. App. June 18, 2020); *SpaceCo Bus. Sols., Inc. v. Mass Engineered Design, Inc.*, 942 F. Supp. 2d 1148, 1154 (D. Colo. 2013).

Moreover, Defendants filed the California case in their capacity as law enforcement officials, and the relief they seek is targeted to preventing the distribution of digital firearm manufacturing code into California. *See* Tilak Decl. Ex. 3 at p. 19, Ex. 4 at p. 1. As this Court aptly noted, "this case presents an attempt by California to prohibit the sale or manufacture of ghost guns *inside of its own borders by anyone*, regardless of in-state or out-of-state status." ECF No. 10 (Order) at 6 (emphasis added). In similar cases, courts have held that a state regulator may enforce its laws against out-of-

15

state residents who engage in activity in the regulator's State without being subject to personal jurisdiction in another forum. *See, e.g.*, *Bulkley & Assocs., LLC v. Cal. Dep't. of Indus. Relations*, 1 F.4th 346, 354-55 (5th Cir. 2021); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 485-87 (5th Cir. 2008); *United States v. Ferrara*, 54 F.3d 825, 830 (D.C. Cir. 1995); *Berry Coll., Inc. v. Rhoda*, No.4:13-CV-0115-HLM, 2013 WL 12109374, at *11 (N.D. Ga. June 12, 2013). As in these cases, Defendants are entitled to uniformly apply California law to entities transacting business in California without subjecting themselves to suit in a foreign forum. *See Stroman Realty, Inc.*, 513 F.3d at 486-87.

Plaintiffs argue at length that the relief that Defendants seek in California will require changes to their Florida-based operations and submit testimony about the feasibility and cost of those changes. *See, e.g.*, ECF No. 42-6 (Lettman Decl.) ¶¶ 63-84. But that is not sufficient to establish personal jurisdiction over Defendants. *See Bulkley & Assocs.*, 1 F.4th at 354 (no jurisdiction even though California regulator's demand required company to "chang[e] its policies in Texas"); *Stroman Realty*, 513 F.3d at 481, 485-86 (no jurisdiction over Arizona regulator's demand that Texas company cease online business even though claim was based on "conduct which occurred entirely in Texas").

16

Plaintiffs, of course, remain free to raise their concerns about the scope and implementation of any potential injunction before the California court. What matters for personal jurisdiction here, however, is that the plain language of the relief that Defendants seek in California is cabined to regulating the distribution of code into California. *See* Tilak Decl. Ex. 4; *Cf. Def. Distributed v. Grewal*, 971 F.3d at 492 (regulator "d[id] not cabin his request by commanding the plaintiffs to stop publishing materials to New Jersey residents" and filed litigation seeking nationwide relief); *Media Matters v. Paxton*, 138 F.4th at 569 (involving sweeping request with "little ostensible nexus to Texas").

Moreover, the exercise of jurisdiction over Defendants would offend notions of fair play and substantial justice. It would undisputedly be burdensome to require Defendants to travel across the country to litigate the validity of California law. Even if Florida has an interest in protecting its residents, it has "little interest in adjudicating disputes over other states' statutes"—particularly given the weighty federalism concerns at play and California's strong interest in having its statutes interpreted by its own courts. *Stroman Realty, Inc.*, 513 F.3d at 487-88 (cleaned up). And Plaintiffs remain able to raise their constitutional claims in the California case. Therefore, due process principles preclude personal jurisdiction over Defendants.

## II.    Plaintiffs Cannot Satisfy the Remaining Preliminary Injunction Factors

Because the Court lacks subject matter jurisdiction over this case and lacks personal jurisdiction over the Defendants, Plaintiffs cannot as a matter of law establish a likelihood of success on the merits—and their motion for a preliminary injunction must be denied.

Plaintiffs' motion must also be denied because they cannot show irreparable harm. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*) ("[T]he absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper . . . ."). All of Plaintiffs' alleged constitutional violations flow from a fear that Defendants will obtain an injunction and penalties in the California case and will seek to enforce the injunction through third parties. *See* PI Mot. at 14; Holladay Decl. ¶¶ 38-40. But Plaintiffs have an adequate remedy at law to prevent their claimed constitutional violations: they can raise each of the arguments they make here in the state court, and if the state court deems those arguments to have merit, it can deny or tailor Defendants' request for relief accordingly. *See Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 774 (11th Cir. 1999); *Morgan Drexen, Inc. v. CFPB*, 979 F. Supp. 2d 104, 112 (D.D.C. 2013). The Eleventh Circuit has also stated that irreparable First Amendment injury exists if there is "an imminent likelihood that pure speech will be chilled or

18

prevented altogether." *Siegel*, 234 F.3d at 1178. But to conclude that Plaintiffs face an imminent risk of irreparable First Amendment injury would be to assume that Plaintiffs cannot raise their constitutional defenses in state court or that the state court would not adjudicate these defenses. Neither assumption is warranted. *31 Foster Children*, 329 F.3d at 1279.

Moreover, as a practical matter, none of Plaintiffs' harms is imminent. Holladay and Ctrl Pew are presently disputing that the California court has personal jurisdiction and resolution of Defendants' request for a preliminary injunction is likely several months away. Tilak Decl. ¶¶ 9-10. And even if Plaintiffs Holladay and Ctrlpew faced a risk of order in the California action, that would not preclude their ability to share code with the other plaintiffs in this case. Plaintiffs Adams, Bickley, and Centurion have all attested, under penalty of perjury, that they are geographically located in Florida and that they wish to receive and use the relevant code in Florida, *not in California*. *See* Adams Decl. ¶¶ 3, 21-28; Bickley Decl. ¶¶ 1, 12-13; Monica Decl. ¶¶ 4-5, 13, 20, 28. Neither the California statutes nor the relief sought in the California case prevents Holladay and Ctrlpew from distributing code to the other Plaintiffs known to reside outside of California. And while Plaintiffs submit testimony about the inadequacy of geographically limiting website access, *see* Lettman Decl. ¶¶ 61-84, they offer no explanation for why Holladay and Ctrlpew cannot use alternate means to distribute their code to

19

known Floridians, including emailing the code or giving them a hard drive with the code. Thus Adams, Bickley, and Centurion are not suffering *any* injury that is traceable to the California laws or California enforcement action, let alone an irreparable one.[6]

Finally, the balance of the equities and public interest weigh against granting Plaintiffs' requested injunction. California undoubtedly has a strong sovereign interest in enforcing its laws governing the distribution of code into the State and in having its own courts determine the validity of those laws. *See Stroman Realty, Inc.*, 513 F.3d at 487. Interfering with the ongoing state court proceeding would also contravene the public interest. *See Dandar v. Church of Scientology Flag Service Org., Inc.*, No. 8:12-cv-2477-T-33EAJ, 2012 WL 5878033, at *7 (M.D. Fla. Nov. 20, 2012); *Allen v. Florida*, No. 25-cv-61332-SMITH/VALLE, 2025 WL 4098958, at *2 (S.D. Fla. Dec. 17, 2025). Plaintiffs suffer no prejudice from raising their constitutional defenses in the state court, which is an adequate forum to adjudicate those issues.

---

[6] For this reason, Adams, Bickley, and Centurion lack standing to bring their claims, providing an independent reason to deny an injunction as to those Plaintiffs. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Dated: June 9, 2026

DAVID CHIU, City Attorney
YVONNE R. MERÉ, Chief Deputy City Attorney
SARA J. EISENBERG, Chief of Complex & Affirmative Litigation
RONALD H. LEE, Assistant Chief of Complex & Affirmative Litigation
KARUN TILAK, Deputy City Attorney

By: _/s/Karun A. Tilak_
KARUN A. TILAK*
San Francisco City Attorney's Office
1390 Market St., 7th Floor
San Francisco, CA 94102
Telephone: (415) 355-3308
Email:        karun.tilak@sfcityatty.org

*Attorneys for Defendant David Chiu in his official capacity as San Francisco City Attorney*

*admitted pro hac vice


ROB BONTA, Attorney General of California
ANYA M. BINSACCA
CHARLES J. SAROSY, Supervising Deputy Attorneys General
KRISTIN A. LISKA, Deputy Attorney General

By: _/s/ Kristin A. Liska_
KRISTIN A. LISKA*
California Department of Justice
Office of the Attorney General
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Telephone: (415) 510-3916
E: mail:        Kristin.Liska@doj.ca.gov

*Attorneys for Defendant Rob Bonta in his official capacity as Attorney General of California*

*admitted pro hac vice

21