UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:26-cv-340

CTRLPEW LLC, ALEXANDER
HOLLADAY, CENTURION PARTNERS
GROUP, LLC, JONATHAN ADAMS, and
TREY BICKLEY,

$\qquad$ *Plaintiffs*,

v.

DAVID CHIU, in his official capacity as San
Francisco City Attorney, and ROB BONTA, in
his official capacity as Attorney General of
California,

$\qquad$ *Defendants*.

_____/

## **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

i

Plaintiffs oppose Defendants' Motion to Dismiss the First Amended Complaint. Defendants move under Rules 12(b)(1) and 12(b)(2). A Rule 12(b)(1) facial attack accepts the complaint's allegations as true; a factual attack permits the Court to consider evidence, but the Court may not resolve disputed merits questions under the guise of jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529–30 (11th Cir. 1990). On a Rule 12(b)(2) motion decided without an evidentiary hearing, Plaintiffs need make only a *prima facie* showing of personal jurisdiction. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 807–08 (11th Cir. 2010). The Court accepts the complaint's allegations as true unless contradicted by evidence and draws reasonable inferences in Plaintiffs' favor. *Id.*; *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

## ARGUMENT

### I. YOUNGER DOES NOT BAR THIS ACTION.

Defendants' *Younger* argument depends on recasting this case as an attack on a California court, but it is explicitly the opposite. Plaintiffs do not ask this Court to enjoin the California action, control the California court, or prevent California from regulating manufacture, possession, sale, transfer, receipt, or distribution occurring in California. FAC ¶¶ 1–7, 186–94. Plaintiffs seek prospective relief only against Defendants' application of California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs' Florida speech, Florida publication decisions, Florida receipt and viewing of speech, Florida repair and maintenance of arms, and lawful Florida business activity. *Id.*

Contrary to Defendants' invocation, *Younger* is "exceptional." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). It is not a general rule against

parallel litigation and does not allow state officials to defeat a federal civil-rights suit merely by pointing to related state proceedings. *Id*. at 77, 81–82. Federal courts have a "virtually unflagging obligation" to exercise jurisdiction. *Id*. at 77. And § 1983 exists to "interpose the federal courts between the States and the people" when state officials violate federal rights. *Mitchum v. Foster*, 407 U.S. 225, 242 (1972).

Defendants' motion ignores *Sprint*'s limitations. It treats the existence of a California enforcement case as dispositive, then assumes any federal ruling protecting Florida speech would interfere with California's authority to regulate California conduct. But Plaintiffs' requested relief has nothing to do with California conduct. This Court may decide whether California officials may reach into Florida to suppress Florida speech and lawful Florida conduct without ordering any California court to do anything and without disturbing California's ability to enforce its law in California.

If the Court believes any requested relief could be read too broadly, the appropriate remedy is narrowing, not dismissal. Plaintiffs have pleaded a Florida-only theory seeking Florida-only relief. FAC ¶¶ 186–94.

A. <u>The California Case Is Not an Adequate Forum for Plaintiffs' Federal Claims</u>

Younger requires an adequate opportunity to raise federal claims in the state proceeding. *31 Foster Children v. Bush*, 329 F.3d 1255, 1279 (11th Cir. 2003). Defendants say Plaintiffs can raise everything in California. The current California posture shows otherwise.

2

Holladay and CTRLPEW have specially appeared to contest personal jurisdiction. The California court has not held that it has jurisdiction over them. Instead, it continued the motions to quash for jurisdictional discovery, stating that it was not then in a position to find that the People had met their initial burden on the first two jurisdictional prongs. *The People of the State of California v. Gatalog Foundation Inc.*, No. CGC-26-633508, Order Continuing Hearing on Defendants' Motions to Quash for Lack of Personal Jurisdiction to Allow Jurisdictional Discovery, at 16–17 (Cal. Super. Ct. S.F. Cnty. June 5, 2026). The same order vacated the preliminary-injunction hearing and related deadlines pending the continued jurisdictional proceedings. *Id* at 17. The California docket confirms that the motions to quash remain unresolved and that a case-management conference is set for August 14, 2026. *Gatalog Foundation Inc.*, No. CGC-26-633508, Register of Actions (Cal. Super. Ct. S.F. Cnty. generated June 26, 2026).

A state forum whose power over a party remains unresolved is not presently an adequate merits forum for that party's federal constitutional claims. If Holladay and CTRLPEW prevail on the motions to quash, the California court will not reach their First Amendment, Second Amendment, due-process, or dormant-commerce claims. It will simply hold that California lacks personal jurisdiction over them. If they lose, they will have been forced to submit to the very extraterritorial adjudication they challenge.

*Younger* does not require a party to abandon a personal-jurisdiction objection in California as the price of preserving federal constitutional claims in Florida.

3

Defendants' position would create a one-way ratchet: California may insist Plaintiffs belong in California, while Plaintiffs must litigate merits defenses there before California has established authority over them. This offends the idea of comity which *Younger* is meant to preserve: It is the denial of a federal forum for injuries by California occurring in Florida.

The adequacy problem is stronger for Centurion, Bickley, and Adams. They are not parties to the California action. FAC ¶¶ 142–45. They have not been sued there and have no vehicle there to litigate their First Amendment right-to-receive injuries, Adams's Second Amendment repair and operability injury, Centurion's lawful Florida business injuries, or the Second Amendment interests of Centurion's Florida customers. *Id.* Their injuries arise from suppression of speech they would receive, view, archive, use, and rely upon in Florida. *Id.* ¶¶ 145, 153–85.

B. *Younger* Does Not Bar the Nonparty Plaintiffs' Independent Claims.

Defendants argue that Centurion, Bickley, and Adams are bound to the California case because their interests are "intertwined" with Holladay's and CTRLPEW's. That overreads the nonparty Younger cases.

A much more analogous case is *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975). There, three businesses challenged an ordinance. One was subject to a state prosecution; two were not. The Supreme Court held that *Younger* barred federal relief as to the actually prosecuted plaintiff but not as to the others. *Id.* at 928–31. *Steffel v. Thompson*, 415 U.S. 452 (1974), likewise held that when no state prosecution is

4

pending against the federal plaintiff, federal declaratory relief does not offend *Younger*'s core concerns. *Id*. at 462.

Centurion, Bickley, and Adams allege independent injuries. Centurion is a Florida Type 07 FFL that uses CTRLPEW's publications in its lawful Florida business for design evaluation, prototyping, manufacturing, repair, research, and customer work. FAC ¶¶ 153–63. Bickley is a Florida recipient who uses CTRLPEW to receive, read, view, study, archive, and appreciate firearms-related visual, technical, historical, and artistic works. *Id*. ¶¶ 164–71. Adams lawfully made and possesses a Plastikov V4 in Florida; the grip/fire-control housing has failed three times; the firearm is inoperable; and Holladay's withheld reinforced model would solve or materially reduce the defect. *Id*. ¶¶ 172–85.

Those claims are not derivative in the way Defendants suggest. The First Amendment protects both the right to speak and the right to receive information. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57 (1976); *Kleindienst v. Mandel*, 408 U.S. 753, 762–63 (1972); *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943). When state enforcement suppresses a willing speaker, willing recipients suffer their own constitutional injury. A federal court may adjudicate those injuries without directing the California court to do anything.

*Spargo v. New York State Commission on Judicial Conduct*, 351 F.3d 65 (2d Cir. 2003), relied on by Defendants, does not require abstention. There, nonparty plaintiffs were not directly regulated and their claimed injuries flowed entirely from discipline against a judicial candidate. *Id*. at 83–84. Here, Defendants' enforcement

5

campaign allegedly suppresses the speech itself, depriving Florida recipients and users of access to protected works in Florida. FAC ¶¶ 153–85. That independent injury distinguishes this case from Spargo and places it within Doran and Steffel.

C. The Bad-Faith Exception Also Precludes Dismissal.

Even where *Younger* otherwise applies, abstention is inappropriate when the state proceeding is brought in bad faith, to harass, or to retaliate against protected expression. *Younger v. Harris*, 401 U.S. 37, 49 (1971); *Dombrowski v. Pfister*, 380 U.S. 479, 482–87 (1965). The former Fifth Circuit's decision in *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979), binding here, recognizes that federal relief may issue when state proceedings are instituted to retaliate against or deter the exercise of First Amendment rights. *Id*. at 1382–83, 1387.

The FAC plausibly alleges a retaliatory and constitutionally suspect enforcement campaign. Defendants targeted firearms-related speech because of their content and alleged tendency to promote or facilitate disfavored conduct. FAC ¶¶ 97–119, 196–210. Defendants seek millions of dollars in penalties and broad injunctive relief. *Id*. ¶¶ 98–102, 113–17. Their enforcement theory reaches preexisting Florida publications on the open internet and requires Florida speakers to censor, remove, or cease publication to satisfy California's access rules. *Id*. ¶¶ 120 31.

Recent cases confirm that federal courts may act when a state official uses enforcement authority to target out-of-state speech. *See Defense Distributed v. Grewal*, 971 F.3d 485 (5th Cir. 2020); *Media Matters for Am. v. Paxton*, 138 F.4th 563 (D.C. Cir. 2025); *American Academy of Pediatrics v. Uthmeier*, No. 26-2238 (7th Cir.

June 22, 2026); *ActBlue LLC v. Paxton*, No. 1:26-cv-11986-RGS (D. Mass. June 11, 2026). Plaintiffs need not prove bad faith on a motion to dismiss, but Defendants are not entitled to dismissal on *Younger* grounds where Plaintiffs plausibly allege an enforcement campaign aimed at suppressing protected Florida speech.

## II.    CENTURION, BICKLEY, AND ADAMS HAVE STANDING.

Defendants next argue that Centurion, Bickley, and Adams lack standing because their injuries arise from Holladay's and CTRLPEW's "voluntary" decision to stop publishing. That argument fails in a First Amendment case.

A First Amendment chill is an injury in fact. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120–24 (11th Cir. 2022). A credible enforcement threat causing self-censorship is also injury. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–67 (2014); *Va. v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988). That injury is not confined to the speaker. The First Amendment protects willing recipients' right to receive information and ideas. *Va. State Bd. of Pharmacy*, 425 U.S. at 756–57.

The FAC alleges a direct causal chain. Defendants filed a civil enforcement action seeking severe penalties and injunctive relief against Florida speakers and Florida publication infrastructure. FAC ¶¶ 97–119. Holladay and CTRLPEW stopped publishing new works because of that campaign. *Id.* ¶¶ 118–19, 146–52. Centurion, Bickley, and Adams lost access to speech they otherwise would receive and use in Florida. *Id.* ¶¶ 153–85.

That is enough for traceability. Standing does not require proximate cause. *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997). It is not defeated merely because a third party's predictable response to government action forms part of the causal

7

chain. *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019). And in First Amendment cases, government pressure often injures plaintiffs precisely by causing self-censorship. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64–72 (1963); *Am. Booksellers*, 484 U.S. at 392 93.

Defendants' contrary rule would erase standing in ordinary chill cases. Every self-censorship case involves a speaker's decision not to speak. That decision is not "voluntary" in the relevant sense when it is caused by a credible threat of ruinous penalties, injunctive relief, third-party suppression, and ongoing enforcement.

Nor are private email and USB drives adequate substitutes for public speech. Defendants say Holladay and CTRLPEW could privately send files to known Floridians. But Plaintiffs' injury is not limited to possession of isolated files. The FAC alleges lost access to public publication, curation, commentary, written guides, photographs, linked materials, model pages, archives, and continuing expressive presentation. FAC ¶¶ 146–85. Public speech is not interchangeable with individualized private transfers. See *Reno v. ACLU*, 521 U.S. 844, 870 (1997) (recognizing the internet's unique role as a forum for protected expression). Defendants, in their MSJ, highlight this by directing a Floridian to a different means and manner of publication *in Florida* to avoid Defendants' threats. If California can force a Florida publisher to abandon ordinary internet publication and resort to private file transfers to avoid penalties, California has burdened Florida speech.

Redressability is also straightforward. The FAC alleges that if Defendants are enjoined from applying California Civil Code §§ 3273.61 and 3273.625 to Plaintiffs'

Florida publication and receipt of speech, Holladay and CTRLPEW will resume publishing new works, including the reinforced Plastikov V4 model; Centurion will resume using CTRLPEW as a Florida business resource; Bickley will receive, view, read, and archive the new works; and Adams will receive and use the reinforced model in Florida to repair his firearm. FAC ¶¶ 152, 163, 171, 185.

## III.   THIS   COURT   HAS   PERSONAL   JURISDICTION   OVER DEFENDANTS.

Defendants' personal-jurisdiction argument assumes this case arises only from a California lawsuit concerning California conduct. The FAC alleges more. Defendants intentionally targeted identified Florida speakers, Florida publication activity, Florida websites and profiles, Florida publication infrastructure, Florida recipients, and lawful Florida activity; sought relief foreseeably suppressing publication in Florida; and caused the brunt of the constitutional injury in Florida. FAC ¶¶ 37–45, 97–119, 186–94. Those allegations satisfy Florida's long-arm statute and due process.

### A. Florida's Long-Arm Statute Is Satisfied.

Florida's long-arm statute reaches a defendant who commits a tortious act within Florida. Fla. Stat. § 48.193(1)(a)(2). A defendant need not be physically present here to commit such an act. The Florida Supreme Court has held that telephonic, electronic, or written communications into Florida can satisfy the tortious-act prong when the cause of action arises from those communications. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). In *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214–15 (Fla. 2010), the court held that allegedly tortious internet material posted

9

outside Florida and accessed in Florida can constitute an electronic communication into Florida sufficient for § 48.193(1)(a)(2).

The alleged constitutional torts occurred in Florida. Defendants allegedly directed a coercive enforcement campaign at Florida speakers, Florida publication activity, Florida websites and online profiles, Florida recipients and users, and lawful Florida arms-related activity. FAC ¶¶ 37–45. They sued Florida residents and entities, publicly accused Florida publications of illegality, threatened penalties and injunctive relief for speech created and published from Florida, engaged process servers to serve Plaintiffs in Florida, and sought relief that would suppress Florida publication through third-party internet intermediaries. *Id.* ¶¶ 37–45, 97–119.

Defendants' malicious-prosecution-type cases do not control. Plaintiffs are not suing for damages merely because Defendants filed a California case. Plaintiffs bring § 1983 claims alleging that state officials used enforcement threats, penalties, injunctions, public accusations, service in Florida, and third-party suppression mechanisms to chill Florida speech and lawful Florida activity. The substantial and essential aspects of the constitutional injury occur here: Holladay's cessation of publication, CTRLPEW's chilled operation, Bickley's inability to receive and archive speech, Adams's inability to repair and restore a lawful firearm, and Centurion's inability to use protected publications in its Florida business. FAC ¶¶ 45, 146–85. Thus, § 48.193(1)(a)(2) is satisfied.

10

B. Due Process Is Satisfied.

Due process asks whether Defendants purposefully established minimum contacts with Florida and whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355–58 (11th Cir. 2013). In intentional-tort cases, *Calder* permits jurisdiction where defendants commit intentional conduct expressly aimed at the forum with knowledge that the brunt of the injury will be felt there. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *Licciardello v. Lovelady*, 544 F.3d 1280, 1287–88 (11th Cir. 2008).

This case is closer to *Grewal*, *Media Matters*, and *AAP* than to *Stroman* or *Bulkley*. In *Grewal*, the Fifth Circuit held that Texas could exercise personal jurisdiction over the New Jersey Attorney General where he targeted Texas speakers over online firearm files. 971 F.3d at 491–96. The court distinguished ordinary out-of-state regulatory cases because the attorney general did not merely seek to prevent publication to New Jersey residents; he sought to suppress publication generally and acted in a way calculated to affect the plaintiffs' operations in Texas. *Id*. at 492–95. *Media Matters* likewise affirmed jurisdiction where a state attorney general used enforcement powers in a way allegedly aimed at a media entity's operations and speech outside the enforcing state. 138 F.4th at 576–80. *AAP* found *Grewal* and *Media Matters* persuasive where a state attorney general targeted an out-of-state organization's speech through state enforcement proceedings that predictably chilled operations in the organization's home forum. No. 26-2238, slip op. at 3, 10–15.

11

Defendants insist this case is different because they seek relief only as to California. But the FAC alleges that Defendants' theory requires Florida speakers to censor, restructure, remove, geofence, or cease Florida publication activity because California disapproves of Californians accessing it. FAC ¶¶ 120–31. Defendants seek broad relief against named defendants and persons acting in concert with them. *Id.* ¶ 113. They represented that they may need to effectuate relief through internet service providers, social-media platforms, and other third parties supporting Florida websites and online profiles. *Id.* ¶¶ 114–17. Such relief would burden or suppress Florida publication infrastructure and prevent Florida recipients from receiving protected speech. *Id.* ¶¶ 116–17, 193–94.

Stroman and Bulkley involved regulators enforcing state law against in-state transactions or conduct directed into the regulator's state. See *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 485–88 (5th Cir. 2008); *Bulkley & Assocs., LLC v. Cal. Dep't of Indus. Rels.*, 1 F.4th 346, 353–55 (5th Cir. 2021). Plaintiffs do not challenge California's authority to regulate California manufacture, possession, sale, transfer, receipt, or distribution. FAC ¶¶ 3, 188–90. They challenge Defendants' attempt to project California law onto Florida speech, Florida publication decisions, Florida recipients, Florida repair and maintenance, lawful Florida manufacture, and Florida business activity. *Id.* ¶¶ 1  7, 186–94. That is the Grewal line, not Stroman.

12

C. Exercising Jurisdiction Is Fair and Reasonable.

Once Plaintiffs establish purposeful direction, Defendants must make a "compelling case" that jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). They cannot do so.

Florida has a strong interest in protecting Florida residents, Florida businesses, Florida speakers, Florida recipients, and lawful Florida arms-related activity from unconstitutional extraterritorial enforcement. Plaintiffs have a strong interest in obtaining relief in the forum where their speech, receipt, repair, business use, and injuries occur. Defendants intentionally targeted Florida speakers and Florida publication infrastructure; litigating in Florida is not unfair when the alleged harm was deliberately caused here. See *Licciardello*, 544 F.3d at 1288.

Defendants' federalism argument cuts both ways. California has an interest in enforcing California law in California. Florida has an equally legitimate interest in ensuring that California officials do not regulate Florida speech and Florida recipients. Jurisdiction here does not prevent California from regulating California conduct. It requires California officials to answer in Florida for allegedly reaching into Florida to suppress protected Florida activity.

D. At Minimum, Jurisdictional Discovery or Leave to Amend Is Required.

If the Court has any doubt about personal jurisdiction, dismissal would be premature. Plaintiffs have alleged specific jurisdictional facts identifying Defendants' contacts with Florida and the resulting Florida-based injuries. The proper alternative would be targeted jurisdictional discovery, not dismissal. See *Eaton v. Dorchester*

13

*Dev., Inc.*, 692 F.2d 727, 729–31 (11th Cir. 1982). Likewise, if the Court concludes any jurisdictional or standing allegation should be pleaded with more detail, Plaintiffs request leave to amend. Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

The motion to dismiss should be denied. In the alternative, it should be stayed pending jurisdictional discovery.

DATED: June 26, 2026

*/s/ Matthew Larosiere*
Matthew Larosiere, Esq.
Fla. Bar № 1005581
*The Law Offices of Matthew Larosiere.*
6964 Houlton Cir.
Lake Worth, FL 33467
Email: Larosieremm@gmail.com
Telephone: (561) 452-7575
*Lead Counsel for Plaintiffs*

14

## CERTIFICATE OF SERVICE

I hereby certify that on the date noted below, the foregoing document was filed with this Court's ECF system, which generated a notice of filing, and a true and correct copy of the foregoing Motion was emailed to the following counsel for Defendants:

VESNA CUK
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone:  (415) 510-3782
Fax:  (415) 703-5480
E-mail:  vesna.cuk@doj.ca.gov

KARUN A. TILAK
Deputy City Attorney
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, CA  94102-5408
Telephone:  (415) 355-3308
Fax:  (415) 437-4644
E-mail:  karun.tilak@sfcityatty.org


June 26, 2026

*/s/ Matthew Larosiere*
Matthew Larosiere, Esq.
*Lead Counsel for Plaintiffs*

15