UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE №: 6:26-cv-340

CTRLPEW LLC, ALEXANDER
HOLLADAY, CENTURION PARTNERS
GROUP, LLC, JONATHAN ADAMS, and
TREY BICKLEY,

                     *Plaintiffs*,

v.

DAVID CHIU, in his official capacity as San
Francisco City Attorney, and ROB BONTA, in
his official capacity as Attorney General of
California,

                     *Defendants*.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY

i

Plaintiffs oppose Defendants' Motion to Stay Discovery (Doc. 58). The motion should be denied.

The Court's Case Management and Scheduling Order already states that a pending motion to dismiss does not stay discovery and expressly advises the parties that "during the pendency of your motion, discovery will not be stayed." Doc. 46 at 1-2. Middle District practice is equally direct: discovery stays based on a pending dispositive motion are "rarely granted" and require an unusual circumstance supported by a specific showing of prejudice or undue burden. Defendants offer neither. Their declaration authenticates the discovery and recounts the parties' conferral, but provides no evidence about custodians, volume, collection time, cost, privilege review, or any other concrete burden. Doc. 58-1.

The requested stay also would withhold discovery directed to the very factual propositions Defendants use to seek dismissal. Requests for Production 1-13, Interrogatories 1-4, and Requests for Admission 32-45 concern Defendants' Florida-directed acts, communications, service efforts, use of intermediaries, intended and actual Florida effects, and the geographic operation of the relief sought in California. Doc. 58-1 at 11-13, 29-33, 52-53. Requests for Production 14-17 and Interrogatories 5-6 concern the source and adoption of information used to investigate Plaintiffs, draft the California action, and litigate the pending *Younger* issue. Id. at 33-34, 53-54. Defendants' assertion that none of the requests bears on *Younger*, Doc. 58 at 11, simply overlooks those requests.

1

A preliminary review of the fully briefed motion to dismiss confirms genuine disputes over *Younger*, its bad-faith exception, personal jurisdiction, and standing. Those disputes do not make dismissal impossible; they do make the motion far from the sort of clearly meritorious, purely legal motion that can justify the rare blanket stay. And because the requested discovery may permit the Court to resolve threshold issues on an informed record, proceeding now serves rather than defeats judicial economy.

If the Court is inclined to defer any discovery, the narrower course is to preserve the threshold discovery identified above and defer only discovery directed solely to the ultimate constitutional merits. A blanket, open-ended stay is neither necessary nor proportional.

## ARGUMENT

### I. DEFENDANTS HAVE NOT SHOWN THE GOOD CAUSE REQUIRED FOR A DISCOVERY STAY.

A. The governing standard makes a stay the exception

Rule 26(c)(1) places the burden on the movant to show good cause for protection from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Good cause requires a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. 2005). The party seeking a stay bears the burden of showing both good cause and reasonableness. *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997); McCabe v. Foley, 233 F.R.D. 683, 685, 687 (M.D. Fla. 2006).

The Middle District's Civil Discovery Handbook applies that standard to pending dispositive motions: ordinarily, a motion to dismiss "will not justify" a unilateral stay; such stays are "rarely granted"; and unusual circumstances require a "specific showing of prejudice or undue burden." Middle District Discovery (2021) § I.E.4. This Court applied that rule in *Vargas v. TransUnion, LLC*, denying a stay because the movant failed to show that the case was among the rare cases warranting one. No. 6:23-cv-1619-PGB-RMN, Doc. 45 at 1-2 (M.D. Fla. Apr. 2, 2024). Other recent decisions likewise reject a stay supported only by generalized litigation expense or the prospect of dismissal. See *Critelli v. Danaher Corp.*, No. 6:25-cv-1780-AGM-LHP, Doc. 62 at 3-8 (M.D. Fla. June 15, 2026); *Pierre v. Aston Healthcare, LLC*, No. 6:25-cv-284-JSS-LHP, Doc. 38 at 3-6 (M.D. Fla. Mar. 23, 2026); *Gen. Dynamics Elec. Boat Corp. v. Skobic*, No. 3:24-cv-387-WWB-MCR, Doc. 33 at 5-8 (M.D. Fla. Sept. 13, 2024).

The case-specific order is more explicit still. The CMSO warns that a pending dispositive motion "does not stay the deadline for completion of discovery," that parties who forego discovery because of such a motion will not receive more time, and that "during the pendency of your motion, discovery will not be stayed." Doc. 46 at 1-2. A departure from that schedule requires good cause. Fed. R. Civ. P. 16(b)(4). Defendants' prediction that their motion may prevail is the circumstance the CMSO already addressed, not new good cause to depart from it.

### B. Defendants offer no particularized evidence of burden.

Defendants filed all six sets of discovery as exhibits to their own declaration. Doc. 58-1, Exs. A-F. Yet neither the motion nor the declaration states the number of

3

custodians, the expected volume of documents, the systems to be searched, estimated collection or review hours, projected cost, likely privilege volume, or any other measure of burden. The declaration says nothing about burden at all. Its operative paragraphs authenticate the requests and recount the conferral. *Id.* ¶¶ 4-16. The motion adds only that responding will require "significant government resources." Doc. 58 at 9. That conclusion is not evidence and does not satisfy Rule 26(c).

Nor do Defendants analyze the requests request-by-request. They discuss selected admissions and Requests for Production 2, 4, and 9-12, but do not address the source-adoption requests or most of the Florida-contact requests. Doc. 58 at 8-11. They do not explain why ordinary objections, a privilege log, phased production, or a request-specific protective order would be inadequate. Rule 26(c)(1) authorizes tailored protection; it does not make a blanket stay the default whenever responding may require work. See *Gen. Dynamics*, Doc. 33 at 7-8 (conclusory burden assertions, unsupported by detailed affidavits or evidence, did not establish good cause).

Defendants also characterize requests for admissions as improper "legal contentions." Doc. 58 at 8-9. But Rule 36 expressly permits requests concerning "the application of law to fact," Fed. R. Civ. P. 36(a)(1)(A), and Rule 33 likewise permits contention interrogatories, Fed. R. Civ. P. 33(a)(2). Any objection to a particular request can be stated and tested in ordinary discovery practice. It does not establish a burden warranting suspension of all discovery.

C. The conferral history supports an ordinary accommodation, not a litigation stay.

The Court need not review counsel correspondence because Defendants' declaration establishes the relevant sequence. On July 21, Defendants proposed ninety days expressly "in light of" the pending motions and offered to confer again in sixty days if the Court had not ruled. Doc. 58-1 ¶ 13. At the July 27 conference, Defendants again proposed sixty to ninety days so the Court could rule before discovery proceeded. Id. ¶ 14. Plaintiffs declined an extension for that purpose but expressly stated that they would consider a short extension "for any other purpose." Id. ¶¶ 15-16.

Rule 29 permits the parties to stipulate to discovery procedures when the stipulation does not interfere with the Court's schedule. Fed. R. Civ. P. 29. Defendants' declaration identifies no later request for such an ordinary, date-certain accommodation based on workload, scheduling, collection, privilege review, or another operational need. Instead, Defendants sought the functional equivalent of the same relief from the Court: an open-ended stay until the motion to dismiss is decided. The parties' disagreement was therefore not over a reasonable response extension. It was over whether a pending motion to dismiss should stop discovery despite the CMSO. That history supplies no good cause for a stay.

## II.   THE MOTION TO DISMISS IS NOT A PURELY LEGAL, CLEARLY MERITORIOUS BASIS FOR HALTING DISCOVERY.

Defendants rely heavily on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997). *Chudasama* addressed a markedly different situation: an especially dubious fraud claim, abusive discovery, unresolved discovery objections, and an eighteen-month failure to decide a motion to dismiss. *Id.* at 1356-60, 1367-68. It did

not announce a rule that every pending motion to dismiss stays discovery. *Wiand v. ATC Brokers Ltd.* rejected that reading while denying a stay based on motions raising personal jurisdiction, standing, and pleading issues. No. 8:21-cv-1317-MSS-AAS, 2022 WL 1239373, at *2-3 (M.D. Fla. Apr. 27, 2022). *General Dynamics* reached the same conclusion and explained why *Chudasama's* unusual history did not justify a stay at the beginning of ordinary discovery. Doc. 33 at 6-8.

The proper inquiry is whether a preliminary peek shows an "immediate and clear possibility" that the motion will be granted and will entirely eliminate the need for discovery, balanced against the harm from delay. *Feldman*, 176 F.R.D. at 652-53. A motion is not "clearly meritorious" merely because it carries a jurisdictional label. Indeed, Wiand denied a stay where the pending motions included lack of personal jurisdiction and standing. 2022 WL 1239373, at *1-3. Defendants' own opening authority recognizes that a pending motion to dismiss, standing alone, does not justify delay. Doc. 58 at 5 (citing *David v. United States*, No. 8:19-cv-2591-T-36JSS, 2020 WL 1862606, at *1 (M.D. Fla. Apr. 14, 2020)). And the cases Defendants cite for stays apply the same preliminary-peek test; none holds that a jurisdictional label itself supplies good cause. Here, the pending motion presents substantial disputes on all three of its grounds, and the discovery is directed to them.

A. Defendants' *Younger* argument presents a factual bad-faith issue that the discovery directly tests.

Defendants call *Younger* a pure question of law and assert that no request bears on it. Doc. 58 at 10-11. Their own reply on the merits demonstrates otherwise.

6

It recognizes that the bad-faith exception applies when state charges target protected conduct with a retaliatory or deterrent purpose, then argues that Plaintiffs lack a substantial allegation of that purpose. Doc. 54 at 2-4. That is not an abstract issue disconnected from facts.

*Leonard v. Alabama State Board of Pharmacy* identifies two routes to the bad-faith exception. A plaintiff may show that a proceeding was brought without a reasonable expectation of a valid result, or may show retaliation or deterrence directed at core constitutionally protected conduct under *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979), and *Fitzgerald v. Peek*, 636 F.2d 943 (5th Cir. Unit B Jan. 1981). *Leonard*, 61 F.4th 902, 912-14 (11th Cir. 2023). *Wilson*, binding in this Circuit, holds that *Younger* does not require abstention when proceedings are brought to retaliate for or deter protected First Amendment activity. 593 F.2d at 1382-87.

*Leonard* also supplies a direct analogy for the discovery here. The alleged hostility of a private complainant was irrelevant "in isolation," but became relevant to the extent the state investigators adopted it. 61 F.4th at 913-14. The Eleventh Circuit evaluated emails between the complainant and investigators, the investigators' conduct, and evidence about whether neutral decisionmakers were insulated from the asserted motive. *Id.* The claimant lost because the developed record showed benign communications and institutional insulation, not because source communications and adoption were categorically irrelevant.

Requests for Production 14-17 and Interrogatories 5-6 ask precisely that adoption question. They seek communications with specifically identified Defense

Distributed sources; materials those sources supplied; the identity of sources whose information Defendants used, reviewed, or considered; and whether those materials entered the investigation, drafting of the California complaint, request for preliminary relief, or briefing in this action. Doc. 58-1 at 33-34, 53-54. The definition is concrete: it identifies Defense Distributed entities (including Coast Runner Industries), Wilson and other named individuals, their identified counsel, and specified email domains. *Id.* at 27-28, 50-51. The requests do not ask the Court to attribute a private actor's motive to Defendants. They seek the evidence *Leonard* says would be required before any attribution could be made.

Plaintiffs identified those sources from a concrete public chronology involving Defense Distributed's related litigation and publications. It includes California's separate Coast Runner enforcement matter; a February 12, 2026 DD LEGIO post addressing California's suit and this federal action and hyperlinking the phrase "Who could have seen this coming?" to a Defense Distributed-hosted page for California DOJ Bulletin 2025-DLE-18; and a Defense Distributed exhibit list that identified the California complaint as an exhibit on the date it was filed. See *People v. Coast Runner Industries, Inc.*, No. 37-2024-00020896-CU-MC-CTL (Cal. Super. Ct.); DD LEGIO, The Fall of the House of Buster (Feb. 12, 2026), https://ddlegio.com/the-fall-of-the-house-of-buster/; *Larosiere v. Wilson*, No. 6:24-cv-1629-AGM-LHP, Docs. 207 at 7, 210-72 (M.D. Fla. Feb. 6 and 13, 2026). Plaintiffs offer this information to explain the target of these requests and how they supply a good-faith basis to ask what, if anything, Defendants received and adopted from that source.

8

*Yelp Inc. v. Paxton*, 137 F.4th 944 (9th Cir. 2025), does not support a stay. *Yelp* is nonbinding and did not establish that invoking *Younger* forecloses discovery. It affirmed denial of discovery only after concluding that *Yelp's* allegations and the existing record were insufficient to show that further discovery would change the result. *Id.* at 957. Here the Court is deciding whether to stop discovery at its outset; Plaintiffs identify the exact discovery and its connection to the controlling Eleventh Circuit adoption analysis; and Defendants' motion simply omits those requests. Comity concerns may support careful limits and privilege protections. They do not transform a disputed bad-faith issue into a pure question of law or establish good cause for a blanket stay.

The *Younger* motion also must address the independent claims of Plaintiffs who are not parties to the California action. Defendants rely on cases involving derivative or inextricably intertwined interests. Doc. 47 at 13-16. But the FAC alleges that the nonparty Plaintiffs suffer their own Florida injuries and seek relief for their own protected activity and access. Doc. 34 ¶¶ 153-84. *Younger* therefore requires a plaintiff-specific analysis. See *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928-31 (1975); *Steffel v. Thompson*, 415 U.S. 452, 462 (1974). The existence of that distinct issue further prevents a preliminary conclusion that dismissal of every plaintiff is immediate and clear.

B. The personal-jurisdiction dispute is the paradigm for targeted jurisdictional discovery.

9

The First Amended Complaint alleges specific Florida-directed conduct, including suing Florida residents and entities over Florida publication activity, using process servers in Florida, targeting Florida websites and profiles, communicating with third parties concerning Plaintiffs, and seeking relief expected to alter publication and access in Florida. Doc. 34 ¶¶ 37-45. Defendants dispute those contacts and contend that all relevant conduct and all requested relief are confined to California. Doc. 47 at 16-24; Doc. 54 at 4-5. The requested discovery tests that factual divide.

Requests for Production 1-6 and 13 and Interrogatories 1-2 seek when Defendants learned of Plaintiffs' Florida location, acts directed into Florida, Florida communications, service efforts, and the persons who investigated those matters. Doc. 58-1 at 29-31, 33, 52. Requests for Production 7-12 and Interrogatories 3-4 seek communications with intermediaries, the geographic scope and expected effects of relief, and the method by which Defendants contend Plaintiffs can comply while continuing to publish from Florida. *Id.* at 31-33, 52-53. Requests for Admission 32-45 ask Defendants to identify how they apply the challenged laws and requested relief to out-of-state and Florida publication. *Id.* at 11-13. Those are not collateral merits inquiries. They bear directly on purposeful direction, Florida contacts, connexity, intended effects, and Defendants' claim that their enforcement is geographically confined. Defendants' own dismissal motion also reports that the California court contemplated jurisdictional discovery before resolving Plaintiffs' motion to quash

10

there. Doc. 47 at 4 n.3. The same ordinary sequence is appropriate for genuinely disputed jurisdictional facts here.

The Eleventh Circuit has cautioned that jurisdictional discovery "is not entirely discretionary." *ACLU of Florida, Inc. v. City of Sarasota*, 859 F.3d 1337, 1340-42 (11th Cir. 2017) (quoting *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 729 (11th Cir. 1982)). When jurisdictional facts are genuinely disputed and intertwined with the merits, a party has a qualified right to discovery, and complete denial absent undue delay is an abuse of discretion. *Id.* at 1341-42. Plaintiffs did not delay: they served targeted requests promptly after the Rule 26 process opened and while the motion to dismiss remained pending.

Defendants' reliance on *Butler v. Sukhoi Co.*, 579 F.3d 1307 (11th Cir. 2009), and *World Media Alliance Label, Inc. v. Believe SAS*, No. 24-12079, 2025 WL 2102017 (11th Cir. July 28, 2025), is misplaced. In *World Media*, the complaint alleged no substantial Florida contact, the plaintiff never formally sought jurisdictional discovery, and it never explained what facts it intended to discover. *Id.* at *5. Here the FAC identifies the asserted Florida contacts, discovery is already open under the CMSO, Plaintiffs served the exact requests, and Defendants themselves placed every request before the Court. This is not a request buried at the end of a brief; it is opposition to Defendants' affirmative effort to stop pending, specifically identified jurisdictional discovery.

*Emerald Consulting Partners, LLC v. Messner Reeves LLP* is likewise different. No. 8:25-cv-1915-CEH-AEP, 2026 WL 366647 (M.D. Fla. Feb. 10, 2026). There, the

11

defendant submitted a signed web-developer declaration directly contradicting the complaint's central targeting allegation, and the court expressly deferred whether jurisdictional discovery should proceed. *Id.* at *2-3 & n.1. Defendants here submit no declaration refuting the alleged Florida contacts or geographic effects. Their only declaration concerns service of discovery and conferral. Doc. 58-1.

Defendants cannot establish a stay merely by asserting that the jurisdictional facts favor them and then preventing Plaintiffs from testing those facts. Allowing the threshold requests is the ordinary, efficient way to resolve that dispute on a reliable record.

C. A pending standing challenge does not disable a named plaintiff from serving discovery.

Defendants add in a footnote that Adams "certainly cannot invoke judicial process" because they contend he lacks standing. Doc. 58 at 7 n.3. But Adams remains a named party unless and until the Court rules otherwise. Rules 33(a)(1), 34(a), and 36(a)(1) authorize a party to serve discovery on another party; none creates an automatic stay upon the filing of a standing challenge. The requests also concern the claims and injuries of all Plaintiffs, not Adams alone. If Defendants prevailed only as to Adams, the remaining Plaintiffs could serve the same discovery again, creating the duplication Defendants invoke judicial economy to avoid.

### III.   A STAY WOULD PREJUDICE PLAINTIFFS AND UNDERMINE JUDICIAL ECONOMY.

Defendants contend that no prejudice exists because discovery closes in April 2027. Doc. 58 at 10-12. That ignores both the nature of this case and the CMSO.

Plaintiffs allege ongoing self-censorship, loss of access to protected works, and disruption of Florida publication and business activity; their motion for preliminary injunction remains pending. Docs. 34, 42. Delay therefore preserves the alleged constitutional injury while withholding evidence bearing on the threshold defenses to immediate relief.

The stay also has no date certain. It would last until resolution of the motion to dismiss, while the CMSO warns that the Court is not likely to resolve dispositive motions until after the dispositive-motion deadline and that parties who forego discovery should not expect more time. Doc. 46 at 1-2. The existence of months on the calendar is not an answer. An open-ended stay can compress document discovery, depositions, expert work, mediation, and any necessary motion practice into the remaining period without any assurance that the schedule will be extended.

Proceeding with threshold discovery promotes judicial economy. If the produced evidence confirms Defendants' characterization of their contacts, sources, and requested relief, it can narrow disputes. If it contradicts factual premises advanced in the motion to dismiss, Plaintiffs can promptly seek leave to supplement the jurisdictional record or proceed as the Court directs. Either way, the Court gains the information needed to resolve threshold issues once. A blanket stay instead risks a dismissal decision on an incomplete record, followed by requests for jurisdictional discovery, supplementation, reconsideration, amendment, or appeal. *ACLU*, 859 F.3d at 1340-42, counsels against excluding a litigant from development of genuinely disputed jurisdictional facts.

13

Defendants retain ordinary protections. They may make request-specific objections, confer about search terms and custodians, produce in phases, and log withheld privileged material under Rule 26(b)(5)(A). If a concrete dispute remains, Rule 26(c) permits targeted relief supported by evidence. Those tools address proportionality without imposing the exceptional blanket stay Defendants request. See Fed. R. Civ. P. 1, 26(b)(1), 26(c)(1).

## IV.   ANY RELIEF SHOULD PRESERVE THE THRESHOLD DISCOVERY.

If the Court is inclined to defer some discovery, the relief should be no broader than necessary. At minimum, discovery should proceed as to:

1. Personal jurisdiction, standing, and geographic effects: Requests for Production 1-13; Interrogatories 1-4; and Requests for Admission 32-45.

2. *Younger* bad faith and source adoption: Requests for Production 14-17 and Interrogatories 5-6.

The Court could defer Requests for Admission 1-31 and any other discovery directed solely to the ultimate constitutional merits, without deciding any objection to those requests. Defendants should respond to the preserved threshold requests within thirty days after the Court's order, subject to ordinary objections and a Rule 26(b)(5)(A) privilege log. If the Court enters any broader stay, it should be date-certain and extend affected CMSO deadlines day-for-day so the stay does not consume Plaintiffs' allotted discovery period.

14

This tailored approach answers every legitimate concern raised in the motion. It avoids unnecessary merits discovery while preserving the discovery that bears directly on the issues Defendants want decided first.

### CONCLUSION

Defendants have not shown the unusual circumstances, specific burden, or clearly dispositive legal motion required for a discovery stay. The Court should deny Defendants' Motion to Stay Discovery (Doc. 58). Alternatively, the Court should permit the threshold discovery identified in Section IV to proceed and limit any stay to discovery directed solely to the ultimate constitutional merits.

DATED: August 6, 2026

*/s/ Matthew Larosiere*
Matthew Larosiere, Esq.
Fla. Bar № 1005581
*The Law Offices of Matthew Larosiere.*
6964 Houlton Cir.
Lake Worth, FL 33467
Email: Larosieremm@gmail.com
Telephone: (561) 452-7575
*Lead Counsel for Plaintiffs*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date noted below, the foregoing document was filed with this Court's ECF system, which generated a notice of filing, and a true and correct copy of the foregoing Motion was emailed to the following counsel for Defendants:

VESNA CUK
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone:  (415) 510-3782
Fax:  (415) 703-5480
E-mail:  vesna.cuk@doj.ca.gov

KARUN A. TILAK
Deputy City Attorney
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, CA  94102-5408
Telephone:  (415) 355-3308
Fax:  (415) 437-4644
E-mail:  karun.tilak@sfcityatty.org

August 6, 2026

*/s/ Matthew Larosiere*
Matthew Larosiere, Esq.
*Lead Counsel for Plaintiffs*

16